NB:LTG/JLG/MRM
F. #2018R00279

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                        17 CR 587 (JMA)

CHRISTOPHER MCPARTLAND and
THOMAS J. SPOTA,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>MEMORANDUM IN SUPPORT OF
THE GOVERNMENT'S MOTIONS IN LIMINE</u>

RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Nicole Boeckmann
Lara Treinis Gatz
Justina L. Geraci
Michael R. Maffei
Assistant U.S. Attorneys
    (Of Counsel)

## PRELIMINARY STATEMENT

The Government respectfully submits the following motions in connection with the trial of this matter.[1] Specifically, the government respectfully requests that this Court: (1) preclude defense counsel from referring to or singling out specific Assistant United States Attorneys by name; (2) preclude defense counsel from making any reference to their prior roles as Assistant United States Attorneys; (3) provide lunch for the jury and arrange for them to eat at a location other than the Courthouse cafeteria, or alternatively, allow the jurors to eat in the cafeteria, but prohibit the parties from entering or eating in the cafeteria during that time; (4) preclude evidence of irrelevant details about the defendants' personal backgrounds; (5) prohibit counsel and the parties from making improper extrajudicial statements; (6) preclude the defendants from introducing evidence or argument that, because former Chief of Department James Burke lied to others about his assault of a prisoner, he must have also lied to the defendants about his conduct; and (7) order the defendants to produce documents they intend to use in their case-in-chief pursuant to Federal Rule of Criminal Procedure 16.

The Government respectfully submits that the factual background and procedural posture of this case is presumed, based on substantial prior briefings from the parties, and is therefore not recited herein.

---

[1] The Government reserves its right to file additional motions *in limine* following its receipt from the defense of reciprocal Rule 16 discovery; materials pursuant to The Jencks Act, 18 U.S.C. § 3500; and defense exhibit and witness lists – all of which, to date, the Government has not received. Also, as the Court is aware, the Government has made additional motions, including motions pursuant to Rule 404(b) of the Federal Rules of Evidence, at an earlier time and under separate cover.

<u>ARGUMENT</u>

I.  <u>THE COURT SHOULD PRECLUDE DEFENSE COUNSEL FROM MAKING ANY REFERENCE TO SPECIFIC ASSISTANT UNITED STATES ATTORNEYS BY NAME</u>

The Government respectfully submits that this Court should preclude defense counsel from referring to the Government trial attorneys, or other Government attorneys who were, at other times, part of this matter, by name when referring to the specifics of the investigation of the case.

Rule 3.7 of the New York Rules of Professional Conduct sets forth the applicable witness-advocate rule. Subsection (a) of the Rule provides, with certain exceptions, that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact . . ." In <u>Murray v. Metropolitan Life Ins. Co.</u>, 583 F.3d 173 (2d Cir. 2009) the Second Circuit both explained why the law forbids the same lawyer from serving simultaneously as both advocate and witness and discusses the four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused. <u>Id</u>. at 178. The Second Circuit determined that these concerns are important, because if these situations materialize, they could undermine the integrity of the judicial process. In order to prevent either the trial prosecutors or their current or former colleagues from being placed in the untenable position of being unable to address or refute statements and actions attributed

directly to them, the Government submits that named references to specific Assistant United States Attorneys should be prohibited at this trial. Other Courts in this Circuit have also adopted this trial practice, see e.g., United States v. Regan, 103 F.3d 1072, 1083 (2d Cir. 1997) and United States v. Bin Laden, No. 98 CR 1023 (S-7) (LBS) 2001 WL 30061, at *10 (S.D.N.Y. Jan. 2, 2001), both of which approve of the use of replacing the name of the AUSA with the reference "Government attorney."

Similarly, counsel in this matter would be free to use general terms like the "Government attorney[s]" or the "prosecutor[s]." However, referencing specific AUSAs by name, and imputing certain conduct, actions, strategies, and thoughts to any named Government attorneys should be prohibited as improper, unnecessary, and in direct violation of the witness-advocate rule.

II. THE COURT SHOULD PRECLUDE DEFENSE COUNSEL FROM MAKING ANY REFERENCE TO THEIR PRIOR ROLES AS ASSISTANT UNITED STATES ATTORNEYS

As the Court is aware, lead counsel for each of the defendants have previously served as Assistant United States Attorneys in this District prior to entering private practice. The Government respectfully submits that, where applicable, each attorney for the defense should be precluded from referring to himself in front of the jury as a "former federal prosecutor," or make any statement, reference, or innuendo concerning his prior role with the Government and/or this Office.[2]

---

[2] Such references would include, for example, any suggestion about or reference to defense counsel Alan Vinegrad's role as Acting U.S. Attorney, including, but not limited to, his hiring of other Assistant U.S. Attorneys (in general, and more specifically with respect to AUSA Gatz) while in that role.

First, a defense counsel reference to being a "former federal prosecutor" or a "former AUSA" would be improper because it could suggest to the jury that an argument or question should be given greater weight simply because of defense counsel's background. <u>Cf. United States v. Newton</u>, 369 F.3d 659, 681 (2d Cir. 2004) (prosecutor's vouching for the credibility of a witness is improper in part because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"). But a defense argument is not entitled to more or less weight because of the resume of the attorney making the argument. Precluding references to being a "former federal prosecutor" eliminates this risk.

Second, references by defense counsel to being a "former federal prosecutor" may improperly suggest to the jury that the Government's conduct in the investigation or prosecution of this case was improper. The Government's investigation and prosecution of this case is not on trial and is not before the jury. Accordingly, any attempt by defense counsel to cast doubt on the Government's investigation and prosecution of the defendants by implying that defense counsel, as "former federal prosecutors," would not have made the same investigative or charging decisions when they themselves were prosecutors is entirely inappropriate.

Finally, on the other side of the scale, there is no legitimate reason for defense counsel to refer to their prior roles as AUSAs. Where there is no prejudice to the defendant in precluding such references and significant potential prejudice in allowing such references, the references should be precluded.

III.   THE COURT SHOULD PROVIDE LUNCH TO THE JURY AT A LOCATION
       OTHER THAN THE COURTHOUSE CAFETERIA

The Government respectfully submits that, as this Court has done in other trials of this kind, the Court should provide lunch for the jury, and arrange for them to eat at a location other than the Courthouse cafeteria.  This small measure will not only keep the trial moving on time, but will properly ensure that the defendants and the Government are afforded a fair trial, free from outside influences or exposure to extrajudicial information.

This practice, as the Court is aware from prior cases, does not constitute sequestration (the isolating of the jury from others) and is plainly within the Court's sound discretion.  See, e.g., United States v. Persico, 832 F. 2d 705, 717-18 (2d Cir. 1987).  Notably, decisions such as these are rarely disturbed on appeal.  See id.; United States v. Eisen, 974 F.2d 246, 267 (2d Cir. 1992).  See also Federal Criminal Practice, Gleeson, § 30-8 (18th ed. 2018).  Moreover, having lunch brought in for the jury, and having them eat it within the jury room (versus in the Courthouse cafeteria), is common practice, for *all* trials, in the Brooklyn Courthouse in this District, as well as in the Southern District of New York.

Here, as the Court is already aware, the Central Islip Courthouse has a small cafeteria on the first floor, with an even smaller area in which to wait in line to order and pay for food.  Because the lunch hour forces all parties and the jurors to be in the same small space at virtually the same time ordering and paying for food, there is a substantial risk that jurors will overhear information to which they should not be privy, such as spectator's commentary regarding witness's credibility.  Having lunch brought to the jury at a different location is not only reasonable, but it is also a narrowly tailored solution to address valid

concerns about forced interactions in a small space among the jurors, on the one hand, and the parties, counsel, family members of the defendants, the news media, etc., on the other.

Moreover, even if the instant proposal constitutes sequestration, which it clearly does not, the Court's decision on this issue will not constitute reversible error absent a showing of actual prejudice. See Persico, 832 F. 2d at 717-18. Far from prejudicing the defendants, the proposal actually does the opposite – it helps to ensure that the defendants receive a fair trial. Additionally, the Court can instruct the jury that these measures are only designed to make the task of jury duty more convenient and efficient.

Alternatively, if the Court permits the jurors to use the first floor cafeteria, the Court should then exclude all parties, their counsel, support staff, family and friends of the parties from the cafeteria. In United States v. Brooks, the Honorable Joanna Seybert entered such an order. See id. No. 06-CR-550 docket entry dated 1/18/10 ("Until further notice, the parties, their counsel and support staff (e.g., paralegals, consultants) are ORDERED to not set foot in the cafeteria, as jurors and potential jurors may congregate there.").

Relatedly, the Government further submits that this Court should instruct the jurors to enter the courthouse through the side entrance (i.e., the employee entrance), as it is easier to access the building from this location and is free from media exposure, and also to park their cars in the employee lot nearest this entrance.

IV. THE COURT SHOULD PRECLUDE EVIDENCE OF IRRELEVANT DETAILS ABOUT THE DEFENDANTS' BACKGROUNDS

The Government respectfully submits that the Court should preclude the defense from making any statements or arguments tied to irrelevant details about the defendants' personal backgrounds. This would include precluding the defense from telling

the jury, in their opening statements or otherwise, about the lives of their clients, their clients' ages, marital status, number of children, and so forth, if the defendants are not themselves committed to testifying at trial. Such irrelevant details about the defendants' respective backgrounds cannot properly be elicited through other testifying witnesses, nor matter-of-factly stated by their counsel.

Evidence is admissible only if it is relevant. See Fed. R. Evid. 401. Moreover, "[d]istrict courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009). Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one[.]" Fed. R. Evid. 403, Adv. Comm. Notes. Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy); United States v. Battaglia, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Details about either of the defendants' family or about their non-legal background, or other personal issues independent of their relationships with their co-conspirators, have no bearing on the issues in this case because they are not probative of

7

whether the defendants conspired with Burke and others to tamper with witnesses and obstruct an investigation.[3] Information about the defendants' personal lives, independent of their relationships with one another, does not make it more or less likely that they conspired, obstructed justice, or tampered with witnesses.  See Fed. R. Evid. 401.  Moreover, the clear purpose for introducing evidence at trial of these extraneous details would be to elicit sympathy for the defendants or to distract from the facts at issue.  The risk of juror confusion and unfair prejudice is manifest because the jury would be asked to look past the defendants' conduct in this case.  This sort of emotional appeal to the jury's sympathy should be excluded under Rule 403.

V.      THE COURT SHOULD PRECLUDE THE PARTIES AND COUNSEL FROM MAKING CERTAIN IMPROPER EXTRAJUDICIAL STATEMENTS TO THE NEWS MEDIA

The Government respectfully moves, pursuant to Local Criminal Rule 23.1(h), for an order prohibiting the parties and counsel from making certain comments to the news media about the prosecution of this matter.  To be clear, the Government is not seeking an order restricting any media from reporting on events that occur in open court during pretrial conferences or at the trial.  Rather, the Government respectfully submits that the parties and counsel (and all employees, representatives or agents) be prohibited from making comments that could interfere with a fair trial or prejudice the Government, any defendant, or the administration of justice, including extrajudicial statements characterizing and/or elaborating

_____

[3]      The Government does not contest that otherwise admissible evidence about the defendants' legal practice experience, for example, will likely be relevant.

on documentary or testimonial evidence that are intended to influence public opinion regarding the merits of the case. See Singer v. United States, 380 U.S. 24 (1965) ("The Government, as a litigant, has a legitimate interest in seeing that cases which it believes a conviction is warranted are tried before a tribunal which the Constitution regards as most likely to produce a fair result.").

Courts have repeatedly recognized the applicability of so-called "no-comment" rules to both attorneys and parties themselves. In Sheppard v. Maxwell, 384 U.S. 333 (1966), and cited approvingly by the Supreme Court thereafter, the Supreme court explicitly authorized trial courts to "proscribe[] extrajudicial statements by any lawyer, party, witness or court official which divulge[s] prejudicial matters . . . ." Id. at 361; see also Nebraska Press Association v. Stuart, 427 U.S. 539, 553-554 (1976) (quoting and adding emphasis to Sheppard's admonition that "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function"); Gentile v. State Bar of Nevada, 501 U.S. 1030, 1072 (1991) (same); Application of Dow Jones & Co., Inc., 842 F.2d 603 (2d Cir. 1988), aff'g sub nom, United States v. Simon, 664 F. Supp. 780 (S.D.N.Y. 1987) (affirming restrictions on extrajudicial statements by the parties and attorneys); United States v. Culter, 58 F.3d 825 (2d Cir. 1995); United States v. Bulger, 2013 WL 3338749 (D. Mass. July 1, 2013).

In Sheppard, the Supreme Court warned of the dangers that a "carnival atmosphere" poses to a fair trial. Id. at 358; see also United States v. Scarfo, 263 F.3d 80, 94 (3d Cir. 2001) ("Preventing a 'carnival atmosphere' in a high profile case is also a legitimate reason to gag an attorney"); United States v. Kelly, 722 F.2d 873, 879 (1st Cir. 1983) (rampant publicity can justify "stringent judicial measures" to safeguard the fairness of the

proceedings).  The Supreme Court directed that "courts must take such steps by rule and

regulation that will protect their processes from prejudicial outside interferences.  Neither

prosecutors, counsel for the defense, the accused, witnesses, court staff nor enforcement

officers coming under the jurisdiction of the court should be permitted to frustrate its

function."  Sheppard, 384 U.S. at 363; see also United States v. Flemmi, 233 F. Supp.2d 113,

116 (D. Mass. 2000).  Accordingly, "[a] district court may impose an appropriate gag order on

parties and/or their lawyers if it determines that extrajudicial commentary by those individuals

would present a 'substantial likelihood' of prejudicing the court's ability to conduct a fair

trial."  United States v. Brown, 218 F.3d 415, 427 (5th Cir. 2000).

Local Criminal Rule 23.1 addresses these concerns.  It prohibits, *inter alia*,

"any extrajudicial statement or interview relating to the trial or the parties or issues in the trial

which a reasonable person would expect to be disseminated by means of public

communication if there is a substantial likelihood that such dissemination will interfere with a

fair trial . . . ."  See Local Criminal Rule 23.1(c).  Subsection (d) of the Rule outlines subject

matters that "presumptively involve a substantial likelihood that their public dissemination

will interfere with a fair trial or otherwise prejudice the due administration of justice within

the meaning of the rule," including "[t]he credibility of prospective witnesses" and "[a]ny

opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in

the case."  Id. at (d)(4) and (7).  In essence, Local Criminal Rule 23.1 prohibits any lawyer

associated with the prosecution or the defense to use publicity as a litigation strategy.  Local

Rule 23.1(h) provides, in pertinent part, that the Court

> may issue a special order governing such matters as extrajudicial
> statements by parties and witness likely to interfere with the rights
> of the accused to a fair trial by an impartial jury, . . . and any other

matters which the Court may deem appropriate for inclusion in such
order.

Local Criminal Rule 23.1(h). Rule 23.1(h) further instructs the Court to assess whether a

special order is necessary to ensure an impartial jury and to consider alternative remedies,

such as a "change of venue, postponing the trial, a searching voir dire, emphatic jury

instructions, and sequestration of jurors." Id. See United States v. Khan, 538 F. Supp.2d 929,

931 (E.D.N.Y. 2007).

      The Government respectfully submits that, in this case, a special order

governing extrajudicial statements by parties and lawyers is necessary to ensure a fair trial.

As the Court is aware, this case has already generated extensive publicity in both the print and

broadcast media, as well as social media. This pervasive publicity can be expected to

continue during the pendency of this matter. The Government submits that there is a

substantial likelihood that certain forms of publicity – namely, extrajudicial statements by

counsel and the defendants to members of the press and media – could impair the rights of the

defendants, the Government, and the public to a fair trial by an impartial jury. To protect that

right to a fair trial, the Government respectfully requests that this Court take certain steps to

restrain counsel and defendants from making prejudicial statements to the press and media.

      A limited protective order would ensure a fair trial, and measures less

restrictive would not be expected to achieve such a result. In particular, the Government

submits that voir dire and emphatic jury instructions would fail to address the "carnival

atmosphere" surrounding this case. See, e.g., United States v. Brown, 218 F.3d at 431

(affirming district court order prohibiting extrajudicial statements by attorneys, parties and

witnesses and noting that "'emphatic' jury instructions may be at best an imperfect filter, and

would also fail to address the threat of a 'carnival atmosphere' [as in <u>Sheppard</u>] around the trial").  Moreover, a "change of venue, or some other device . . . entail serious costs to the system [which] the [Government] has a substantial interest" in avoiding.  <u>Gentile</u>, 501 U.S. at 1075.  As the Supreme Court noted "[e]xtensive voir dire may not be able to filter out all of the effects of pretrial publicity, and with increasingly widespread media coverage of criminal trials, a change of venue may not suffice to undue the effect of [extrajudicial] statements . . ."  <u>Id</u>.

Accordingly, pursuant to Local Rule 23.1(h), this Court should specifically prohibit all counsel and parties from making any statement to members of any television, radio, newspaper, magazine, internet (including, but not limited to, bloggers), or other media organization about this case, other than matters of public record, that could interfere with a fair trial or otherwise prejudice the defendants, the Government, or the administration of justice.  Counsel and/or the parties may mention, without elaboration or any kind of characterization, information contained in the public record, scheduling information, and any decision or order by the court that is a matter of public record.

VI.  <u>THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM INTRODUCING EVIDENCE THAT JAMES BURKE LIED TO OTHERS ABOUT HIS GUILT OR ARGUING THAT ANY SUCH LIES PROVES THAT BURKE LIED TO THE DEFENDANTS ABOUT HIS GUILT</u>

Based upon conversations with defense counsel, the Government believes the defense will attempt to elicit testimony from other witnesses (1) that former Chief of

Department James Burke lied[4] to various people about his assault of Christopher Loeb and (2) that Burke claimed that the investigation of his actions by the FBI and/or the U.S. Attorney's Office, in connection with the Loeb incident, was retaliation for his removal of certain personnel from the Long Island Gang Task Force and other Federal task forces. The government respectfully moves to preclude the introduction of either category of evidence, and to preclude the defendants from arguing that such evidence proves that Burke lied to the defendants with respect to his culpability in the Loeb assault, as such evidence is irrelevant, confusing, and because both the evidence and the argument violate Rule 404(b)(1) and (b)(2) of the Federal Rules of Evidence.

      A.    <u>Legal Standard</u>

Rule 401 (a) & (b) provide in relevant part that:

evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action.

Rule 404(a)(1) provides in relevant part that:

evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

Rule 404(b)(1) provides in relevant part that:

evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

---

[4]     Burke ultimately pleaded guilty both to the deprivation of Loeb's civil rights and to conspiring to obstruct justice, so any statements made by him to the contrary are incontrovertibly false.

While the Second Circuit permits the broad use of Rule 404(b) to admit prior act evidence, it also firmly prohibits evidence of prior bad act evidence to demonstrate "criminal propensity." United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003); see, e.g., United States v. Barret, No. 10 CR 809 (S-4) (KAM), 2011 WL 6935500, at *4 (E.D.N.Y. Dec. 31, 2011) (uncharged bad acts "may be admitted into evidence for any relevant purpose *other than propensity*, provided that the probative value of the evidence outweighs the danger of unfair prejudice.") (emphasis added). The Second Circuit also has "cautioned" that "even under this inclusionary approach, district courts should not presume the relevance or admissibility of evidence under Rule 404(b) simply because the evidence does not serve the sole purpose of showing" bad character. Id.

In United States v. Greebel, 15 Cr. 637 (KAM), the Honorable Kiyo A. Matsumoto granted similar relief as requested herein. In Greebel, the Government moved to preclude the defendant (1) from introducing evidence that his separately charged co-conspirator, Martin Shkreli, lied to others and (2) from arguing that such lies proved that Shkreli lied to him. Judge Matsumoto noted at a motions hearing on October 6, 2017 that "this sounds like propensity evidence and, generally, as you know, that is not admissible." Tr. 195:11-18. The court ultimately reserved its final ruling until it became clearer what the specific alleged lies were, and which of them the evidence would show were specifically told to the defendant.

B.  Argument

The Court should preclude the defendants from introducing evidence that Burke lied to other individuals about his culpability on relevance grounds, and preclude the defense from arguing that because Burke lied to others about his guilt, he must have lied to

the defendants about his guilt, because the argument relies on impermissible propensity evidence.

### i. Burke's Lies About His Culpability

Testimony that Burke told third parties that he was innocent is irrelevant, as it has no tendency to make a fact more or less probable than it would be without the evidence. Moreover, such testimony is prohibited by both Rule 404(a)(1), as it constitutes impermissible character evidence offered for propensity purposes, and Rule 404(b)(1), because it constitutes an effort to prove, through evidence of "other acts" (*i.e.*, lies to others), that Burke has the character trait of being a liar and thus he acted in "accordance with that character" when he spoke to the defendants about the Loeb incident.

In addition to the evidence of Burke's lies being irrelevant, and constituting prohibited propensity evidence, this argument has a critical foundational flaw – it assumes that Burke had a conversation(s) with the defendants during which he professed his innocence. Ultimately, the only admissible evidence of such a conversation, if it ever actually occurred, is the trial testimony of James Burke or one of the defendants. In fact, the only other way this evidence may be admissible is, arguably, if Burke touted his innocence to the defendants in the presence of a third party. Then, perhaps, the third party may offer this testimony as non-hearsay offered to illustrate the impact and consequent effect of the statement on the mind of the listener. In any event, unless Burke's false exculpatory statements were said in the presence of the defendants, any attempt to elicit this evidence from a witness (who is not Burke or one of the defendants) should be rejected; as such testimony is irrelevant and would constitutes impermissible propensity evidence.

At this juncture, it is hard to pinpoint which statements of Burke the defendants intend to elicit and from whom. Depending on the specific statement, and to whom the statement was made, the statement may be inadmissible hearsay as not made "in furtherance of the conspiracy." See FRE 801(d)(2)(E). Additionally, Burke false exculpatory statements would tend to cause confusion and be misleading to the jury pursuant to Rules 401 and 403, in light of Burke's eventual guilty plea. The Government reserves the right to make such arguments when it becomes clearer which statements the defense intends to offer.

        ii.       <u>Burke's Explanation Of The Reason For The Federal Investigation in Support of His Lies About His Culpability</u>

Similarly, the Court should preclude evidence of Burke's claim that the investigation of his actions by the FBI and/or the U.S. Attorney's Office was retaliation for his removal of certain personnel from the Long Island Gang Task Force and other Federal task forces, or, more simply put, that "the Feds were out to get [him]."

First, Burke's baseless belief about the motive behind the investigation of his actions is irrelevant, as it has no tendency to make a fact more or less probable than it would be without the evidence. Such statements are, really, a subset of the "lies to third parties" evidence discussed above, because claiming that he had done nothing wrong but that the federal government was out to get him, was also a lie, in light of his plea. As such, these statement and inferences drawn from them should be precluded for the reasons given above.

In addition to the evidence of Burke's lies being irrelevant, and constituting prohibited propensity evidence, this argument has the same critical baseline flaw as the argument *supra* – it assumes that Burke had a conversation with the defendants during which he professed his innocence, citing his purported belief that the "real" motive behind the

investigation was merely retaliation. Ultimately, the only admissible evidence of such a conversation, to the extent that it occurred, is the trial testimony of James Burke or one of the defendants. The only other way this evidence may be admissible is, arguably, if Burke, in the presence of a third party, touted his innocence to the defendants by explaining away the Federal investigation as retaliatory. Then, perhaps, the third party may offer this testimony as non-hearsay offered to illustrate the impact and consequent effect of the statement on the mind of the listener. In any event, unless Burke recited his false exculpatory explanation in the presence of the defendants, any attempt to elicit this evidence from a witness (not Burke or the defendants) should be rejected; as such testimony is irrelevant and would constitutes impermissible propensity evidence.

For the foregoing reasons, this Court should preclude the defendants from offering evidence that Burke lied to individuals other than the defendants or evidence that Burke was innocent but claimed that the FBI and/or the U.S. Attorney's Office were investigating him in retaliation for personnel changes in connection with the federal task force.[5] The defendants also should be precluded from arguing that evidence of such lies or practice shows that Burke lied to the defendants.

_____

[5] The Government further respectfully submits that evidence and argument concerning Burke's postulated theory as to the reasons underlying the federal investigation into his actions, and/or the federal prosecution, also would confuse the jury, distract from the evidence at trial and encourage jury nullification. Such evidence should be precluded for those reasons as well. See United States v. Stewart, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); see also United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (a "selective prosecution defense is an issue for the court rather than the jury"); see generally United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as

## VII.   THE DEFENDANTS SHOULD PRODUCE THE DOCUMENTS THEY INTEND TO ADMIT DURING THEIR CASE-IN-CHIEF

As of today, the Government has not been provided any documents by the defendants pursuant to their own Rule 16 discovery obligations, which require the defendants to provide evidence they intend to use in their case-in-chief.  In addition, the defendants have not identified any documents they intend to admit during cross-examination of the Government's witnesses.  Pursuant to Rule 16(b), the Government respectfully requests the Court to order the defendants to provide in discovery any documents they intend to introduce during their case-in-chief, including during the cross-examination of any Government witnesses.

It is the Government's understanding that the defense has met or spoken with a number of witnesses and potential witnesses, including Emily Constant (on at least two occasions, during which notes were taken by the defense at these interviews), John "Jack" Ryan, and Thomas Iacopelli; worked with at least one expert witness, though likely spoke to and/or consulted with others; and carefully reviewed the Jencks Act, *Giglio*, and non-testifying witness statement materials produced by the Government this month, in addition to the voluminous Rule 16 discovery that the Government has previously produced.  To date, the Government has not received either a witness or exhibit list from the defendants, nor a shred of reciprocal Rule 16 discovery and/or Jencks Act material.

---

instructed by the court—in the words of the standard oath to jurors in the federal courts, to render a true verdict according to the law and the evidence.  We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.") (internal quotation marks and citation omitted; emphasis in original).

The Government respectfully submits this motion now, both to avoid waiving the issue and because the receipt of these materials may form the basis for additional *in limine* motions.

A.    Applicable Law

Rule 16(b) governs the defendants' disclosures in a criminal case.  In relevant part, it requires the defendants to provide the Government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial."  Fed. R. Crim. P. 16(b)(1)(A).

Rule 16 does not require the defendants to disclose documents they intend to use for purposes of cross-examining a Government witness.  However, to the extent that a defendant seeks to admit in evidence a document during the cross-examination of a witness during the Government's case-in-chief to affirmatively support the defendant's theory of the case, such a document does fall within the ambit of Rule 16.  As explained in United States v. Hsia, No.  98 CR 0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000):

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Blacks Law Dictionary 207 (7th ed. 1999).  Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense … The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

Id.  The Hsia court distinguished documents introduced via a Government witness—which do fall within Rule 16 and should be disclosed—from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, it is not part of [the defendant's] case-in-chief."  Id. at *2 n.1.

Numerous other district courts have recognized this same distinction. See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes."); United States v. Holden, No. 13 CR 00444, 2015 WL 1514569, at *4 (D. Or. Mar 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose nonimpeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 2:12 CR 319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (approach adopted in Holden, Swenson and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15 CR 00568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same); United States v. Huntress, No. 13 CV 199S, 2015 WL 631976, at *33 (W.D.N.Y. Feb. 13, 2015) (observing that "it is not clear that defendants' case-in-chief would be limited to any case they may present after the government rests").

The Hsia court also observed that a defendant does not "satisfy her obligations under the Rule merely by providing the government with the thousands of pages of discovery she received from the government and stating that the documents upon which she intends to rely are found somewhere therein. Although the Rule does not specifically say that the parties must identify the specific documents upon which they may rely at trial, its purpose is to avoid surprise and gamesmanship; 'it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial.'" Hsia, 2000 WL 195067, at *1.

B.    <u>Argument</u>

The Government understands that trial strategies develop over time and that additional events, such as the disclosure of 3500 material and Rule 16 discovery, may alter a defendant's strategy or present plans.  But those considerations do not allow the defendants to avoid complying with either the spirit or the letter of Rule 16.  Moreover, these productions by the Government are complete at this point.  Accordingly, the Government respectfully requests that the defendants be ordered to produce any additional documents the defendants intend to use in their case-in-chief—whether the defendants intend to use that evidence after the Government rests or during cross-examination of Government witnesses.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the foregoing motions should be granted in their entirety.

Dated:  Central Islip, New York
        October 24, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York

                            By:     /s/_____
                                        Nicole Boeckmann
                                        Lara Treinis Gatz
                                        Justina L. Geraci
                                        Michael R. Maffei
                                        Assistant U.S. Attorneys
                                        (631) 715-7900

cc:   Clerk of the Court (JMA) (filed under seal)
      All Defense Counsel (By Email)