# COVINGTON

BEIJING BRUSSELS DUBAI FRANKFURT JOHANNESBURG
LONDON LOS ANGELES NEW YORK PALO ALTO
SAN FRANCISCO SEOUL SHANGHAI WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1000

October 29, 2019

**BY ECF – TO BE FILED UNDER SEAL**

Nicole Boeckmann, Esq.
Lara Treinis Gatz, Esq.
Justina Geraci, Esq.
Michael Maffei, Esq.
Assistant United States Attorneys
United States Attorney's Office
610 Federal Plaza
Central Islip, New York 11722

Re: *United States v. Christopher McPartland, et al.*, 17-cr-0587 (JMA)

Counsel:

We are writing pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), to advise you that the defendants may call Mark Pomerantz, Esq., as an expert witness at the trial in this matter. His qualifications are reflected in his law firm biography, which is enclosed. The following is a summary of the opinions as to which he may testify. All of these opinions are based on his background, education, and experience. We reserve the right to supplement this list. Mr. Pomerantz's expert opinions, to a reasonable degree of certainty, are as follows:

- It is legal, ethical, and common for an attorney representing a client in a criminal investigation to obtain as much information as possible, within the bounds of the law and ethical obligations, concerning any evidence related to the client. This includes obtaining information from attorneys representing other individuals or entities in connection with the investigation. Such information-gathering is critical to the attorney's zealous representation of his or her client.

- It is legal, ethical, and common for an attorney representing a client in a criminal investigation to share information with others involved in the case, when it is in the client's interest to do so—in particular, sharing that information with other attorneys representing other individuals or entities in the case. Such information-sharing is also critical to the attorney's zealous representation of his or her client.

- The information referred to in paragraphs 1 and 2 above may include, for example: the client's account of the facts of the case, information that the client or his or her attorney has shared with the government, testimony that the client has given in grand jury

proceedings, and information shared by the government with the attorney concerning the case.

- It is legal, ethical, and common for an attorney representing a client in a criminal investigation to recommend other attorneys to represent other individuals involved in the case. This is particularly common in cases with numerous individuals, because potential conflicts may prevent attorneys from representing more than one individual in the case. Thus, an attorney representing a client in the case may recommend other attorneys who possess the relevant background, qualifications and experience to represent other individuals in the case. Attorneys routinely make such recommendations in the course of their practice.

- It is legal, ethical, and common for attorneys representing a client in a criminal investigation to recommend other attorneys to represent other individuals involved in a criminal case whom they believe would be willing to share information, in the course of the representation. While it would be improper to recommend an attorney on an understanding that they would act against their clients' interests, it is legal, ethical, and common to recommend an attorney with the hope or expectation that the attorney would share information. Attorneys routinely make such recommendations in the course of their practice.

- It is legal, ethical, and common for organizations—such as unions or corporations—to pay for their members' or employees' legal fees for legal representation for matters relating to their membership or employment. Such fee agreements, generally referred to as indemnification agreements, are typically set forth in bylaws of the organization or contracts entered into by the individual and the organization.

- It is legal, ethical, and common for organizations—such as unions or corporations—who are paying for their members' or employees' legal fees to provide a list of pre-approved attorneys to represent the member or employee, with the expectation that the attorneys will nevertheless honor their ethical obligations to their clients. Such a method for selecting attorneys helps to ensure that the attorneys have the relevant background, qualifications and experience—for example, in a federal criminal investigation, identifying attorneys with background and experience in representing clients in connection with federal criminal investigations.

- It is legal, ethical, and common for organizations—such as unions or corporations—who are paying for their members' or employees' legal fees to require repayment of previously paid fees and/or to cease payment of fees where it is determined during the course of the representation that the member or employee has committed a crime or other specified wrong in connection with the subject matter of the representation. Such requirements, generally referred to as clawback provisions, are typically set forth in the bylaws of the organization or contracts entered into by the individual and the organization. Such provisions serve to limit the payment of fees to circumstances in which indemnification promotes the organization's interests, and reflects a policy judgment that it is generally not in the organization's interests to indemnify members or employees who commit crimes.

COVINGTON

- The New York State and federal criminal justice systems operate independently from each other and are different in several important ways. They each have different sets of criminal laws and procedures. They each have different court systems. They each have different prosecutor's offices, with state cases handled by District Attorney's Offices and federal cases handled by United States Attorney's Offices. It is common for defense lawyers to specialize in the practice of law in one of these systems, but not the other.

- The federal obstruction of justice statutes differ from New York State obstruction of justice statutes. A state practitioner would not necessarily be familiar with the nature, scope, interpretation or application of the federal obstruction statutes.

Sincerely,

Alan Vinegrad

Enclosure