UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   - against -

CHRISTOPHER MCPARTLAND and
THOMAS J. SPOTA,

                  Defendants.

No. 2:17-cr-0587 (JMA)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THE
GOVERNMENT'S MOTIONS *IN LIMINE* AND FOR RECIPROCAL DISCOVERY,
AND IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EVIDENCE**


**<u>UNREDACTED VERSION – REQUEST TO BE FILED UNDER SEAL</u>**


KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
(212) 223-0200

*Counsel for Christopher McPartland*

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*

# Table of Contents

Preliminary Statement.................................................................................................... 1

Argument ....................................................................................................................... 1

I.     The Government's Motion to Preclude Evidence and Argument Concerning
Burke's Denials of the Loeb Assault Must Be Denied ....................................................... 1

II.    The Government's Motion to Preclude Relevant Evidence Concerning Minor
Details of the Defendants' Personal Backgrounds Should be Denied ............................... 9

III.   Evidence of Burke's IAB History and Other Unsubstantiated Allegations Against
Burke Must Be Excluded ............................................................................................... 11

IV.   The Government's Motion to Admit Evidence of a Minor Car Accident in 2011
Involving Burke and Mr. McPartland Should Be Denied.................................................. 23

V.    The Defendants Are Aware of and Will Comply with Their Obligations Under
Rules 16(b) and 26.2 ..................................................................................................... 31

Conclusion .................................................................................................................... 35

# Table of Authorities

Page(s)

**Cases**

*Collado v. City of New York*,
No. 11-CV-9041 (DAB), 2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017) ..............................21

*Dent v. U.S. Tennis Ass'n, Inc.*,
No. CV-08-1533 (RJD) (VVP), 2008 WL 2483288 (E.D.N.Y. June 17, 2008)......................14

*Duran v. Town of Cicero, Ill.*,
653 F.3d 632 (7th Cir. 2011) ..............................................................................................21

*Gov't of Virgin Islands v. Grant*,
775 F.2d 508 (3d Cir. 1985).................................................................................................10

*Huddleston v. United States*,
485 U.S. 681 (1988)........................................................................................................17, 26

*Marcel v. City of New York*,
No. 88-CV-7017 (LLS), 1990 WL 47689 (S.D.N.Y. Apr. 11, 1990)....................................15

*Scantek Medical, Inc. v. Sabella*,
693 F. Supp. 2d 235 (S.D.N.Y. 2008)..................................................................................15

*Sealey v. Fishkin*,
No. 96-CV-6303 (RR), 1998 WL 1021470 (E.D.N.Y. Dec. 2, 1998) ...................................15

*United States v. Araujo*,
79 F.3d 7 (2d Cir. 1996).......................................................................................................18

*United States v. Avendano*,
No. S1 02-CR-1059 (LTS), 2004 WL 2734435 (S.D.N.Y. Nov. 30, 2004) ..........................22

*United States v. Blackwell*,
853 F.2d 86 (2d Cir. 1988).....................................................................................................9

*United States v. Bonventre*,
No. 10-CR-228 (LTS), 2013 WL 2303726 (S.D.N.Y. May 28, 2013)..............................31, 32

*United States v. Brand*,
467 F.3d 179 (2d Cir. 2006)..................................................................................................26

*United States v. Brandt*,
196 F.2d 653 (2d Cir. 1952)....................................................................................................4

*United States v. Brennan*,
 798 F.2d 581 (2d Cir. 1986)...........................................................................19

*United States v. Carboni*,
 204 F.3d 39 (2d Cir. 2000)...........................................................................8, 15

*United States v. Certified Envtl. Servs., Inc.*,
 753 F.3d 72 (2d Cir. 2014)............................................................................2, 3

*United States v. Collorafi*,
 876 F.2d 303 (2d Cir. 1989).............................................................................4

*United States v. Corey*,
 566 F.2d 429 (2d Cir. 1977)............................................................................21

*United States v. Curley*,
 639 F.3d 50 (2d Cir. 2011)..............................................................................26

*United States v. Cushing*,
 No. S3:00-CR-1098 (WHP), 2002 WL 1339101 (S.D.N.Y. 2002) ........................19

*United States v. Diaz*,
 176 F.3d 52 (2d Cir. 1999)..............................................................................18

*United States v. Edwards*,
 342 F.3d 168 (2d Cir. 2003)............................................................................27

*United States v. Figueroa*,
 618 F.2d 934 (2d Cir. 1980)............................................................................20

*United States v. Fiumano*,
 No. S3 14-CR-518 (JFK), 2016 WL 1629356 (S.D.N.Y. Apr. 25, 2016) ..............16

*United States v. Garcia*,
 291 F.3d 127 (2d Cir. 2002)............................................................................27

*United States v. Greebel*,
 15 Cr. 637 (KAM) (E.D.N.Y. Oct. 6, 2017) .......................................................7

*United States v. Halper*,
 590 F.2d 422 (2d Cir. 1978)............................................................................17

*United States v. Harry*,
 No. 10-CR-1915 (JB), 2014 WL 6065705 (D.N.M. Oct. 14, 2014)......................32

*United States v. Hoey*,
 725 F. App'x 58 (2d Cir. 2018) ........................................................................20

*United States v. Kaye*,
    251 F.2d 87 (2d Cir. 1958)................................................................................21

*United States v. Kosinski*,
    No. 16-CR-148 (VLB), 2017 WL 4953902 (D. Conn. Oct. 31, 2017)....................9

*United States v. Larkin*,
    No. 2:12-CR-319 (JCM) (GWF), 2015 WL 4415506 (D. Nev. July 20, 2015) ....................33

*United States v. Lasanta*,
    978 F.2d 1300 (2d Cir. 1992)..........................................................................18

*United States v. Lauersen*,
    No. S298-CR-1134 (WHP), 2000 WL 1677931 (S.D.N.Y. Nov. 8, 2000) ............17

*United States v. Levin*,
    No. 15-CR-101, 2016 WL 8711458 (S.D.N.Y. Jan. 8, 2016)................................22

*United States v. Levy*,
    731 F.2d 997 (2d Cir. 1984)............................................................................17

*United States v. Litvak*,
    808 F.3d 160 (2d Cir. 2015)................................................................3, 4, 5, 8

*United States v. Massino*,
    546 F.3d 123 (2d Cir. 2008)............................................................................20

*United States v. McCallum*,
    584 F.3d 471 (2d Cir. 2009)..............................................................17, 21, 22, 26

*United States v. Mohel*,
    604 F.2d 748 (2d Cir. 1979)............................................................................17

*United States v. Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000)............................................................17, 21

*United States v. Newton*,
    No. S1 01-CR-635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002) ............16

*United States v. O'Connor*,
    580 F.2d 38 (2d Cir. 1978)..............................................................................17

*United States v. Pascarella*,
    84 F.3d 61 (2d Cir. 1996)................................................................................18

*United States v. Peterson*,
    808 F.2d 969 (2d Cir. 1987)............................................................................26

*United States v. Puzzo*,
928 F.2d 1356 (2d Cir. 1991).......................................................................2

*United States v. Regan*,
103 F.3d 1072 (2d Cir. 1997).......................................................................7

*United States v. Roldan-Zapata*,
916 F.2d 795 (2d Cir. 1990).......................................................................19

*United States v. Rosa*,
11 F.3d 315 (2d Cir. 1993).........................................................................18

*United States v. Sampson*,
No. 13-CR-269 S-5 (DLI), 2015 WL 2066073 (E.D.N.Y. May 4, 2015) ...............19

*United States v. Stewart*,
No. 03-CR-717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004)....................6

*United States v. Ulbricht*,
79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015) ......................................................26

*United States v. Van Putten*,
No. 04-CR-803 (PKL), 2005 WL 612723 (S.D.N.Y. Mar. 15, 2005) ....................8

*United States v. Wallach*,
935 F.2d 445 (2d Cir. 1991).......................................................................22

*United States v. Williams*,
740 F.3d 308 (4th Cir. 2014) ......................................................................21

**Statutes**

18 U.S.C. § 3...........................................................................................2

18 U.S.C. § 3500......................................................................................33

42 U.S.C. § 1983......................................................................................15

**Other Authorities**

Fed. R. Crim. P. 16 ..........................................................................31, 32, 33

Fed. R. Crim. P. 26 ...............................................................................33, 34

Fed. R. Evid. 401 .................................................................................. *passim*

Fed. R. Evid. 403 .................................................................................. *passim*

Fed. R. Evid. 404 .................................................................................. *passim*

Fed. R. Evid. 406 ..........................................................................................................7

Fed. R. Evid. 801 ..........................................................................................................5

Local Rule 23.1(h) ........................................................................................................1

McCormick's Handbook of the Law of Evid. (2d ed. 1972) ......................................21

McCormick On Evid. (7th ed. 2013) ...........................................................................7

<u>**Preliminary Statement**</u>

The defendants submit this memorandum of law in response to the government's motions *in limine* and in support of the defendants' motion to exclude evidence.[1]

<u>**Argument**</u>

**I.     The Government's Motion to Preclude Evidence and Argument Concerning Burke's Denials of the Loeb Assault Must Be Denied**

The 3500 material produced by the government reflects that Burke denied assaulting Loeb (by proclaiming his innocence and/or claiming that the government's investigation was retaliatory) to just about anyone who would listen—including to the defendants.  *See, e.g.*, Gov't Exs. 3500-SB-4 at 10; 3500-EC-1 at 4–5; 3500-BC-1 at 2; 3500-WM-2 at 3; 3500-JM-5 at 1; 3500-RS-2A at 5; 3500-DS-1 at 2.   The government begrudgingly acknowledges that Burke's denials are admissible if they were made in the defendants' presence—and that is plainly correct.  *See* Gov't Br. at 15, 17.  The government asserts, however, that statements made outside of the defendants' presence are inadmissible.  But the government ignores Second Circuit precedent that compels the admission of these statements, and its motion to exclude them must therefore be denied.

**A.     *Statements Burke Made in the Defendants' Presence Are Admissible***

The government concedes that "if Burke touted his innocence to the defendants in the presence of a third party" or "in the presence of a third party, touted his innocence to the defendants by explaining away the Federal investigation as retaliatory," evidence of these statements would

---

[1] The defendants do not oppose the government's motions (1) to preclude the defendants from referring to the prosecutors by name when referring to the investigation of this case (reserving the right to do so, if warranted and with prior notice to the Court, during the questioning of particular witnesses); (2) to preclude defense counsel from referring to their prior employment as federal prosecutors; (3) to provide lunch to the jury at a courthouse location other than the cafeteria; and (4) to preclude both the government and the defendants, and each of their respective counsel, from making extrajudicial statements in violation of Local Rule 23.1(h) or from causing others to make such statements.

be admissible—through the testimony of the third party, or the defendants, or Burke—as "non-hearsay offered to illustrate the impact and consequent effect of the statement on the mind of the listener." *See* Gov't Br. at 15, 17. Rightly so. Burke's denials, and his statements that the government's investigation was retaliatory (which, as the government acknowledges, are "a subset" of Burke's more general denials, *see id.* at 16), are plainly admissible to show that the defendants did not believe that Burke assaulted Loeb. Indeed, it is difficult to conceive of more probative evidence, given that such denials would make it entirely nonsensical for the defendants to obstruct the federal investigation into the assault and would help negate Count 4 of the indictment, the accessory after the fact charge, given that knowledge that the underlying offense was committed is an element of that offense. *See* 18 U.S.C. § 3. Accordingly, evidence that Burke, in the defendants' presence, denied assaulting Loeb or questioned the motive of the government's investigation must be admitted. *See, e.g.*, *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 88–90 (2d Cir. 2014) (finding the district court abused its discretion when it excluded evidence of statements made to the defendants that "was not offered for its truth but to show that the statements occurred and that, given their effect on the defendants' state of mind, they provided a good faith basis for the defendants' actions"); *United States v. Puzzo*, 928 F.2d 1356, 1365 (2d Cir. 1991) (similar).

## B.     *Statements Burke Made Outside of the Defendants' Presence Are Also Admissible*

The government contends that Burke's denials are inadmissible, however, if they were made outside of the defendants' presence, arguing that such denials are irrelevant and confusing and amount to propensity evidence. Gov't Br. at 14–17. The government is mistaken.

1.      **The Evidence Is Relevant**

Evidence that Burke repeatedly denied assaulting Loeb and repeatedly offered an exculpatory explanation of the government's investigation into the assault to third parties is highly relevant and admissible.  This evidence will corroborate testimony that Burke denied assaulting Loeb to the defendants and had an explanation for the investigation against him.  This is because evidence that Burke broadcast his denials and explanations to many other individuals provides a basis to infer that Burke also made the same statements to the defendants.  In other words, the fact that Burke denied the assault to many other individuals makes it more likely than otherwise that he also denied it to the defendants.  *See, e.g.*, Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable"); *Certified Envtl. Servs., Inc.*, 753 F.3d at 91 (finding that evidence that "corroborate[d]" statements that were relevant to a defendant's state of mind "was admissible for the same reasons" that evidence of the underlying statements was admissible).

Moreover, the evidence will help demonstrate that the defendants believed Burke, because evidence that Burke denied assaulting Loeb to many others, and offered them an exculpatory explanation for the government's investigation, would provide a basis to infer that the defendants believed Burke's similar denials.  The Second Circuit has held that this type of circumstantial evidence is admissible when the defendant's state of mind is at issue.  *See United States v. Litvak*, 808 F.3d 160, 188–90 (2d Cir. 2015).  In *Litvak*, the defendant was charged with securities fraud and related crimes as a result of his allegedly making misrepresentations to counterparties regarding residential mortgage-backed securities with the illicit intent of inflating profits for his employer, Jefferies & Company.  *Id.* at 166.  Litvak sought to introduce evidence at trial reflecting that his supervisors routinely approved conduct of his colleagues that was similar to his, to support

the inference that Litvak lacked the fraudulent intent required to convict. *Id.* at 188. The district court admitted evidence that supervisors had approved Litvak's own conduct, but excluded evidence that they approved his colleagues' conduct, on the ground that the evidence was "irrelevant when it does not involve [Litvak]." *Id.* at 188–89; *see also id.* 189 n.35 (finding the evidence inadmissible "[u]nless there's a witness who will say he told it to Mr. Litvak or Mr. Litvak said I knew about all of these"). Litvak appealed, arguing that "the excluded evidence would have been relevant to demonstrate [his] lack of fraudulent intent and good faith." *Id.* at 189 (internal quotation marks omitted).

The Second Circuit agreed with Litvak. *Id.* at 190. The Court found that, while the excluded evidence did not involve Litvak, it nonetheless "would [have] support[ed] Litvak's attempt to introduce a reasonable doubt as to his intent to defraud, *i.e.*, that he held an honest belief that his conduct was not improper or unlawful" because a jury "may have found [Litvak's alleged good faith belief] more plausible in light of his supervisors' approval of his colleagues' substantially similar behavior." *Id.* The court therefore found that, while the evidence was "less probative" than evidence concerning Litvak's own conduct, "the District Court exceeded its allowable discretion in concluding that this testimony was not relevant under the low threshold set forth by Federal Rule of Evidence 401." *Id.* The court also admonished that "'since [good faith] may be only inferentially proven, no events or actions which bear *even remotely* on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh'" its relevance. *Id.* (quoting *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) and *United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989)) (emphasis added).

The same reasoning applies here. As in *Litvak*, evidence of Burke's "widespread" denials may render the defendants' good faith belief in Burke's innocence "more plausible" to the jury. *See id.* at 188, 190. This evidence of Burke's denials therefore is relevant and admissible under Rule 401. Indeed, its admission is particularly justified here, given what the Second Circuit in *Litvak* recognized are the limited options that a defendant has to prove his or her state of mind. *See id.* at 183.

Finally, the government's stray reference to the hearsay rule—asserting that Burke's denials "may be inadmissible hearsay as not made 'in furtherance of the conspiracy,'" *see* Gov't Br. at 16 (quoting Fed. R. Evid. 801(d)(2)(E)), is inapt. The defendants do not intend to seek admission of Burke's denials for their truth; to the contrary, the statements were false exculpatory denials. As a result, the hearsay rules do not apply. *See* Fed. R. Evid. 801(c)(1) (defining hearsay as a statement offered "to prove the truth of the matter asserted in the statement").

For all these reasons, the government's assertion that evidence of Burke's statements to third parties is irrelevant and inadmissible must be rejected.

## 2. The Probative Value of the Evidence Is Not Substantially Outweighed by the Danger of Confusing or Misleading the Jury

The government's argument that evidence of Burke's denials and explanations to others will be overly "confus[ing]" or "misleading," *see* Gov't Br. at 16, and thus should be excluded under Federal Rule of Evidence 403, is also meritless.

For the government's argument to prevail, it must show that the probative value of the evidence is substantially outweighed by the danger of confusion. Here, the probative value of the evidence is strong. Given the charges that the defendants corruptly helped cover up Burke's assault of Loeb, evidence that Burke himself repeatedly denied the assault, and proffered an explanation for the investigation of him, is extremely probative evidence of the defendants' lack of motive,

lack of knowledge, and overall lack of corrupt intent. Indeed, other than statements made in the defendants' presence, it is hard to imagine any more probative evidence on these central issues than the evidence the government seeks to exclude.

On the other hand, the government offers no support for its boilerplate assertion that Burke's denials will be confusing or misleading. This is understandable, since there is no such risk. Indeed, we expect it will be crystal clear to the jury that Burke's denials were exactly what the government says they were—false exculpatory statements. Neither side will argue that they were true. The defendants will argue, instead, that Burke's denials led them to believe that Burke was not guilty of the assault and, thus, the defendants had no motive or intent to obstruct the investigation into it.

Likewise, the government's footnote assertion that evidence of Burke's statements concerning the federal investigation of him would confuse the jury or distract from the evidence, *see id*. at 17 n.5, also does not withstand scrutiny. Put simply, there is nothing confusing about evidence that Burke, while under investigation, proffered an exculpatory explanation for the government's investigation of him. Indeed, it is not as if the defendants will argue that Burke's statements were true and that Burke was actually an innocent, wrongfully prosecuted man.

Equally meritless is the government's suggestion that admitting this evidence would "encourage jury nullification." *Id*. It is hard to understand how such evidence could possibly lead to nullification in this case. Notwithstanding Burke's statements while under investigation, at the end of the day, Burke pled guilty and the defendants do not intend to argue that the federal investigation of him was without basis. Moreover, the cases the government cites in support of its argument are inapposite—they merely state that defendants may not argue selective prosecution to the jury. *See id.* (citing *United States v. Stewart*, No. 03-CR-717 (MGC), 2004 WL 113506, at

*1 (S.D.N.Y. Jan. 26, 2004) and *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997)).  The defendants do not intend to do any such thing here.

### 3.      Rule 404 Does Not Prohibit Introduction of Burke's Statements

The government also argues that Burke's statements are inadmissible as improper character or propensity evidence.  For several reasons, this argument is wrong.

To begin with, Federal Rule of Evidence 404 prevents the admission of evidence only of "a person's character."  *See* Fed. R. Evid. 404(a)(1), (b)(1).  Burke's denials are not "character" evidence.  They are statements, and evidence of them is not barred by Rule 404's prohibition of evidence of "character."  *See, e.g.*, McCormick On Evid. § 195 (7th ed. 2013) (defining character, in the context of Rule 404, as "'a *generalized description* of a person's disposition or a general trait, such as honesty, temperance, or peacefulness'" (emphasis added)); Fed. R. Evid. 406, Adv. Comm. Notes, 1972 Proposed Rules (same).  Indeed, the defendants do not seek to introduce evidence of Burke's "character," much less that he "acted in accordance with the character."  *See* Fed. R. Evid. 404(b)(1).  For this reason, the government's postulation of our argument—that Burke "has the character trait of being a liar," *see* Gov't Br. at 15—is simply wrong.  To the contrary, the defendants merely seek to prove that Burke denied assaulting Loeb to numerous witnesses in order to substantiate that Burke made the very same denial to the defendants— regardless of Burke's general character for honesty.

That is the fatal flaw in the government's reliance on *United States v. Greebel*, 15 Cr. 637 (KAM) (E.D.N.Y. Oct. 6, 2017).  In *Greebel*, the defendant sought to introduce evidence of an undefined series of lies, made by his co-defendant Martin Shkreli to third parties, as well as Shkreli's "long-term pattern and practice of blaming others for his own misconduct," on the theory that this evidence proved that Shkreli must have also lied to the defendant.  *See id.*, Doc. No. 159

at 1–3. Unlike here, the defendant in *Greebel* did not assert that the proffered lies were connected to the charged conspiracy in any way, much less identify any specific lie that Shkreli told third parties to corroborate evidence that Shkreli told the same lie to the defendant. Accordingly, the defendant's argument—that, because Shkreli had lied to others, he must have also lied to the defendant—was, by the defendant's own admission, classic propensity evidence. *See Greebel*, 15 Cr. 637, Doc. No. 348 at 25 (government's reply brief) (noting that, in response to the government's motion to exclude the evidence on propensity grounds, "[t]he defendant [did] not deny [that] he intend[ed] to make such an improper argument or contend that the argument would be proper under FRE 404(b)(1)"). Thus, the court's comment in *Greebel* that "this sounds like propensity evidence" (*see* Gov't Br. at 14)—a comment which, notably, never culminated in an actual ruling—is inapplicable here.

Moreover, Rule 404(b) does not apply for the simple reason that the evidence in question relates directly to the charged crimes, and not (as Rule 404(b) contemplates) to an uncharged "crime, wrong or other act." The law is clear that evidence of acts that "arose out of the same transaction or series of transactions as the charged offense" is admissible regardless of Rule 404(b). *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see United States v. Van Putten*, No. 04-CR-803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005) ("Rule 404(b) governs the admissibility only of extrinsic evidence," which is "evidence of acts that are *unrelated to* the charged crime") (emphasis added). Tellingly, when the Second Circuit in *Litvak* considered the admissibility of similar evidence, it did not look to Rule 404(b) to determine whether such evidence was admissible. Accordingly, evidence of Burke's statements to third parties is not subject to Rule 404(b).

For all of the foregoing reasons, the government's motion to exclude evidence of Burke's denials and explanations made outside of the defendants' presence must be denied.[2]

## II.    The Government's Motion to Preclude Relevant Evidence Concerning Minor Details of the Defendants' Personal Backgrounds Should be Denied

The government moves to preclude the defendants from making any statements or arguments about their personal backgrounds, including their ages, marital status, or family. *See* Gov't Br. at 6–7. The government concedes that evidence of the defendants' *legal* backgrounds will be admissible at trial. *Id.* at 7. This concession is unsurprising since, given the facts of this case, evidence about the defendants' legal backgrounds will inevitably be brought up to some extent at trial.

As to basic information about the defendants' personal lives, the Court has great leeway as to what evidence may be introduced regarding a defendant's background. Indeed, courts, relying on such discretion, have endorsed the admission of evidence similar to that which the government seeks to preclude here. *See, e.g., United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (holding that admitting evidence of defendant's military service and educational background was proper because "it told the jury something about the defendant as a person, and his experience in life"; "[c]ertainly, the trial court is entitled to wide discretion concerning the admissibility of background evidence"); *United States v. Kosinski,* No. 16-CR-148 (VLB), 2017 WL 4953902, at *5–6 (D. Conn. Oct. 31, 2017) (denying government's motion to exclude evidence of the

---

[2] Based on the 3500 material produced to the defendants, it appears that the government may seek to introduce evidence of admissions by Burke, made outside of the defendants' presence, that he assaulted Loeb. *See, e.g.*, Gov't Exs. 3500-JH-7 at 4; 407. But it cannot be the case that the government will be permitted to admit evidence of Burke's *admissions* to individuals other than the defendants, while the defendants are precluded from admitting his many *denials*. Accordingly, if the Court grants the government's motion to exclude evidence of Burke's denials made outside of the defendants' presence, it should similarly exclude evidence of all such admissions as well.

defendant's general personal background, such as age, employment, and family, without prejudice to renewal if the defendant attempted to elicit personal information outside the scope of Rules 401 and 403); *see also Gov't of Virgin Islands v. Grant*, 775 F.2d 508, 513 (3d Cir. 1985) ("During the course of a trial, it is customary for the defendant to introduce evidence concerning his background, such as information about his education and employment. Such evidence is routinely admitted without objection."); Fed. R. Evid. 401, Adv. Comm. Note ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").

Here, in a case where the government appears poised to attack the defendants' character through all manner of extrinsic evidence, it is ironic that it is concerned about the potential prejudice if the jury should learn their ages or basic details about their respective families. We certainly agree that the government and the defense should not say anything in opening statements that they do not have a good-faith basis to believe they can support with admissible evidence. But in this case, there are many government witnesses who will have first-hand knowledge of these basic details of the defendants' personal lives.

We respectfully submit that it is entirely appropriate to allow the defendants to establish elementary facts about their ages and families. Such minimal family information would not be offered to prove good character, but merely to humanize the defendants in the face of the government's expected portrayal of them at trial. In any event, the government cannot seriously contend that, in the context of a several-week trial in which the government plans to call as many as 38 witnesses, the risk of prejudice to the government from this minimal evidence—or that the jury would decide the case on the basis of it—is so great that exclusion is required under Rule 403.

Moreover, certain personal aspects of Mr. McPartland's life are directly relevant to his availability and state of mind during a critical period of the alleged conspiracy. Specifically, Mr. McPartland's wife was diagnosed with breast cancer in the summer of 2013 (soon after the federal investigation of the Loeb assault began), had surgery in September of 2013 (a few weeks before the Loeb suppression hearing), and had additional surgery in December 2013 (a few weeks after the Loeb suppression hearing). During that same time period, his father was suffering from lung cancer and was hospitalized as well. This was a critical time period in the alleged conspiracy. As multiple government witnesses will be able to attest, during that period of time Mr. McPartland was out of the office for extended periods of time and was highly focused on his family's health issues. This was contemporaneously discussed with multiple government witnesses. Obviously, it is critical that these basic facts be elicited at trial in order for the jury to assess properly Mr. McPartland's presence, knowledge, intent, and, state of mind during that critical period of time.

Accordingly, the government's motion should be denied, without prejudice to the government's right to renew it on a question-by-question basis at trial, should the defense's questions exceed the bounds of admissibility.

## III. Evidence of Burke's IAB History and Other Unsubstantiated Allegations Against Burke Must Be Excluded

Based on the government's 3500 material and exhibit list, it appears that the government intends to introduce evidence spanning Burke's entire 30-year career with the SCPD, including largely unproven allegations of misconduct in his Internal Affairs Bureau ("IAB") file and other unsubstantiated allegations against him, in an effort to smear the defendants for their mere association with Burke. For example, the government has included on its exhibit list documents— including Burke's entire IAB and personnel files—that reflect alleged conduct by Burke that the IAB investigated and, in all but one instance, deemed unfounded. *See* Gov't Exs. 811, 813, 915,

924. In addition, the government has included an anonymous letter spouting wild and unsubstantiated allegations against Burke, bearing no connection whatsoever to the conduct charged in this case, and a letter by Mr. Spota responding to those allegations. *See* Gov't Exs. 902, 906.

Based on the government's notice under Rule 404(b), the government apparently intends to seek to admit this evidence as (1) direct evidence of the charged conspiracy, or (2) as proof of the defendants' "relationships of mutual trust" with Burke or their "motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident" under Rule 404(b). *See* Gov't 404(b) Ltr., dated Mar. 11, 2019, at 1–2. Because evidence of Burke's IAB history and other unsubstantiated allegations against him is (1) irrelevant to the instant charges, (2) inadmissible as direct evidence of the alleged conspiracy, (3) inadmissible as propensity evidence under Rule 404(b), and (4) runs afoul of each of the dangers specified in Rule 403, all such evidence (except for evidence concerning the Loeb assault) must be excluded at trial.[3]

### A.    *Background*

Burke's IAB file—which includes allegations stretching from 1987 through 2013, and totals nearly 2,000 pages—is rife with allegations that are simply irrelevant to this case. *See* Burke 000146–2141. For example, the file includes over 20 complaints against Burke—only one of which was substantiated—concerning allegations of false arrest, improper performance, conduct unbecoming an officer, weapon discharge, drug dealing, verbal abuse, assault, undue force,

---

[3] While the defendants moved to exclude evidence in the 3500 material of certain alleged misconduct by Burke in their opening brief, *see* Defs.' Br. at 17–19, the defendants did not address specific exhibits at that time due to the government's late delivery of an adequate exhibit list and on the understanding that the government would address these issues in its Rule 404(b) motion. Because the defendants have since received a revised exhibit list, and the government did not address these issues in its Rule 404(b) motion, we raise them now. *See* Defs.' Br. at 17 n.1, 50 n.2.

drinking while on duty, having a "love child," running a prostitution ring, failure to investigate, and engaging in outside employment. *See id.* Burke's 350-page personnel file also includes references to these allegations and other alleged misconduct. *See* Burke 000001–351. Only one of the complaints—concerning Burke's assault of Loeb—has anything to do with this case.

Troublingly, the government's exhibit list also includes correspondence with Mr. Spota— in particular, 1995 letters to and from him, in his role as Burke's private attorney in connection with an IAB investigation—suggesting the government may seek to impugn Mr. Spota simply for taking on the entirely lawful role of Burke's defense attorney. *See* Gov't Ex. 915. Specifically, while working in private practice, Mr. Spota represented numerous police officers in connection with IAB investigations, including, in one instance, Burke. Mr. Spota represented Burke in connection with a 1993 IAB case, in which Burke was alleged to have consumed crack cocaine, failed to voucher crack cocaine he seized while on duty, consorted with a prostitute while on duty, and failed to safeguard his service weapon in her presence. *See* Burke 000638–740. Ultimately, the latter two allegations were determined to be substantiated and Mr. Spota negotiated Burke's plea to those charges. *Id.* Burke was required to forfeit 15 days of leave time as a result. *Id.*

In another case, a partner at Mr. Spota's law firm represented Burke in connection with an allegation, made in 1999, that Burke was running a prostitution ring with the complainant's estranged wife. *See* Burke 001675–1739, 001916–2141. The IAB referred the matter to the Suffolk County District Attorney's Office ("SCDAO") for possible criminal investigation, stating that it had exhausted all available lines of inquiry and could not substantiate the charge. The SCDAO also found no information substantiating the allegation and classified it as baseless—an outcome documented in a 2002 memo from Mr. Spota. *See* Gov't Ex. 924.

Finally, the government's exhibit list includes an anonymous and undated letter, apparently circulated at the time Burke was being considered for the position of the SCPD Chief of Department, containing numerous unfounded allegations against Burke, including that he was associated with drug dealers, was "caught up in some type of prostitution sting," "threaten[ed] subordinates," and engaged in other schemes reflecting his position as "the most powerful person in the SCPD." *See* Gov't Ex. 906. The government's exhibit list also includes Mr. Spota's response, sent to Kevin Law, who was leading a search committee for the position, debunking the allegations as unsubstantiated. *See* Gov't Ex. 902.

### B. Argument

#### 1. Evidence of Burke's IAB History and Other Unsubstantiated Allegations Is Irrelevant

Rule 401 sets a low threshold for relevance, directing that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *See* Fed. R. Evid. 401. The numerous sordid, and largely unproven, allegations against Burke described above cannot meet even that low threshold.

To begin with, virtually all of the allegations were (and are) unsubstantiated and unproven. The government cannot plausibly suggest that unproven allegations against Burke bear in any legitimate way on the charges against Mr. Spota. To the contrary, admission of this evidence would constitute a shameful combination of character assassination and guilt by association that ought not occur in any legal proceeding, much less a criminal trial. *See, e.g., Dent v. U.S. Tennis Ass'n, Inc.*, No. CV-08-1533 (RJD) (VVP), 2008 WL 2483288, at *3 (E.D.N.Y. June 17, 2008) ("In addition to being inadmissible as hearsay, unproved allegations of misconduct are not proof of anything. Thus, courts have stricken allegations in complaints referring to investigations of

allegations of wrongdoing, even when conducted by governmental agencies."); *Scantek Medical, Inc. v. Sabella*, 693 F. Supp. 2d 235, 241 n.1 (S.D.N.Y. 2008) ("It is fundamental that unproven allegations are not proof of their content."). Indeed, courts have held that unsubstantiated allegations in IAB files are insufficient to meet even a plaintiff's burden of proof in a *civil* case brought under 42 U.S.C. § 1983. *See, e.g., Sealey v. Fishkin*, No. 96-CV-6303 (RR), 1998 WL 1021470, at *3 (E.D.N.Y. Dec. 2, 1998) (finding that unsubstantiated allegations of misconduct do not prove City's deliberate indifference); *Marcel v. City of New York*, No. 88-CV-7017 (LLS), 1990 WL 47689, at *8–9 (S.D.N.Y. Apr. 11, 1990) (finding that unsubstantiated complaints do not support a claim of municipal failure to train).

Similarly, Mr. Spota's representation of Burke in the lone substantiated IAB matter cannot satisfy the minimal threshold for relevance. There is nothing about Mr. Spota's lawful representation of Burke—which occurred when Mr. Spota was a private attorney, on a matter entirely unrelated to the Loeb assault—that makes it more likely that Mr. Spota joined with Burke 17 to 20 years later to corruptly obstruct the federal investigation of that assault. And the mere fact that Mr. Spota lawfully defended Burke from unfounded allegations in an anonymous letter also makes it no more probable that Mr. Spota later engaged in a criminal conspiracy to obstruct justice on Burke's behalf. Mr. Spota's response to the anonymous letter, therefore, is simply irrelevant to the charges in this case as well.

### 2. Evidence of Burke's IAB History and Other Unsubstantiated Allegations Cannot Be Admitted As Direct Evidence

Evidence of other acts may be admitted as direct evidence, and not analyzed under Rule 404(b), only if the act "arose out of the same transaction or series of transactions as the charged offense," was "inextricably intertwined with the evidence regarding the charged offense," or is "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44. Thus, prior to

admitting evidence of other acts as direct evidence, courts look to whether the act was "part and parcel" of or had a "crucial connection to" the charged offense, or whether "the charged [offense was] not straightforward and [could not] be fully understood without reference to [the other act]." *United States v. Newton*, No. S1 01-CR-635 (CSH), 2002 WL 230964, at *2–3 (S.D.N.Y. Feb. 14, 2002). When it is "not manifestly clear that the evidence in question is intrinsic proof of the charged crime," the evidence must be assessed under Rule 404(b). *United States v. Fiumano*, No. S3 14-CR-518 (JFK), 2016 WL 1629356, at *3 (S.D.N.Y. Apr. 25, 2016).

The government cannot satisfy the standards for admitting the disputed information as direct evidence of the crimes charged. As noted above, there is nothing in Burke's IAB or personnel file, or in the documents reflecting other unsubstantiated allegations against him (other than the Loeb assault), that are related to this case, much less "inextricably intertwined with" or "necessary" to understanding the charged conduct. Similarly, while Mr. Spota represented Burke with respect to a single IAB proceeding, and his firm represented Burke in a second IAB proceeding, these representations are patently unrelated to this case. Moreover, the anonymous letter and Mr. Spota's response—both of which were written prior to the Loeb assault—are similarly unconnected to the conduct charged here. Indeed, the only remote connection between any of this evidence and the instant charges is the involvement of both Mr. Spota and Burke—but that is a patently insufficient basis to find that this evidence has a "crucial connection" to the alleged offenses. Accordingly, evidence concerning Burke's IAB history and other unsubstantiated allegations against him cannot be admitted as direct evidence of the charged conduct.

### 3. Evidence of Burke's IAB History and Other Unsubstantiated Allegations Cannot Be Admitted Under Rule 404(b)

Rule 404(b) prohibits "the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." *See Huddleston v. United States*, 485 U.S. 681, 685 (1988). District courts should not presume that 404(b) evidence is relevant or admissible. *United States v. Halper*, 590 F.2d 422, 432 (2d Cir. 1978); *United States v. Mohel*, 604 F.2d 748, 751 (2d Cir. 1979). Rather, courts must determine whether the evidence is offered for a proper purpose (specifically, for a purpose other than to show propensity), relevant to a disputed issue, and more probative than prejudicial; if the evidence is admitted, courts must also administer an appropriate limiting instruction upon request. *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

It is the government's burden to show the admissibly of evidence under Rule 404(b), *United States v. Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000); *United States v. Lauersen*, No. S298-CR-1134 (WHP), 2000 WL 1677931, at *3 (S.D.N.Y. Nov. 8, 2000), and it must "explain in detail the purposes for which the evidence is sought to be admitted," *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) ("[C]aution and judgment are called for, and a trial judge faced with an other crimes evidence problem should require the Government to explain why the evidence is relevant and necessary."). The government cannot meet that burden here.

To begin with, the government has failed entirely to provide any detailed explanation for why the disputed information should be admitted under Rule 404(b). This is because it decided unilaterally—and contrary to law—that it could be admitted as direct evidence of the charged offenses and that no justification of its proffer was necessary. *See* Gov't Ltr., dated Oct. 24, 2019

("Gov't 10/24/19 Ltr."), at 2 n.1.  Under the legal standards set forth above, this alone is a basis to deny admission of the evidence.

In any event, there is no credible claim that the proffered evidence is admissible with respect to any of the enumerated purposes in Rule 404(b).  For example, the mere fact that numerous unsubstantiated allegations were made against Burke cannot logically show that the defendants had "knowledge" that Burke assaulted Loeb, especially because the alleged conduct had nothing to do with Loeb.  Instead, the only purpose that the evidence could serve is to support the illogical proposition that Burke had an unproven propensity to act improperly and therefore the defendants knew that Burke assaulted Loeb.  Such an argument is plainly prohibited by Rule 404(b)'s bar on propensity evidence.

The same is true of evidence of Mr. Spota's representation of Burke, as well as Mr. Spota's letter responding to anonymous allegations against Burke.  As an initial matter, the evidence cannot be used to support the existence of a "relationship of mutual trust" between Mr. Spota and Burke because courts in the Second Circuit assessing whether evidence may be admitted for that purpose consistently look to whether the other act fostered trust between co-conspirators to engage in *illegal* conduct.[4]  By contrast, the evidence of Mr. Spota's representation of Burke and his letter

---

[4] *See, e.g.*, *United States v. Diaz*, 176 F.3d 52, 79–80 (2d Cir. 1999) (finding that evidence of prior drug dealing "informed the jury . . . how illegal relationships and mutual trust developed between co-conspirators"); *United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996) (finding that the defendant's statement to a witness that she had previously acted as a drug courier was admissible to demonstrate a relationship of trust between the two that explained why the witness allowed the defendant to participate in a drug pick-up); *United States v. Pascarella*, 84 F.3d 61, 72 (2d Cir. 1996) (finding no abuse of discretion when the trial court admitted "evidence of [the defendant's] past [illegal] gambling dealings with some of the co-conspirators to enable the government to 'establish the basis of a trust relationship'"); *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) (finding that evidence of the defendant's and a co-conspirator's "prior dealings" in car thefts and drug sales "was properly admitted to explain how the illegal relationship between the two had developed"); *United States v. Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) (affirming admission

refuting anonymous allegations against Burke demonstrate no such illegal activity. Because there is nothing about this evidence that makes it more probable that Mr. Spota illegally conspired with Burke to obstruct the investigation into the Loeb assault, the evidence cannot be admitted to establish a "relationship of mutual trust" under Rule 404(b).

In addition, representing a client or writing a letter refuting anonymous allegations plainly does not give rise to a "motive" or "intent" to obstruct a federal criminal investigation, unless the government seeks to criminalize the conduct of the entire defense bar and employers alike. Instead, the proffered information would only serve as some form of illogical propensity evidence—to show that, because Mr. Spota sought to lawfully defend Burke in an IAB proceeding and debunk spurious allegations about him, Mr. Spota also sought to illegally protect Burke by conspiring to corruptly obstruct the federal investigation of the Loeb assault. *See, e.g., United States v. Cushing*, No. S3:00-CR-1098 (WHP), 2002 WL 1339101, at \*3 (S.D.N.Y. 2002) (precluding introduction of propensity evidence under Rule 404(b)); *United States v. Sampson*, No. 13-CR-269 S-5 (DLI), 2015 WL 2066073, at \*8 (E.D.N.Y. May 4, 2015) (same). Because propensity evidence is strictly impermissible under Rule 404(b), evidence of Mr. Spota's representation of Burke, and Mr. Spota's letter responding to the anonymous allegations about Burke, must be excluded.

---

of evidence of prior drug dealing to explain "how the co-conspirators came to interact with each other, and [to render] more plausible their joint participation in the heroin and cocaine conspiracies charged in the indictment" (citation omitted)); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) ("The pre-existing drug-trafficking relationship between [the co-conspirators] furthered the jury's understanding of how the instant transaction came about and their role in it."); *United States v. Brennan*, 798 F.2d 581, 590 (2d Cir. 1986) ("[E]vidence of corruption . . . helped explain to the jury how the illegal relationship between Brennan and Bruno developed[.]").

### 4. Evidence of Burke's IAB History and Other Unsubstantiated Allegations Must Be Excluded Under Rule 403

Evidence cannot be admitted as direct evidence or under Rule 404(b) if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Even if the foregoing evidence was otherwise admissible, it must be still excluded under Rule 403 because admission of the evidence would pose each of the Rule's enumerated dangers.

Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence," *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008), including "excit[ing] emotions against the defendant," *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *see also* Fed. R. Evid. 403, Adv. Comm. Notes, 1972 Proposed Rules ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

The salacious evidence here more than meets this standard. Burke's IAB and personnel files, and the anonymous letter, include allegations that Burke used "crack cocaine"; associated with a drug dealer; engaged in a "sexual relationship" with prostitute and had a "love child" with her; engaged in "sexual acts in police vehicles, while on duty and in uniform"; failed "to safeguard [a] service weapon"; and "r[an] a prostitution enterprise." Admitting these highly inflammatory allegations would create a serious risk that the jury would unfairly judge the defendants for Burke's alleged—and largely unproven—sins. Courts have barred the admission of this type of inflammatory evidence based on similar concerns. *See, e.g.*, *United States v. Hoey*, 725 F. App'x 58, 61 (2d Cir. 2018) (noting exclusion of 404(b) evidence concerning the defendant's involvement with drugs and prostitutes); *id.*, 15 Cr. 229 (PAE), Doc. No. 63 (S.D.N.Y. Mar. 11, 2016) (excluding evidence of the defendant's involvement with drugs and prostitutes as unfairly

prejudicial); *Collado v. City of New York*, No. 11-CV-9041 (DAB), 2017 WL 4533772, at *5 (S.D.N.Y. Sept. 27, 2017) (excluding evidence of a party's drug use as unfairly prejudicial).

Further, this risk of unfair prejudice substantially outweighs any conceivable probative value of the evidence. Nearly all of the foregoing allegations concern conduct that allegedly occurred 20 or more years ago—including Mr. Spota's representation of Burke, which occurred in 1995. Courts have routinely held that such remoteness in time is a proper basis for deeming evidence to be minimally relevant under Rules 404(b) and 403. *See, e.g.*, *United States v. Corey*, 566 F.2d 429, 432 (2d Cir. 1977) (holding that the "minimal relevancy" of a prior bad act was "further buttressed by its remoteness in time," having occurred 16 years before the trial and between five and seven years before the charged conduct); *id.* (citing McCormick's Handbook of the Law of Evid. 439 n.30 (2d ed. 1972) ("In appraising the probative worth of the offered evidence, before determining whether it is outweighed by the countervailing dangers, the distance in time of the facts offered will often cause the court to discount its value.")); *United States v. Kaye*, 251 F.2d 87, 90 (2d Cir. 1958) (barring evidence of acts that were too remote from period of alleged conspiracy to have probative value); *United States v. Williams*, 740 F.3d 308, 315 (4th Cir. 2014) (finding evidence "dating back well over a decade ago had minimal probative value to Defendant's criminal case"); *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th Cir. 2011) (finding the "introduction of several old, unrelated misconduct complaints [from the mid-1990s] against a single officer risked creating a sideshow and sending the trial off track").

In addition, the probative value is further "undercut by the availability of other, less prejudicial evidence that makes the same point[]." *See Nachamie*, 101 F. Supp. 2d at 142; *McCallum*, 584 F.3d at 477 (internal quotation marks omitted) ("The availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of

extrinsic evidence.").  The only non-propensity purpose for introducing the evidence at issue is to show that Mr. Spota and Burke knew each other in the 1990s and that Mr. Spota responded to unsubstantiated allegations against Burke in 2011.  But such evidence will be entirely unnecessary to prove that Mr. Spota knew Burke or sought to advance his interests, given that the government also intends to introduce evidence that Mr. Spota (a) "[h]ad a long-term personal and professional relationship with Burke, . . . when the two first met in connection with the investigation and prosecution of the murder of Johnny Pius [in the late 1970s, when Mr. Spota was the prosecutor and Burke was a witness];" (b) "[h]elped and supported Burke throughout the course of his law enforcement career" by "facilitating Burke's hiring by New York City Police Department and [SCPD]" and by hiring and promoting Burke within the SCDAO; and (c) "[r]eceived support from Burke during his various campaigns for Suffolk County District Attorney."  *See* Gov't 404(b) Ltr., dated Mar. 11, 2019, at 2.  This non-exhaustive list of evidence will give the jury a more than ample understanding of the nature and length of the relationship between Mr. Spota and Burke, making the probative value of the evidence in question here practically non-existent.

For that same reason, the evidence at issue here is needlessly cumulative.  *See, e.g.*, *United States v. Wallach*, 935 F.2d 445, 472 (2d Cir. 1991) ("A district court must be careful to consider the cumulative impact of the evidence on the jury and to avoid the potential prejudice that might flow from its admission."); *United States v. Levin*, No. 15-CR-101, 2016 WL 8711458, at *8 (S.D.N.Y. Jan. 8, 2016) ("The Government must proceed with caution because of the potential cumulative effect of such evidence."); *United States v. Avendano*, No. S1 02-CR-1059 (LTS), 2004 WL 2734435, at *5 (S.D.N.Y. Nov. 30, 2004) (barring evidence of other bad acts in part because the prosecution had other evidence that would "provide adequate context" for the jury); *McCallum*,

584 F.3d at 477 (noting that the court was "at a loss to understand" how particular Rule 404(b) evidence was necessary when the government had "all of this [other] evidence" available).

Finally, permitting the government to offer this evidence would risk confusing the issues and misleading the jury to believe that Mr. Spota's prior efforts on Burke's behalf were somehow improper—such that the jury may choose to convict on this irrelevant and inappropriate basis. Moreover, the detour required to disprove the insinuation that the defendants are somehow responsible for Burke's alleged misconduct, or that Mr. Spota's efforts on Burke's behalf were somehow untoward, would result in undue delay and waste time for the jury and the Court.

Admitting the proffered evidence, in short, raises each and every risk identified by Rule 403 as a basis for exclusion. Taken together, the accumulated weight of those risks leads inescapably to the conclusion that this evidence has no legitimate place at this trial.

## IV. The Government's Motion to Admit Evidence of a Minor Car Accident in 2011 Involving Burke and Mr. McPartland Should Be Denied

As part of its kitchen-sink strategy, the government has moved by letter dated October 24, 2019, to admit evidence of a minor car accident that occurred between Burke and Mr. McPartland in 2011, after which Burke paid to repair Mr. McPartland's SCDAO-leased car privately. The government seeks by this application to twist that episode into proof of the defendants' criminal intent to obstruct justice with Burke. Given the complete lack of any similarity between the car accident and the alleged obstruction conspiracy, this evidence cannot be admitted under Rule 404(b). Moreover, the government's claim that this evidence is admissible to show the "relationships of mutual trust" between the defendants and Burke bends that doctrine beyond its breaking point. Simply put, not *any* prior conduct showing mutual trust is admissible under this doctrine; rather, the conduct must help explain how the defendants came to understand that they

could commit crimes together—and this evidence plainly fails to satisfy that test. Accordingly, the government's motion should be denied.

### A. Background

### 1. The Automobile Accident

The government indicates in its motion that, if its *in limine* request is granted, witnesses will testify that:

> [O]n or about December 31, 2011, Christopher McPartland and James Burke were out drinking at Butterfields restaurant in Hauppauge, New York; upon leaving the restaurant, at the intersection of Route 34 and Old Willets Road, Burke drove his vehicle into the rear of McPartland's county-issued vehicle; neither Burke nor McPartland reported the accident to authorities; a third party was tasked with getting the county-issued vehicle repaired; Burke paid for the repairs in cash; the third-party, who was responsible for the repairs, was instructed not to tell anyone about the accident. No one was injured during the accident.

Gov't 10/24/19 Ltr. at 2.

Notably, the government does not assert in its motion that any witness will testify that Burke and Mr. McPartland were intoxicated at the time of the accident. Indeed, based on our review of the 3500 material, there is no indication that any witness will testify that either Burke or Mr. McPartland was intoxicated on the evening in question or that they illegally drove under the influence of alcohol. Instead, there appear to be only two witnesses (other than Burke and Mr. McPartland) who are apparently in a position to offer testimony about the accident, and neither has asserted (based on the government's reports of several meetings with them) that Burke or Mr. McPartland was intoxicated. *See, e.g.*, Gov't Exs. 3500-SP-5 at 2; 3500-DS-1 at 2.

Similarly, the government has not included any exhibit on its exhibit list or provided any witness statement supporting that there was any law, regulation, or policy that required either Burke or Mr. McPartland to report the accident to the police or any other entity or person. Nor is

there any indication in the government's materials supporting that any failure to do so was wrong or suspect, let alone illegal. Accordingly, based on the government's own materials, there is no indication of any illegality or impropriety with respect to the accident and the subsequent repairs, and the accident itself was, by all appearances, minor.

### 2. The Lack of Disciplinary Action

The government indicates that another witness will testify "that in late 2015, McPartland admitted his role in the accident to Spota" and that "[n]o disciplinary action was taken by Spota" at that time. *See* Gov't 10/24/19 Ltr. at 2, 4-5. The motion gives no indication that disciplinary action against Mr. McPartland, roughly four years after the fact, was required or even appropriate, nor is any such information evident in the 3500 material or exhibit list produced by government.

### B. Argument

The government seeks to admit evidence of the accident under Rule 404(b), on two theories: (1) as evidence of "knowledge," "absence of mistake," and "intent," and (2) to show relationships of "mutual trust" among the defendants and Burke. Neither theory has any merit.

### 1. The Evidence Is Irrelevant to "Knowledge," "Absence of Mistake," and "Intent"

The government claims that this evidence is admissible because it "clearly demonstrates the intent of the defendants during the time frame of the charged offenses, which is to protect James Burke and one another," and because it "also serves to disprove any defense claim that the defendants acted in good faith upon the word of James Burke, *e.g.* when Burke claimed that the assault of Christopher Loeb did not happen." *See* Gov't 10/24/19 Ltr. at 4. Nowhere does the government explain how this evidence satisfies the most critical aspect of the Rule 404(b) test when admitting other act evidence to show knowledge, absence of mistake, or intent—namely, the requirement of *sufficient similarity* between the other act and the charged offenses.

As one court in this circuit has explained:

> Once the Government has proffered a proper purpose for "other act" evidence, the Court must then determine whether the other act is in fact probative of the crimes charged. In this regard, the Government must identify a similarity or connection between the other act and an element of a charged offense. *See United States v. Brand*, 467 F.3d 179, 197 (2d Cir. 2006). To be relevant, the other act must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw an inference from the act that the state of mind of the actor is as the proponent of the evidence asserts. *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011); *see also United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987). The court abuses its discretion if the "chain of inferences" necessary to connect the other act with the charged crime is "unduly long." *Curley*, 639 F.3d at 57. . . . [Moreover, it is] improper to receive evidence ostensibly as probative of knowledge and intent when it is in reality "propensity evidence in sheep's clothing." *McCallum*, 584 F.3d at 477. The Government may not use Rule 404(b) to "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston*, 485 U.S. at 689.

*United States v. Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015).

Thus, the touchstone for admissibility under Rule 404(b) when evidence is being proffered to show knowledge, absence of mistake, or intent (as it is here) is whether there is "sufficient similarity" between the other act and the charged offenses such that the jury may "reasonably" draw an inference, from the other act, regarding the knowledge or intent of the defendant with respect to the charged offenses. *See id.* The government cannot satisfy that standard here. Indeed, the two sets of allegations are apples and oranges, and the government's argument therefore cannot pass muster under either Rule 404(b) or Rule 403.

### a. The Evidence Is Irrelevant to Mr. McPartland's State of Mind, and Inadmissible Under Rule 403

The evidence is plainly inadmissible against Mr. McPartland, given that the government has failed utterly to establish any similarity between the proffered evidence and the charged conduct. As noted above, the government has failed to establish that Burke or Mr. McPartland engaged in any impropriety or illegality whatsoever with respect to the car accident. There is no

evidence of driving while intoxicated, and the government cites no law, regulation, or policy that Burke or Mr. McPartland allegedly violated in not reporting the accident, or in electing to have Burke pay for the repairs himself. Since the government has failed to establish any basis to conclude that there was anything improper or illegal about the car accident and the subsequent repairs, it cannot be the case that this other act supports Mr. McPartland's knowledge, absence of mistake, or intent to engage in a subsequent *criminal* conspiracy to obstruct justice.

Simply put, the government asks the Court—without explanation or reason—to accept that Burke and Mr. McPartland's involvement in a minor car accident, in which no one was injured, and the public fisc was not harmed, should be admitted to prove Mr. McPartland's knowing complicity in a years-long, criminal cover-up of a lurid assault that broke multiple federal laws. But as the Second Circuit instructed in *United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002):

> [T]he government . . . must establish the relevance of the evidence to the issue in dispute. The government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime. The government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act. If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent. Without a connection between the two acts, the prior act is not relevant or probative and is inadmissible.

*Id.* at 137–38 (citations omitted); *see also United States v. Edwards*, 342 F.3d 168, 177 (2d Cir. 2003) (noting that "some similarity or tangible connection between the acts must be identified"). Because the government has not even attempted to meet this standard—indeed, its letter does not even acknowledge its existence—evidence of the car accident is irrelevant and must be excluded against Mr. McPartland.

Because the proffered evidence has no relevance whatsoever, there is no need for the Court to engage in a Rule 403 analysis. However, we note that, were this evidence admitted, the jury could draw the unfair and highly prejudicial inference that Burke and Mr. McPartland were driving while intoxicated—prejudice that would substantially outweigh any possible probative value of the evidence. *See* Defs.' Br. at 49–50 (collecting cases noting prejudicial effect of evidence concerning alcohol consumption, and drunk driving in particular). Moreover, admission of the evidence may lead to juror confusion, as the jury may erroneously conclude that the car accident is properly considered as evidence of the alleged conspiracy. For all of these reasons, the evidence should also be excluded under Rule 403.

### b. The Evidence Is Irrelevant to Mr. Spota's State of Mind, and Inadmissible Under Rule 403

As to Mr. Spota, the government's theory of admissibility is even more far-fetched. While the utter lack of similarity between the other act and charged conduct renders the evidence irrelevant as to Mr. Spota as well, the government does not even claim that Mr. Spota knew about the car accident until four years after the fact—after Burke already had been fired, indicted, and arrested. *See* Gov't 10/24/19 Ltr. at 2. Despite this, the government argues hyperbolically that the evidence is "tremendously probative" of Mr. Spota's "willingness to protect and conspire with both Burke and McPartland." *See id.* at 4–5. But it is just plain silly to suggest that the car accident evidence could reflect Mr. Spota's "ongoing intent to protect Burke," given that Burke was in federal jail at the time. Indeed, according to the government's own witness, Mr. Spota was aware of the government's bail letter and thus knew that the government was already aware of the accident; he was thus in absolutely no position to help cover it up.

Similarly, there is no basis to find that the evidence demonstrates Mr. Spota's "willingness to protect and conspire" with Mr. McPartland. This argument rests on a fundamentally flawed

premise—namely, that Mr. Spota acted inappropriately when he did not discipline Mr. McPartland for a four-year-old, minor car accident. Indeed, the entire predicate of the government's argument—that Mr. Spota did something wrong—is drawn out of thin air.

Thus, the evidence is irrelevant as to Mr. Spota, and should be excluded as to him on that ground alone. However, in addition, the evidence is also unfairly prejudicial and confusing as to Mr. Spota for similar reasons as those stated above—namely, that the jury could draw the unfair and highly prejudicial inference that Mr. Spota condoned of drunk driving, or could erroneously conclude that the car accident is properly considered as evidence of the alleged conspiracy.

For all of these reasons, the government's application to admit the car accident evidence as proof of knowledge, absence of mistake, or intent must be denied.

## 2. The Evidence is Inadmissible to Show "Mutual Trust"

The government also argues that the proffered evidence is relevant to show the "relationships of mutual trust between the defendants Spota and McPartland and certain co-conspirators, including [] Burke." *See* Gov't 10/24/19 Ltr. at 1. The government cites no case law in support of this argument, and seeks to justify it in a single sentence—arguing that "[t]he evidence . . . is essential to demonstrate the close relationship of the defendants and their coconspirator [] Burke." *See* Gov't 10/24/19 Ltr. at 4. Yet again, the government's argument has no legal or logical force, and must be rejected.

*First*, as noted above, courts in this circuit admit evidence for the purpose of establishing a "relationship of mutual trust" only when the other act fostered trust between co-conspirators to engage in *illegal* conduct, in order to explain the genesis or evolution of the charged conspiratorial conduct. *See supra* Section III at 18 & n.4. As the case law makes clear, not just any other act may be admitted to show "trust" among alleged conspirators; rather, the "acts of trust" must in

some probative way explain the evolution of the co-conspirators' alleged illegal relationship and how it led to the commission of the charged offenses. Here, the government cannot seriously contend that evidence of a minor car accident helps to explain why or how the defendants allegedly carried out a years-long criminal conspiracy to obstruct justice. Because there is no evidence of illegality with respect to the car accident, the proffered evidence cannot be admitted for this purpose as to either defendant.

*Second*, as to Mr. McPartland, the evidence does not in any way explain how the alleged conspiracy between Burke and Mr. McPartland began or evolved. Nor does it add anything probative about the relationship "of trust" between Burke and Mr. McPartland. Indeed, there was no illegal relationship between them as a result of the car accident, and any suggestion to the contrary is unsupported by any evidence. Moreover, the car accident obviously had no factual relationship to the events that occurred, one to four years later, during the Loeb investigation. The government is simply grasping at straws.

*Third*, the government's argument is plainly inapplicable to Mr. Spota, as he is not even alleged to have learned about the car accident until after Burke's arrest and, even then, only because it was included in the government's bail letter. Thus, there is no conceivable inference that can be properly drawn from the evidence concerning his relationship with Burke. Similarly, because there is no evidence that Mr. Spota was required to discipline Mr. McPartland, there can be no legitimate inference drawn from that evidence that Mr. Spota had a criminal relationship with Mr. McPartland. It simply strains credulity to suggest that the lack of discipline over this four-year-old, minor episode proves that Mr. Spota was willing to obstruct justice with Mr. McPartland.

*Finally*, introducing this evidence solely to show the close relationship between Mr. McPartland, Mr. Spota, and Burke would be unduly prejudicial and cumulative. As noted above, even the implication of drunk driving will be strongly prejudicial, and will plainly outweigh any probative value of this evidence. Moreover, the evidence will be entirely cumulative of other evidence of the relationship between Burke, Mr. McPartland, and Mr. Spota. Indeed, according to the 3500 material, the government has obtained a great deal of information about the long-standing relationship between the defendants and Burke and (according to its initial 404(b) notice) plans to offer at least some of this evidence at trial. Thus, contrary to the government's argument, proof of the car accident is no more "essential" to demonstrating the relationship among the defendants and Burke than the multitude of other pieces of evidence at trial that will establish that relationship.

For all of these reasons, the government's motion to admit evidence relating to the car accident must be denied.

## V. The Defendants Are Aware of and Will Comply with Their Obligations Under Rules 16(b) and 26.2

The defendants are aware of and will comply with their obligation under Federal Rule of Criminal Procedure 16(b) to produce items in their "possession, custody, or control" that "the defendant[s] intend[] to use . . . in [their] case-in-chief at trial." *See* Fed. R. Crim. P. 16(b)(1)(A). However, because the scope of the defendants' case-in-chief will be largely informed by the government's case-in-chief, the defendants will produce any exhibits to the government promptly upon "their determination to use particular exhibits" and no later than "the close of the [g]overnment's case." *See United States v. Bonventre*, No. 10-CR-228 (LTS), 2013 WL 2303726, at *10 (S.D.N.Y. May 28, 2013) (ordering Rule 16(b) disclosure at those times).

Contrary to the government's motion, however, the defendants are *not* required to produce items that they may seek to introduce during cross-examination in the course of the *government's* case-in-chief, and that portion of the government's motion should be denied.  *See Bonventre*, 2013 WL 2303726, at *10 (denying the government's motion for the production of documents the defendants intended to use during cross-examination).  As an initial matter, the government does not cite a single case from the Second Circuit adopting such a rule, and the court should not accept the government's invitation to follow out-of-circuit cases.  *See* Gov't Br. at 20.

Further, the government's request runs directly afoul of the plain language of Rule 16(b)— which applies only to items that will be used in "the defendant's *case-in-chief*."  *See* Fed. R. Crim. P. 16(b)(1)(A)(ii) (emphasis added).  This phrase has long been understood to refer solely "to the part of a trial between the time that a party calls its first witness and when it rests."  *See United States v. Harry*, No. 10-CR-1915 (JB), 2014 WL 6065705, at *6, *10 (D.N.M. Oct. 14, 2014) (collecting 10 cases from the United States Supreme Court using this definition of "case-in-chief," and noting cases from the Supreme Court and multiple circuits differentiating between a party's case-in-chief and its cross-examination of the opposing party's witnesses).  In the absence of any indication that the drafters of the Rule intended to depart from this widely-accepted definition (and there is none), the government's proposed expansion of "case-in-chief" must be rejected.  *See id.* at *10 (concluding that "'case-in-chief,' as rule 16(b)(1)(A) used the phrase, refers to evidence that a party presents between the time that the party calls its first witness and the time the party rests").

The government's proposed rule also makes little sense, given that criminal defendants have no burden of proof and should not be compelled to identify their potential proof prior to the conclusion of the government's case-in-chief.  Further, compliance with such a rule would be

unworkable, given that the items the defense will seek to introduce during cross-examination will largely turn on in-the-moment trial decisions that cannot be determined in advance. Finally, while certain courts have cited the "modern trial practice" of defendants introducing evidence during cross-examination to support that defendants should be compelled to produce exhibits prior to their case-in-chief, *see, e.g.*, *United States v. Larkin*, No. 2:12-CR-319 (JCM) (GWF), 2015 WL 4415506, at *4 (D. Nev. July 20, 2015), a practice adopted for mere efficiency's sake cannot override the plain language of Rule 16, which compels the production only of evidence that will be introduced during a *defendant's* case-in-chief.

For all these reasons, the government's motion for an order compelling the defense to disclose potential cross-examination exhibits in advance of a government witness's testimony on direct examination must be denied.

In addition, the government requests the early production of statements of defense witnesses pursuant to Federal Rule of Criminal Procedure 26.2. *See* Gov't Br. at 18, 21.[5] The defendants are aware of and will comply with their obligations under Rule 26.2, which requires that "[a]fter a witness . . . has testified on direct examination, the court, on motion of a party who did not call the witness, must order . . . [the] produc[tion] . . . [of] any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). To be clear, the defendants do not object to earlier production of this material, given the government's pre-trial production of 3500 material to the defendants. However, given the pendency of the parties' motions *in limine* (which may significantly alter the evidentiary contours of the trial) and the fact that the government has not yet put on its case-in-chief, the

---

[5] While the government's motion requests disclosure of Jencks Act material, *see* Gov't Br. at 18, the Jencks Act only applies to the government, *see* 18 U.S.C. § 3500. The defendants accordingly interpret the government's motion as one brought under Rule 26.2.

defendants have not yet determined which, if any, witnesses they may call.  Should the defendants'
position change, they will comply with Rule 26.2 and produce any substantially verbatim witness
statements promptly.  *See* Fed. R. Crim. P. 26(f)(2).

## Conclusion

For the foregoing reasons, the defendants respectfully submit that the government's motions, as set forth above, should be denied, and that the defendants' motion, as set forth above, should be granted.

Dated: October 29, 2019
New York, New York

Respectfully submitted,

Larry H. Krantz
Lisa A. Cahill
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

Bradley R. Gershel
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
(212) 223-0200

*Counsel for Christopher McPartland*

Alan Vinegrad
Erin Monju
Sarah LeMaster
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*