FILED
CLERK
11/8/2019 4:55 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT                         Filed Under Seal
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-                                                  **ORDER**
                                                                              17-CR-587 (JMA)

CHRISTOPHER MCPARTLAND AND
THOMAS J. SPOTA.,

                Defendants.
-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

On October 1, 2019, defendants disclosed, pursuant to Fed. R. Crim. Pro. 16(b)(1)(C), Dr. Alan Jacobs as a potential expert witness at the trial in this matter. (ECF No. 112.) The government subsequently moved to exclude Dr. Jacobs, (ECF No. 131), and the Court held a <u>Daubert</u> hearing on Tuesday, November 5, 2019. (<u>See</u> Hearing Tr., Nov. 5, 2019.) For the reasons stated below, the government's motion to exclude Dr. Jacobs' testimony is DENIED, but certain aspects of Dr. Jacobs' testimony are limited as described in this Order. In addition, the government is directed to provide defendants with Rule 16 disclosures related to the expected expert testimony of James Hickey's treating physicians to the extent outlined herein.

## I.    DISCUSSION

### A. **Defendant's Disclosure is Proper**

The government first contends that defendants' expert notice is insufficient because it "does not articulate the principles and methods upon which Jacobs relied or how he applied the principles and methods to the facts of this case." (ECF No. 131, at 4.) Rule 16 requires a defendant to provide to the government a written summary of any expert testimony, which "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's

qualifications." Fed. R. Crim. Pro. 16(b)(1)(C). The Court finds that defendants' October 1, 2019 letter satisfies this limited disclosure requirement under Rule 16.

B. **Standard for Expert Witness Testimony**

Federal Rule of Evidence 702 governs testimony by expert witnesses and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 imposes on the trial judge an obligation to determine whether the expert's specialized knowledge will assist the trier of fact, *i.e.*, will be not only relevant, but reliable." United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147, 152 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993)). "The district court has broad discretion to carry out this gatekeeping function" and "[i]ts inquiry is necessarily a 'flexible' one." In re Pfizer Inc. Sec. Litig., 819 F.3d 642, 658 (2d Cir. 2016). Accordingly, the Court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152. The defendants, as the proponents of the expert testimony, have the burden of establishing these admissibility requirements. In re Pfizer, 819 F.3d at 658.

C. **Dr. Jacobs' Expert Testimony**

Dr. Jacobs is a practicing neurologist who has a sub-specialty in behavioral neurology. (Hearing Tr. 7:5–8:7.) Dr. Jacobs graduated from Duke University with an M.D. in 1989; received various postdoctoral trainings, certifications, academic appointments, and hospital

appointments; and has published in the fields of neurology and behavioral neurology. (Jacobs Ex. 1; Hearing Tr. 4:10–8:7.) Dr. Jacobs indicated that he has testified as an expert witness in neurology/behavioral neurology and neuroendocrinology before a jury approximately five to six times. (Hearing Tr. 10:4–6, 96:4–6, 96:17–22.)

According to the defendants' expert disclosure, and Dr. Jacobs' testimony at the Daubert hearing, the defendants wish to qualify Dr. Jacobs as an expert witness on four categories of topics: (1) the meaning and significance of various aspects of the medical records of government witness James Hickey from his 2013 and 2015 hospitalizations (including the definition of "delirium" and its inclusion in the Diagnostic and Statistical Manual of Mental Disorders); (2) the effects of alcohol and alcoholism on memory, cognition, and brain function generally, and how these principles apply to the likely effects on Hickey's memory, cognition, and brain function; (3) the nature of a Transient-Ischemic Attack ("TIA") and that Hickey did not suffer from a TIA in October 2015; and (4) the nature and causes of Wernicke's Encephalopathy ("WE"), and that Hickey likely suffered from WE at the time of his October 2015 hospitalization. Dr. Jacobs bases these opinions on a review of Hickey's hospital records from August 2013 and October 2015—he did not examine Hickey personally.[1]

Based on the record before the Court, Dr. Jacobs is qualified to testify as an expert on the first three categories of topics. Dr. Jacobs' expert opinion testimony on these topics will assist the trier of fact, is based on sufficient facts or data, and is reliable. Contrary to the government's contention, his opinions on these topics are not well within the ken of the average juror, nor do they impermissibly opine on the credibility of Hickey. However, in order to be properly

---

[1] While the government contends that this is a reason to preclude Dr. Jacobs' testimony, the fact that Dr. Jacobs did not examine Hickey personally goes only to the weight Dr. Jacobs' testimony should be afforded by the jury, not to its admissibility. See United States v. Rutigliano, 614 F. App'x 542, 545 (2d Cir. 2015) ("[T]he fact that the government's expert did not examine [defendant] goes only to the weight the expert's testimony should be afforded, not to its admissibility.").

3

admitted as expert testimony, Dr. Jacobs' opinion on the fourth topic must be limited as outlined below.

Dr. Jacobs is qualified as an expert on topic four based on his knowledge, training and experience, and he may opine about the likelihood that Hickey suffered from WE at the time of his October 2015 hospitalization. However, in so opining, Dr. Jacobs cannot rely on, or imply in any way when testifying, that Hickey was not being truthful in reporting that he had not consumed alcohol in the two years preceding his October 2015 hospitalization.[2] (See, e.g. Hearing Tr. 147:7–12.) Because Hickey's 2013 and 2015 hospitalization records represent the only facts about Hickey with which Dr. Jacobs was provided to form his opinions, his opinions must therefore rely on the facts as recited in those records. This includes the repeated representations from Hickey and his wife that Hickey had not consumed alcohol in the two years leading up to his October 2015 hospitalization. (See id. 139:17–22; Jacobs 2 at 592, 615, 694.) Dr. Jacobs cannot pick and choose which representations in the record to believe based on which representations support his ultimate opinion. To permit otherwise would impermissibly allow Dr. Jacobs' to render an opinion without any basis in fact. See Hunt v. CNH Am. LLC, 857 F. Supp. 2d 320, 343 (W.D.N.Y. 2012), aff'd, 511 F. App'x 43 (2d Cir. 2013) (precluding expert testimony when the opinion relied on an assumption for which the expert had no evidence).

The Court also cautions that Dr. Jacobs cannot otherwise "back into" an opinion that Hickey was drinking in the two years leading up to his October 2015 hospitalization. Dr. Jacobs indicated that his assumption came from his observation that Hickey presented with the classic

---

[2] Based on Dr. Jacobs' testimony at the Daubert hearing, it appeared to the Court that his diagnosis of WE to a 70-75% certainty relied on the assumption that Hickey had been drinking leading up to the October 2015 hospitalization. (See Hearing Tr. 64:3–13, 130:24–131:2.) If his WE diagnosis entirely hinged on this assumption, Dr. Jacobs would be precluded from opining that Hickey likely suffered from WE in October 2015. However, Dr. Jacobs noted at various points during the hearing that it is possible, though "less likely," that Hickey suffered from WE without having consumed alcohol in the two-year period preceding the October 2015 hospitalization. (See id. 131:3–15, 133:16–24, 136:9–23, 148:14–149:13.) Accordingly, Dr. Jacobs may testify about the likelihood that Hickey suffered from WE in October 2015, but his opinion must be premised on the fact that Hickey had not consumed alcohol during the two-year period reported in the medical records.

triad of WE symptoms, and had a prior history of alcohol abuse, so the only explanation could be that Hickey was drinking and lied about it to the physicians. (See Hearing Tr. 131:16–132:11, 133:16–24.) However, such an opinion requires too much of an analytical leap. Dr. Jacobs acknowledged other possible causes for the triad of symptoms and even recognized an approximate 30% possibility that Hickey suffered from delirium secondary to sleep deprivation—the conclusion of his treating physicians. (See id. 136:9–23, 156:14–159:23, 172:10–173:15; Jacobs 2 at 665, 675.) See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (["N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). It is particularly prudent to exclude such testimony because Dr. Jacobs does not treat substance abuse problems, and, based on the record, has no special training in substance abuse problems (which he noted is typically in the field of psychiatry). (See id. 110:13–19, 111:17–112:1.) Thus, Dr. Jacobs is not qualified to opine on the truthfulness of individuals who have suffered from alcohol abuse.

Accordingly, Dr. Jacobs can explain the nature and causes of WE, how Hickey could have had WE without having consumed alcohol in those two preceding years, as well as the degree of certainty of such a diagnosis. But the Court will not, based on the current record, permit any testimony that suggests that Hickey consumed alcohol in the two years leading up to his October 2015 hospitalization. Such testimony is excluded under the Federal Rules of Evidence 702 and 403.

Finally, there were several points Dr. Jacobs testified to at the Daubert hearing that were plainly not appropriate expert testimony based on his qualifications. First, Dr. Jacobs may not testify that Hickey did not show "great judgment" by wanting to go against medical advice in

2013. (Hearing Tr. 81:17–19.) The quality of Hickey's judgment is a question for the jury. Second, Dr. Jacobs may not testify that when training in medicine, you are taught to "double" everything people complicated with alcoholism tell you, "because they don't usually reveal everything." (Id. 79:11–19.) This again implies that Hickey was not truthful with his reports to the physicians about his alcohol consumption, which the Court finds inappropriate based on the factual record and Dr. Jacobs' qualifications. Third, more broadly, Dr. Jacobs may not assume the thoughts of any of the physicians (or Hickey or his wife) based on what is reported in the medical records. (See, e.g. id. 45:17–21.) Such testimony goes beyond the scope of any appropriate expert testimony.[3]

Thus, Dr. Jacobs is qualified as an expert witness as to topics one through three listed above. He also may offer expert testimony about topic four, so long as his testimony remains within the confines outlined in this Order.

### D. The Government's Potential Expert Witnesses

On October 23, 2019, the government added three of Hickey's treating physicians from his 2015 hospitalization to its witness list: Dr. Nina Geif (a psychiatrist); Dr. Vinu Kurian (an internist); and Dr. Shalini Patcha (a neurologist). The defendants then asked for expert disclosure of these witnesses pursuant to Rule 16. In response, the government indicated that it considered these treating physicians to be fact witnesses, but to the extent they provide an opinion at trial, the opinions are reflected in the medical records. The defendants contend that this disclosure is insufficient.

To the extent these three physicians are purely intended to be fact witnesses and will testify solely about their experience treating Hickey in 2015 (including any medical opinions formed during the period they treated Hickey), a written summary describing their opinions, and

---

[3] Dr. Jacobs may testify, however, about the typical reasons physicians ask the questions that were asked of Hickey and his wife during his hospitalizations, based on his knowledge, training, and experience.

reasons for their opinions, is not required by Rule 16. However, if the government believes it might ask any of the witnesses to testify about anything outside of their treatment of Hickey in 2015, out of an abundance of caution, it must provide a written summary of that potential testimony, which "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."[4] Fed. R. Crim. Pro. 16(b)(1)(C). The government's email, reproduced in defendants' October 29, 2019 letter, (ECF No. 141), does not satisfy even this limited disclosure requirement.

Accordingly, the government must provide Rule 16 disclosures regarding any potential expert testimony of these witnesses by November 13, 2019. Just as in defendants' Rule 16 disclosure letter, (ECF No. 112), the written summary may be brief and written by an attorney. Unlike a civil expert report, it does not need to be written by the experts themselves.

## II. CONCLUSION

Based on the foregoing, the government's motion to exclude Dr. Alan Jacobs' testimony is DENIED, but his testimony is limited. Dr. Alan Jacobs is thus qualified as an expert witness, subject to the limitations described in this Order. Furthermore, the government must provide the defendants with Rule 16 disclosure regarding any potential expert testimony of James Hickey's treating physicians by November 13, 2019.

**SO ORDERED.**

Dated: November 8, 2019
       Central Islip, New York

                                      /s/ (JMA)
                                JOAN M. AZRACK
                                UNITED STATES DISTRICT JUDGE

---

[4] The Court understands that the government has already provided the defendants with CVs for these physicians. Accordingly, the government has satisfied the disclosure requirement regarding these witnesses' qualifications.