**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1000

**TO BE FILED UNDER SEAL**

December 11, 2019

**BY ECF AND EMAIL**

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

    Re: *United States v. Christopher McPartland, et al.*, 17-cr-0587 (JMA)

Dear Judge Azrack:

    We submit this letter on behalf of the defendants Christopher McPartland and Thomas Spota, in reply to the government's letter opposing the defendants' renewed motion to dismiss Count 3, which charges a violation of 18 U.S.C. § 1503.

    In its letter, the government effectively concedes that it may only charge an "endeavor" to obstruct under § 1503—and not witness tampering. *See* Gov't Ltr. at 1. Rightly so. As the Second Circuit has repeatedly held, in binding precedent, "witness tampering is prohibited only by § 1512, and is not covered by § 1503's omnibus clause." *See, e.g.*, *United States v. Kumar,* 617 F.3d 612, 622 n.9 (2d Cir. 2010); *see also United States v. Sampson*, 898 F.3d 270, 303 (2d Cir. 2018) (acknowledging that binding Second Circuit precedent "bar[s] the government from prosecuting an individual under § 1503(a) for intimidating and threatening witnesses").

    Instead, the government asserts that it has introduced evidence of "endeavoring" to obstruct justice sufficient to support a charge under § 1503, and relies on two types of evidence to support its claim. *See* Gov't Ltr. at 2. Neither is sufficient. First, the government cites testimony that the defendants "wanted to know if the Criminal Intelligence detectives were keeping their mouths shut . . . in order to protect Burke," "wanted to know who might be cooperating with the federal authorities, because those individuals would never work in Suffolk County again," and "wanted Hickey to pass along a clear message to his detectives that they . . . would retaliate against any federal cooperators" as evidence of an "endeavor" to obstruct. *Id.* But the government's effort to repackage these obvious allegations of witness tampering as acts of "endeavoring" is facially absurd. These alleged acts consist of *explicit* threats against witnesses—specifically, to prevent witnesses from cooperating in a federal investigation. They are textbook acts of witness tampering, and therefore cannot support a charge under § 1503.

Second, the government asserts that testimony by several witnesses concerning their own states of mind are supportive of the § 1503 charge. *See* Gov't Ltr. at 2. But as the Court has instructed the jury, this evidence was admitted for the limited purpose of reflecting those witnesses' states of mind at the time, and cannot be considered as substantive evidence of the crimes charged. *See, e.g.*, Tr. 611. Given that, this evidence plainly cannot support a charge under § 1503.

That the government has no evidence to support a charge under § 1503 is vividly illustrated by what the government claims supports Count 2, which charges a violation of 18 U.S.C. § 1512. The government appears to assert that—as opposed to the defendants' alleged conduct concerning the Criminal Intelligence detectives and other police officer witnesses, addressed above—it is the defendants' alleged conduct toward James Hickey that supports Count 2. But the only plausible distinction between how the defendants allegedly acted toward the Criminal Intelligence detectives and how they allegedly acted toward Hickey is that they alleged threatened Hickey directly and did not pass threats through an intermediary to him, as they allegedly did with the Criminal Intelligence detectives. But, as the government acknowledged in its own request to charge, it is black letter law that a defendant need not have made threats directly to a witness to commit witness tampering. *See* Gov't RTC at 52 (stating "[a] threat need not be communicated directly to the intended target in order to be a threat" with respect to § 1512). Accordingly, there is no legal distinction between the evidence the government claims supports Count 2 versus Count 3—making it abundantly clear that this is a witness tampering case, and only a witness tampering case.

For these reasons, the evidence does not support a charge under § 1503, and therefore Count 3 must be dismissed.

In addition, Counts 2 and 3 are entirely redundant of each other. Section 1512(c)(2) (Count 2) and § 1503 (Count 3) are nearly identical and, as has become clear at trial, are based on precisely the same alleged conduct. These two counts are therefore multiplicitous, and submission of the redundant charges to the jury would be unfairly prejudicial, as it would invite the jury to convict the defendants of *something* simply due to the sheer number of counts. If Count 3 is not dismissed for the reasons stated above (pp. 1–2), then it must be dismissed, or the government must be ordered to elect which of Counts 2 and 3 to dismiss, on the basis of multiplicity. *See, e.g.*, Doc. No. 66 at 2–7 (collecting cases); *United States v. Butler*, 351 F. Supp. 2d 121, 132 (S.D.N.Y. 2004) (Lynch, *J.*) (dismissing count because it was unlikely the statute reached the alleged conduct and, if it did, it would be multiplicitous of another count); *United States v. Reed*, 639 F.2d 896, 904 and n.6 (2d Cir. 1981) ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes" and requiring the government to elect which multiplicitous count to dismiss is "a matter for trial court discretion, and is most appropriate when the mere making of the charges would prejudice the defendant with the jury").

COVINGTON

Respectfully submitted,

Alan Vinegrad

cc (by e-mail): all counsel of record