UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-

CHRISTOPHER MCPARTLAND, and
THOMAS J. SPOTA,

                    Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**ORDER**
17-CR-587 (JMA)

**FILED**
**CLERK**

2/24/2021 11:32 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

    Prior to trial, the parties filed numerous motions in limine and other pretrial filings. The Court permitted these motions to be filed under seal and sealed the in-court proceedings during which the parties argued those motions. (See, e.g., Nov. 5, 2019 Order.) After a reporter requested that the Court consider unsealing these sealed filings, the Court issued an order on February 26, 2020, directing the parties to file letter briefs under seal concerning their positions on: (1) whether the Court should unseal the sealed filings in this case; and (2) any proposed redactions to those filings. In a sealed response, Defendants argue that filings concerning six topics should remain sealed/redacted. The Government's sealed response advocates continued sealing/redactions for only two of the six issues cited by Defendants. On February 22, 2021, counsel for the reporter appeared and requested that the Court rule on these pending sealed issues.

    The Court addresses below the six topics that Defendants assert should remain under seal.

**A. Standards for Sealing and Unsealing Court Filings**

    "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." United States v. Erie Cty. N.Y., 763 F.3d 235, 238–39 (2d Cir. 2014). "The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of

1

accountability and for the public to have confidence in the administration of justice." United States v. Amodeo ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995).

The framework that courts follow in determining whether to seal or unseal court filings is well-established:

> Before [the common law right of public access] can attach . . . a court must first conclude that the documents at issue are indeed "judicial documents."  In [United States v. Amodeo ("Amodeo I"), 44 F.3d 141, 145 (2d Cir. 1995),] we held that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."  44 F.3d at 145. In order to be designated a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process."  Id.
>
> Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption.  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.  Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  Amodeo II, 71 F.3d at 1049.
>
> Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." Id. at 1050. Such countervailing factors include but are not limited to "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure."  Id.

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–20 (2d Cir. 2006).

In balancing the qualified right of public access against privacy interests, courts consider: (1) "the degree to which the subject matter is traditionally considered private rather than public"; (2) "the sensitivity of the information and the subject"; (3) whether "there is a fair opportunity for the subject to respond to any accusations contained therein"; and (4) "the reliability of the information" as "[r]aw, unverified information should not be as readily disclosed as matters that are verified."  Amodeo II, 71 F.3d at 1051.

2

In addition to the common law right of access, the public and the press also have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." Id. (quoting Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)). In determining whether issues of access to documents implicate the First Amendment, the Second Circuit has articulated two different approaches:

> The so-called "experience and logic" approach requires the court to consider both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question. The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness. The second approach considers the extent to which the judicial documents are derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings

Id. (citations and internal marks omitted).

Here, the bulk of the filings at issue concern pretrial motions in limine. "[T]he presumption of public access in filings submitted in connection with discovery disputes or motions in limine is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment." Brown v. Maxwell, 929 F.3d 41, 50 (2d Cir. 2019) (motions in limine, and other non-dispositive motions are subject to a lesser—but still substantial—presumption of public access"). Nevertheless, "motions in limine, which are usually publicly available, have an important role in determining litigants' rights to a fair trial and . . . the public has a legitimate interest in monitoring a court's power to decide evidentiary questions." United States v. Silver, No. 15-CR-93, 2016 WL 1572993, at *5 (S.D.N.Y. Apr. 14, 2016) (concluding that a strong presumption of access applied to the motion in limine at issue and that "the potential relevance of the information in the Motion in Limine for sentencing—clearly an Article III judicial power that determines the Defendant's substantive rights—add[ed] to the strong presumption of access").

3

B. **Filings that Will Remain Under Seal or Redacted**

The Court finds that—despite the public's qualified rights to access under both the common law and First Amendment—four discrete topics explored in the pretrial submissions nevertheless still warrant either continued sealing or, where appropriate, redactions.

Both the Government and Defendants urge that the filings concerning the first two matters discussed below remain sealed and/or redacted.

First, a pre-trial motion in limine filed by Defendants addressed the grand jury testimony of one individual. The Court deferred ruling on this motion until trial. Ultimately, the individual was not called to testify and the Court did not rule on the motion. Under these circumstances, the Court accords more limited weight to the presumption of access. Moreover, there is also an important countervailing consideration here—the secrecy of the grand jury. See Fed. Rule of Crim. Pro. 6(e). A party seeking disclosure of grand jury information "must show a particularized need that outweighs the need for secrecy." In re United States for Material Witness Warrant, 436 F. Supp. 3d 768, 770 (S.D.N.Y. 2020) (quoting United States v. Ulbricht, 858 F.3d 71 (2d Cir. 2017)). "This balancing test applies even when a grand jury proceeding has concluded." Id. (citing United States v. Sobotka, 623 F.2d 764, 767 (2d Cir. 1980)). "[T]he interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211, 222 (1979). "[I]n considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." Id.; see also United States v. Moten, 582 F.2d 654, 663 (2d Cir. 1978). In light of the circumstances here, the Court sees no particularized need for disclosure. Given the important interest in the secrecy of the grand jury and the fact that the Court did not rule on this

motion, the Court finds that continued sealing/redaction of all submissions concerning this grand jury testimony is warranted.

Second, another issue raised in the parties' pretrial motions in limine implicated the privacy interests of a third-party. The Court ultimately granted Defendants' motion in limine on this point, and excluded the evidence at issue. Because the Court ruled on this issue, the Court finds that the presumption of access is entitled to substantial weight. However, the third-party's countervailing privacy interests are very strong here. The Court concludes that, given all the circumstances, continued sealing and redaction of references to this third-party is appropriate here. In conjunction with the issuance of this order, the Court is issuing an order under seal that explains in further detail the reasons for redacting the filings concerning this third party.

Third, Defendants point to one topic that was raised in a 404(b) notice that the Government provided to Defendants in advance of trial. The Government's 404(b) notice was not provided to the Court. This specific 404(b) issue was ultimately withdrawn by the Government prior to trial and was never considered by, or presented to, the Court. However, one exhibit filed by Defendants concerning an entirely different topic contains a solitary reference to this 404(b) issue. The Court agrees with Defendants that, under the circumstances, it is appropriate to redact the lone reference to this issue in that exhibit. Notably, it would have been entirely appropriate for Defendants to have filed this exhibit, in the first instance, with this single line of text completely redacted from even the Court's view.

Fourth, Defendants request that all CJA-related applications and submissions that were filed ex parte, should remain under seal. The Court agrees that these materials should remain under seal. Defendants argue that these materials do not even constitute "judicial documents," such that the presumption of access would not even apply to these filings. It is doubtful that these CJA-

5

related applications and submissions constitute judicial documents. See In re Bos. Herald, Inc., 321 F.3d 174, 181 (1st Cir. 2003) ("While we think that these [CJA eligibility documents] are not judicial documents, we hesitate to decide the issue here on that basis alone. . . . While we do not rely on this as the basis for our decision, we note that the administrative process of determining CJA eligibility is far removed from the core of the judicial function."). Moreover, even if these CJA-related filings constitute judicial documents, the weight accorded to the presumption of access would be limited and, given the specific circumstance here, the Court finds that the privacy interests of McPartland and his family outweigh any presumption of access to the financial information he submitted. See id. at 182–191 (upholding magistrate judge's sealing of CJA application and reasoning that neither the common law nor the First Amendment provide a right of access to such documents and that even if there was a common law presumption of access, it was outweighed by the defendant's privacy interests).[1] Additionally, there are also compelling reasons to maintain the sealing for other CJA-related requests that were submitted to the Court ex parte. See n. 1 supra. Accordingly, the Court concludes that continued sealing of all of the CJA-related filings is warranted.

---

[1] The First Circuit's In re Bos. Herald decision relied on guidelines then in place that were promulgated by the Administrative Office of the Courts. That guidance incorporated a general rule of disclosure, but granted courts the discretion to override that general rule in particular cases when disclosure would intrude on the privacy of defendants. Id. at 180  More recent guidance from the Administrative Office of the Courts indicates that CJA filings are presumptively not public. See Judicial Conference Policy on Privacy and Public Access to Electronic Case Files, https://www.uscourts.gov/rules-policies/judiciary-policies/privacy-policy-electronic-case-files (last visited on Feb. 23, 2021) (stating that "financial affidavits filed in seeking representation pursuant to the Criminal Justice Act" and "ex parte requests for authorization of investigative, expert or other services pursuant to the Criminal Justice Act" "shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access"). Relatedly, the Advisory Committee Notes to Fed. R. Crim P. Rule 49.1 also reference this policy and indicate that "[t]o the extent that [Rule 49.1] does not exempt these materials from disclosure, the privacy and law enforcement concerns implicated by [these and other enumerated filings] in criminal cases can be accommodated under the rule through the sealing provision of [Rule 49.1(d) or a protective order under Rule 49.1(e)]."

### C. Filings that Will be Unsealed

#### 1. Filings Concerning Burke

*i. Overview*

Defendants ask the Court to continue to seal (or to redact) various filings discussing allegations concerning James Burke. Defendants argue that "[r]eferences to James Burke's Internal Affairs Bureau ('IAB') history and other alleged misconduct – other than the evidence admitted at trial – should remain under seal." Defendants maintain that the "government never sought to admit this information into evidence and the Court therefore had no occasion to exercise its Article III authority over them." The Government asserts that all these materials should be unsealed without any redactions.

As explained below, the Court concludes that none of the materials discussed below should remain under seal or be redacted.

Defendants seek continued sealing (or redaction) of court filings that discuss allegations of misconduct by Burke. The evidence of these allegations came in four forms: (1) 3500 material that documents statements by various individuals to the government concerning Burke; (2) documents in Burke's IAB file; (3) the December 2011 anonymous letter concerning Burke; and (4) Spota's response to the anonymous letter. As explained below, for all the court filings concerning these materials, the presumption of access outweighs the other interests asserted by Defendants.

*ii. Weight to Be Accorded to the Presumption of Access*

In their October 24, 2019 motion <u>in limine</u>, Defendants—citing 3500 material produced by the Government—sought to exclude testimony referenced in the 3500 material concerning Burke's relationships with women, comments, and drinking habits. (Defs. Oct. 24, 2019 Mot. in Limine

7

at 18–19 ("Defs. Oct. 24 Mot., ECF No. 136.)  In response to Defendants' arguments, the Government stated that it did not intend to elicit testimony on certain points.  The Government, however, also indicated that "to the extent the defense inquiries into these topics during cross-examination of police witness co-conspirators . . ., the government intends to redirect those witnesses on these topics, as the defense will have opened the door to such inquiry."  (Gov't Oct. 29, 2019 Opp'n to Mots. in Limine at 9.)  Defendants responded to this argument, contending that inquiry into these issues would only be proper if Burke testified at trial.  (Defs. Mem. in Further Supp. of Motions in Limine at 11, ECF No. 148.)  The Court's November 9, 2019 Order considered these submissions and ruled on this issue.  (Nov. 9, 2019 Order, ECF No. 170.)  The Order explained that the Court disagreed with the Government's "general argument" on this point and indicated that "[i]f the government wishes to inquire into any such conduct by Burke, the government shall first request a sidebar."  (Nov. 9, 2019 Order at 7–8.)

The fact that the parties litigated this matter and the Court issued one ruling on this issue—with further rulings on the issue deferred until trial—indicates the presumption of access for these documents should be accorded substantial weight.  See Silver, No. 15-CR-93, 2016 WL 1572993, at *5–7 & n. 3, 5 (S.D.N.Y. Apr. 14, 2016) (finding strong presumption of access applied where the court ruled that the evidence "could possibly be admissible if Defendant opened the door to it during trial" and explaining that even if the court had held that the evidence was "absolutely inadmissible," the motion would not "fall on the low end of the continuum of the common law presumption of access because it did not 'come within [the] [C]ourt's purview solely to insure [its] irrelevance.'"  (quoting Lugosch, 435 F.3d at 119)).  Relatedly, the Government also sought to introduce evidence concerning Burke's conduct on the night of the Loeb burglary, which Defendants opposed.  The Court ultimately excluded that evidence.  (Nov. 9, 2019 Order at 7.)

8

Because the Court ruled on this contested evidentiary issue, the Court finds that substantial weight should be given to the presumption of access for the filings concerning that incident.

Defendants also seek to maintain the sealing of pretrial submissions concerning Burke's IAB file. In their October 29, 2019 submission, Defendants sought to exclude Burke's entire IAB file, believing that the Government was seeking to introduce it in its entirety because it had been marked as an exhibit. (Defs. Oct. 29, 2019 Mem. in Opp'n to Gov't Mots. in Limine ("Defs. Oct. 29 Opp'n") at 11, ECF No. 142.) In this October 29 submission, Defendants included brief summaries of unsubstantiated allegations contained in Burke's IAB file. (Id. at 12–13, 20.) The Court's November 9, 2019 order deferred ruling on the admissibility of the entire IAB file, including the unsubstantiated allegations in the file. (Nov. 9, 2019 Order at 8.) In response, the Government indicated that while it had marked the entirety of the IAB file as an exhibit, it only intended to use the portion of the IAB file concerning three discrete IAB investigations into Burke—IAB Case Nos. 93-152, 94-699, and 99-41. (Gov't Nov. 11, 2019 Ltr., ECF No. 157.) The Government then provided the Court with copies of the IAB file for those three cases and sought the admission of those particular case files, which numbered approximately 170 pages.[2] (Id.) The Court considered these submissions and the parties' arguments and ruled on this disputed issue, permitting some of these documents to come into evidence. The Court's November 13, 2019 Order focused on IAB Case Nos. 93-152 and 99-41, explaining:

> [As to Case No. 93-152], the Government may introduce evidence concerning Cuff's involvement in this IAB investigation and the substantiated findings of the investigation. The Court finds no basis, at this time, to admit the unsubstantiated allegations from IAB Case 93-152. The Court expects to redact much of the documentation from IAB Case 93-152 to exclude references to the unsubstantiated allegations. As such, the Government shall not mention any of the unsubstantiated allegations in its opening statement.

---

[2] Defendants note in their sealed response to the Court's February 26, 2020 order that they have not seen ECF No. 157-2, which is the entirety of the IAB file for Case No. 93-152.

> \*\*\*\*
>
> With respect to IAB Case 99-41, the Court will only permit the Government to elicit the fact that Cuff oversaw an additional IAB investigation concerning Burke in which none of the allegations were substantiated. This evidence is relevant to show why Burke hated Cuff. The Government is not permitted to elicit details of these unsubstantiated allegations. The Court expects to only permit the introduction of very limited, redacted documentation of this IAB investigation, such as the version of Burke-001675, which is attached to this order and includes proposed redactions by the Court. Given that the jury will not hear any details concerning the unsubstantiated allegations from this IAB matter, the probative value of the evidence outweighs any potential prejudice.

(Nov. 13, 2019 Order, ECF No. 171.)

Due to this ruling and subsequent decisions by the Government at trial, many of the documents in these IAB case files that the Government had sought to introduce were ultimately not admitted into evidence. Nevertheless, the Court reviewed and considered all materials from the three case files, issued a ruling on these hotly contested issues, and deferred the resolution of certain items concerning these documents. Accordingly, the Court finds that the presumption of access is entitled to substantial weight for all of the IAB documents the Government sought to admit for these three IAB cases. See Silver, No. 15-CR-93, 2016 WL 1572993, at \*5

In addition to the three specific IAB cases discussed above, Defendants also seek to redact the passages in Defendants' October 29 filing that discuss the entirety of Burke's IAB file. The Government subsequently clarified that it was not seeking to introduce all the allegations in that file. Nevertheless, the presumption of access is still entitled to substantial weight for the passages in Defendants' October 29 filing concerning the entirety of the IAB file. First, many of the additional IAB allegations mentioned in Defendants' October 29 filing are also referenced in the portions of the IAB file concerning IAB Case Nos. 93-152, 94-699, and 99-41, for which the Court has already concluded the presumption of access is entitled to substantial weight. Notably, the documents for IAB Case No. 93-152 included Burke's prior history of IAB complaints through

10

September 1994. Second, some of the allegations in Burke's IAB file were also intertwined with the Court's consideration of the anonymous letter concerning Burke and Spota's response to that letter, which are addressed below. Given all of the above, the presumption of access has substantial weight for the references in Defendants' papers to the entirety of Burke's IAB file.

With respect to the anonymous letter and Spota's response, Defendants ask the Court to only disclose the redacted copies of these letters that were shown to the jury. The Government originally sought to introduce both of these letters in their entirety. The Court initially excluded both the anonymous letter and Spota's response. Then, after hearing further arguments on the issue at sidebar and receiving further submissions, the Court permitted the Government to introduce redacted versions of both letters. Given the Court's consideration, and reconsideration, of the Government's attempts to admit these letters, the Court finds that, for the complete versions of these letters, the presumption of access has substantial weight.

### ii. Other Interests Raised by Defendants

The Court now turns to the contrary interests asserted by Defendants. Defendants argue that: (1) these allegations against Burke, which were not admitted at trial, risk tainting the jury pool in the event that Defendant secure a retrial on appeal; (2) the unverified and unsubstantiated nature of the salacious allegations against Burke weighs against disclosure; (3) the IAB complainants have privacy interests; and (4) both departmental policy and state law treat IAB reports as confidential. Ultimately, none of these concerns convince the Court that continued sealing (or redactions) are warranted here concerning any of the documents discussed above

Defendants speculate that disclosure of these materials will increase the risk of a polluted jury pool in the event that Defendants succeed on appeal in obtaining a retrial. These speculative concerns are not persuasive and do not weigh heavily in favor of continued sealing. See Silver,

11

2016 WL 1572993, at *8 ("[A]ny potential new trial is months, if not years, away, effectively eliminating the risk that any potential prejudice cannot be mitigated through voir dire of prospective jurors"); United States v. Martoma, No. 12-CR-973, 2014 WL 164181, at *8 (S.D.N.Y. Jan. 9, 2014) (unsealing motion in limine and stressing that "[n]umerous courts in high-profile cases have recognized that a thorough voir dire may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial"). Given the amount of publicity concerning this case—before, during, and after trial—a careful voir dire exploring all this publicity would be required for any retrial. The Court is confident that, if necessary, Defendants would receive a fair retrial even if the materials at issue are unsealed.

Defendants also stress that the allegations at issue are unverified and unsubstantiated. With respect to Defendants' October 24 filing concerning the 3500 material, the Court notes that this filing itself indicates that multiple individuals leveled such allegations against Burke. This not an isolated one-off allegation. In any event, given the substantial weight accorded here to the presumption of access, Defendants' arguments about the nature of the allegations in the 3500 material about Burke do not convince the Court that Defendants' October 24 filing discussing those materials should stay sealed. Additionally, the conduct and comments attributed to the Chief of Department have public ramifications that weigh in favor of disclosure.

With respect to the IAB documents, Defendants' concerns about the unverified nature of the allegations in the file for the three specific IAB cases at issue are undercut by the very nature of the IAB documents  The IAB documents do not contain only one-sided allegations. Rather, these case files document an investigation into the allegations at issue, including statements from relevant individuals including Burke himself. Cf. Amodeo II, 71 F.3d at 1051 ("[A] court may consider whether the nature of the materials is such that there is a fair opportunity for the subject

12

to respond to any accusations contained therein.") Although certain allegations against Burke were found by Internal Affairs not to be substantiated, the inclusion in the IAB documents of those very findings—along with the underlying evidence considered by Internal Affairs—cut against Defendants' argument that the unverified nature of the allegation weighs heavily against disclosure.

Defendants also argue that the IAB complainants' privacy interests are implicated by disclosure. The Court finds that those interests do not weigh heavily against disclosure here. For IAB Case No. 93-152, the identity of the complainant, Desiree Harris, was already disclosed during trial. (Tr. 295.) For IAB Case No. 99-41, the identity of the complainant was not disclosed during trial. However, Defendants' claim that this particular complainant has any continuing privacy interests in this IAB case is utterly conclusory. Moreover, even assuming <u>arguendo</u> that some IAB complainants might have substantial privacy interests, the file for IAB Case No. 99-41 affirmatively indicates that the complainant in this particular IAB case had diminished privacy interests.[3] In any event, even if the complainant in IAB Case No. 99-41 (or the other persons discussed in that case file) have more substantial privacy concerns, those concerns would ultimately be outweighed here by the presumption of judicial access.

As explained earlier, additional IAB complaints from Burke's IAB file are discussed in both Defendants' October 29 filing and the file for IAB Case No. 93-152. However, the identities of the complainants for these other allegations are not referenced in those documents and there are

---

[3] Specifically, this complainant apparently raised the same allegations contained in the IAB complaint during civil custody proceedings in Suffolk County Supreme Court. The IAB file includes, <u>inter alia</u>, two affidavits that were submitted to the state court. The record does not indicate that any of these materials from the state court proceeding were filed under seal in those state court proceedings. Thus, the privacy concerns of the complainant in IAB Case No. 99-41 are minimal.

13

limited details about those allegations contained in those filings. Accordingly, the privacy interests of the complainants who brought these additional complaints are minimal to non-existent.

In opposing disclosure, Defendants also assert that IAB reports are confidential under both Suffolk County Police Department ("SCPD") policy and state law. This argument is also unavailing. Notably, the very case that Defendants cite for this proposition actually unsealed an IAB report with appropriate redactions. See Estate of Jackson v. Cty. of Suffolk, No. 12-CV-1455, 2019 U.S. Dist. LEXIS 120863, at *23-24 (E.D.N.Y. July 19, 2019). Here, Defendants seek essentially wholesale sealing of all unsubstantiated complaints and have not pointed to any specific and discrete information that they claim should be redacted from any of the IAB case files at issue. Moreover, the state law that Defendants cite here and which Suffolk County cited in Estate of Jackson has recently been repealed. See Walls v. City of New York, No. 19-CV-337, 2020 WL 6899996, at *6 (E.D.N.Y. Nov. 24, 2020) (explaining that New York Civil Rights Law § 50-a, which deemed police personnel records "confidential," was repealed and citing N.Y. Civ. Rights L. § 50-a, repealed by L.2020, c. 96, § 1, eff. June 12, 2020). Finally, Defendants make little, if any, effort to assert that Burke's privacy interests would be negatively impacted by the disclosure of these IAB documents. Even if Defendants had pressed such an argument, at this point in time, Burke has little, if any, privacy interests in these IAB documents. These IAB complaints do not concern the purported conduct of an ordinary police officer. Rather, they concern allegations against the former Chief of Department, who pled guilty to federal charges and served a substantial prison sentence. Cf. United States v. Huntley, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) ("Countervailing privacy interests are at the lowest for matters that have far-reaching 'public ramifications' and where there exists 'a fair opportunity for the subject to respond to any accusations contained therein.'" (quoting Amodeo II, 71 F.3d at 1051)).

As for the anonymous letter's discussion of various unverified allegations, the Court has compelling reasons to disclose, in fully unredacted form, both the anonymous letter and Spota's response. There was a hotly contested dispute over the admission of these important pieces of evidence. The Court, after reviewing these letters, initially excluded them, and then, over Spota's vociferous objection, subsequently permitted their introduction in redacted form. As such, the presumption of access for these documents is accorded substantial weight and outweighs the contrary interests Defendants assert here. Moreover, Defendants' concerns about the unverified nature of the allegations in the anonymous letter are undercut by the fact that the record also includes Spota's comprehensive response to those allegations. Cf. Amodeo II, 71 F.3d at 1051 ("[A] court may consider whether the nature of the materials is such that there is a fair opportunity for the subject to respond to any accusations contained therein.").

Thus, the Court concludes that none of the filings concerning Burke discussed above should be sealed or redacted.

**2. Filings Concerning Alcohol Use**

Defendants contend that certain filings that reference alcohol consumption should be redacted. The Government argues that all of these filings should be unsealed.

Defendants' October 24 motion in limine sought to exclude certain evidence concerning alcohol consumption. The Government opposed this motion, arguing that it was entitled to latitude in addressing this issue at trial, but did not seek to introduce the specific evidence cited in Defendants' October 24 filing. Nevertheless, the Court considered and relied on that evidence and the discussion of this issue in Defendants' October 24 submission, which provided important context for the Court's consideration of the related argument advanced in the Government's opposition and the Government's other requests that concerned alcohol consumption. (See, e.g.,

15

Gov't Oct. 24 Mot. in Limine, ECF No. 135; Gov't Oct. 29, 2019 Opp'n to Mots. in Limine at 9 n.3; Tr. at 799-800, 837-842.)

Accordingly, the Court finds that the presumption of access to Defendants' October 24 submission should be accorded substantial weight. The Court is not swayed by Defendants' claims that the allegations in the October 24 submission are unverified or that Defendants' privacy interests justify continued sealing or redaction here. Cf. Huntley, 943 F. Supp. 2d at 383. Accordingly, the Court will not redact any of the references to alcohol consumption cited in Defendants' sealed submission.

### D. Conclusion

For the reasons set forth above, the Court will, consistent with this Order, allow certain filings to remain sealed and redacted. With respect to the filings for which neither party has sought continued sealing or for which the Court has concluded that sealing/redaction are not warranted, the Court will unseal all appropriate documents and will provide the parties with a copy of the Court's redactions for all redacted documents. The parties shall promptly input those redactions and publicly file the redacted copies of those documents on the docket.

**SO ORDERED.**

Dated: February 23, 2021
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE