UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    - against -

CHRISTOPHER MCPARTLAND and
THOMAS J.  SPOTA,

                Defendants.

No.  2:17-cr-0587 (JMA)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
DEFENDANTS' JOINT SUPPLEMENTAL PRE-TRIAL MOTIONS**

**UNREDACTED VERSION – REQUEST TO BE FILED UNDER SEAL**

KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

*Counsel for Christopher McPartland*

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J.  Spota*

# Table of Contents

Introduction ............................................................................................................................. 1

Argument ................................................................................................................................. 1

I.     The Defense Is Entitled to an Order Compelling the Disclosure of All Witness
Statements and Grand Jury Testimony of the 35 Witnesses with Exculpatory
Information ............................................................................................................... 1

II.    Should the Government Seek to Use the ████ Grand Jury Testimony at Trial,
It Should be Precluded From Using Any Portion that Is Objectionable Under the
Federal Rules of Evidence or Is Otherwise the Result of Improper Questioning ............... 3

III.    The Defense Is Entitled to Disclosure of Witness and Exhibit Lists By October 9 ........... 7

IV.    The Government Should Be Compelled to Produce James Burke's Statements
Regarding James Hickey's Mental Health ......................................................................... 9

        A.    The Government's Objections to the Admissibility of Burke's Statements
Related to Hickey's Mental Condition Are Premature and Irrelevant ................. 10

        B.    The Government's *Brady/Giglio* Obligations Extend to Impeachment of
Non-Testifying Co-conspirator Witnesses Under Rule 806 ................................ 11

Conclusion ............................................................................................................................. 13

# Table of Authorities

**Cases**

*Brady v. Maryland,*
    373 U.S. 83 (1963)..................................................................................*passim*

*Dominguez v. Rock,*
    No. 12-CV-3269 (NGG), 2016 WL 542120 (E.D.N.Y. Feb. 9, 2016) ...................................11

*Giglio v. United States,*
    405 U.S. 150 (1972)..................................................................................*passim*

*United States v. Drummond,*
    481 F.2d 62 (2d Cir. 1973).........................................................................7

*United States v. Franco,*
    No. 00-CR-300 (LMM), 2001 WL 99874 (S.D.N.Y. Feb. 5, 2001)......................................12

*United States v. Gil,*
    297 F.3d 93 (2d Cir. 2002).........................................................................10

*United States v. Huff,*
    No. 12 Cr. 750, Doc. No. 116 (S.D.N.Y. Dec. 17, 2014) ...........................................8

*United States v. Jackson,*
    345 F.3d 59 (2d Cir. 2003)........................................................................11

*United States v. Menendez,*
    15 Cr. 155, Doc. No. 7 (D.N.J. Apr. 2, 2015).......................................................8

*United States v. Meregildo,*
    920 F. Supp. 2d 434 (S.D.N.Y. 2013).............................................................10

*United States v. Poindexter,*
    727 F. Supp. 1470 (D.D.C. 1989)..................................................................9

*United States v. Rodriguez,*
    496 F.3d 221 (2d Cir. 2007).......................................................................10

*United States v. Shyne,*
    617 F.3d 103 (2d Cir. 2010).......................................................................12

*United States v. Silver,*
    15 Cr. 93, Doc. No. 75 (S.D.N.Y. Oct. 7, 2015)....................................................8

*United States v. Turkish,*
    458 F. Supp. 874 (S.D.N.Y. 1978) ..................................................................9

*United States v. Wider*,
    No. 14 Cr. 221, Doc. No. 115 (E.D.N.Y. June 6, 2015) ...........................................................9

**Statutes**

18 U.S.C. § 3500 (2012) ...................................................................................................... *passim*

**Other Authorities**

Fed. R. Crim. P. 16 ...................................................................................................................9

Fed. R. Evid. 403 ...................................................................................................................10

Fed. R. Evid. 806 .................................................................................................10, 11, 12, 13

## Introduction

Defendants Christopher McPartland and Thomas Spota respectfully submit this memorandum of law in further support of their joint supplemental pre-trial motions.

For the reasons stated in the defendants' motions and below, the government should be compelled to disclose all witness statements and grand jury testimony of the 35 witnesses with exculpatory information. Further, should the government seek to use the grand jury testimony of ████████████ in any way at trial, it should be precluded from relying on questioning or testimony that is objectionable or improper under the Federal Rules of Evidence. In addition, the government should be required to provide a witness list (for any witnesses with no § 3500 or *Giglio* material) and exhibit list by October 9, the same date on which the Court has ordered the government to disclose all § 3500 and *Giglio* material. Finally, the government should be required to disclose any statements made by James Burke regarding James Hickey's mental condition.

## Argument

### I. The Defense Is Entitled to an Order Compelling the Disclosure of All Witness Statements and Grand Jury Testimony of the 35 Witnesses with Exculpatory Information

In our supplemental pre-trial motions, we sought disclosure of the interview reports and any grand jury testimony for the 35 exculpatory witnesses disclosed by the government. *See* Memorandum of Law in Support of the Defendants' Joint Supplemental Pre-Trial Motions, Doc. No. 99 ("Supp.") at 17–24. In essence, we argued (with supporting case law) that the defense should not be required to rely on the government's thumbnail "summaries" of this information because the original source material is far more accurate, complete, reliable, and usable at trial. This is especially the case here, given that the government has already provided to the defense an incomplete and inaccurate "summary" of information for one of the government's key trial

witnesses—James Hickey—when it "summarized" his hospital records from 2015, but omitted the key facts bearing on Hickey's mental condition.

In response, the government devotes all of one footnote to this important issue. In that footnote, the government states that: (1) some of the exculpatory witnesses, to the extent they are called as government witnesses at trial, will have their prior statements disclosed in the § 3500 material; (2) not every statement of these witnesses constitutes exculpatory material or material useful to the defense; and (3) the government's summaries, coupled with counsel contact information for most of these witnesses, should suffice. *See* Government's Memorandum of Law in Opposition to the Defendants' Joint Supplemental Pre-Trial Motions ("Gov't Mem.") at 3 n.2. We address these points below.

We do not take issue with (1) above, given that the Court has now ordered the disclosure of § 3500 material by October 9, 2019. Given that we will be receiving this material shortly, any issue as to the timing of this disclosure is moot, at least as to those witnesses for whom we will be receiving § 3500 material. Thus, the remaining issue relates to those exculpatory witnesses who will not be on the government's witness list, or for whom we will not receive § 3500 material.

We also do not take issue with (2) above, and agree that the required *Brady* disclosure need only encompass the exculpatory aspects of these witnesses' prior statements, along with any other portion that is material to the preparation of the defense. Of course, the disclosure also should include sufficient context so that the exculpatory portions may be fairly understood.

We do, however, strenuously take issue with (3) above—namely, the government's conclusory statement that its thumbnail "summaries," coupled with counsel contact information for the witnesses, should suffice. Notably, the government sets forth no legal authority in support of its position that the summaries it has provided are a sufficient substitute for the actual witness

statements in this case. Nor does it rebut (or even acknowledge) any of the legal authorities set forth in our moving memorandum, supporting the defense's request for actual witness statements. Likewise, it provides no good reason why the defense should have to rely on the government's summaries, or why it would prejudice the government in any way to produce the more fulsome, reliable versions of these exculpatory statements. For this failing alone, the defense motion should be granted.

Moreover, the government's contention that its summaries should suffice, because it has provided information as to the identity of counsel for the witnesses, is meritless. The simple fact is that almost all of the lawyers on the list have either refused to communicate with defense counsel or have told us that they will not allow their clients to speak with us. Indeed, we have complained to the government in the past that its overly aggressive tactics in the investigation of this case have created an atmosphere of fear among the witnesses and their counsel. Thus, the counsel list is of little to no value in providing the defendants the exculpatory information to which they are constitutionally entitled.

Accordingly, the defendants' motion for disclosure of grand jury transcripts and interview reports containing *Brady* material should be granted, and the government should be ordered to produce promptly the pertinent parts of the interview reports and grand jury testimony for any exculpatory witness whose prior statements will not be included in the § 3500 material.

**II.    Should the Government Seek to Use the ▮▮▮▮▮ Grand Jury Testimony at Trial, It Should be Precluded From Using Any Portion that Is Objectionable Under the Federal Rules of Evidence or Is Otherwise the Result of Improper Questioning**

In our supplemental pre-trial motions, we argued that, to the extent that the government called ▮▮▮▮▮▮▮▮ as a witness at trial, it should be precluded from using ▮▮▮▮▮ grand jury testimony for impeachment or as substantive evidence, to the extent that the questioning or testimony it seeks to rely on is objectionable or improper under the Federal Rules of Evidence. In

response, the government (1) mischaracterizes the defense request as one to "suppress" ███████ grand jury testimony; ████████████████████████████████████████████ ████████████████████████████████████████████ arguing that these tactics were necessary to drive the witness to reveal what the government believes to be "the truth"; (3) doubles down on its mischaracterization of ███████ grand jury testimony; and (4) argues that this issue should be decided on a question-by-question basis at trial. We address all of these arguments below.

First, the government mischaracterizes the defense argument, claiming that we seek the wholesale "suppression" of ███████ grand jury testimony. It then complains that the defense has not cited any authority in support of such a "dire remedy." Gov't Mem. at 5. The government fundamentally mischaracterizes and misapprehends the defense argument.

The defense has not moved to "suppress" ███████ grand jury testimony. Rather, it has requested that the government not be permitted to use or offer in evidence at trial those portions of the testimony that are the result of objectionable and improper questioning, or are otherwise inadmissible under the Federal Rules of Evidence. This is not a "dire remedy" at all. Rather, it is premised on the basic legal proposition that while prior testimony may (under certain circumstances) satisfy a hearsay exception, that conclusion does not mean that the testimony is otherwise admissible in evidence. *See* Supp. at 24−26. To the contrary, the testimony must still satisfy all other requirements for admissibility under the Federal Rules of Evidence. Consequently, to the extent that the government posed questions to ███████ that were objectionable—such as calling for opinion testimony, misstating the witness's prior testimony, including the prosecution's own view of the facts in the questions, calling for speculation ████████████████ or

asking compound questions—the responses are inadmissible. Remarkably, the government does not even address this basic legal argument, thus implicitly conceding it.

Second, the government provides only a perfunctory response to the defense's ████████ ████████████████████████████████████████████ And what meager response it does provide is nonsensical. For example, the government contends that ████████ "never objected to the manner of questioning, nor complained that his testimony was being twisted or that the government was misleading him." Gov't Mem. at 6. This makes little sense because a witness in the grand jury—questioned outside the presence of his attorney—has no meaningful opportunity to "object" to the prosecutor's questions and, ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Moreover, the government's contention that its tactics should be excused because they were "necessary to obtain the truth," Gov't Mem. at 7, reflects a disturbing lack of humility on the part of the prosecution. The simple fact is that the government in this case is not the arbiter of "the truth" and has no right to ████████ ██████████████████████████████████ To the contrary, this is a dangerous recipe for injustice, and does not further the truth-seeking process. Respectfully, we submit that that is precisely what happened in this case, as reflected in ████████ grand jury questioning.

Third, the government's opposition papers double down on its unsupported claim— previously set forth in a search warrant application—that ████████████████████████████ ████████████████████████████████████████████████████████ ████████ Gov't Mem. at 5. A careful review of ████████ testimony on this point, set forth and

analyzed at Exhibit A to the Krantz Affidavit dated August 30, 2019 ("Exhibit A"), reveals that this is simply not true. Indeed, there is absolutely no admissible testimony elicited from ███████ substantiating this statement, as a careful review of the testimony contained in Exhibit A reveals.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████ This is an innocuous statement and provides no support whatsoever for the government's claim that ████████████████████████████████████ ████████████████████████████ Moreover, to the extent that the government's relies on its ultimate question to ███████ on this subject, any such reliance is misplaced. Specifically, this was a wholly inappropriate and compound question that ended with ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Simply put, the government has materially twisted ███████ testimony, both in a search warrant application and in its brief to this Court. It should not be permitted to benefit from this improper tactic at trial.

Fourth, the government argues that this issue should be resolved on a question-by-question ████████████████████ at trial. Gov't Mem. at 7. While we do not disagree with that basic proposition, given the complexity and importance of this issue, we submit that it is crucial for the Court to be alerted to it now and, to the extent possible, to resolve it prior to trial. That way, the parties will be guided accordingly at trial. Of course, to the extent that the Court chooses to defer

resolution of our objections to ███████ grand jury testimony at this time, the relief we seek is the following: before the government uses at trial any portion of the ███████ grand jury testimony as to which we have objected, it be required to provide reasonable prior notice to the Court and to the defense, so that our objections may be adjudicated before the jury is exposed to the prior testimony. This is the only way to protect the defendants' right to a fair trial.

Finally, given that the government has stubbornly clung to its unsupported statement that, ████████████████████████████████████████████████████████████ ████████████████████████████████████ we ask that the government be precluded from making this assertion in its opening statement, absent a prior showing that it has a good-faith basis, apart from ███████ testimony, to do so. *See United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973) ("A prosecutor's misrepresentation of testimony may require reversal because of the inevitable prejudice to the defendant.").

## III. The Defense Is Entitled to Disclosure of Witness and Exhibit Lists By October 9

While this Court's September 11 and 12, 2019 rulings mooted a portion of the defendants' joint supplemental pre-trial motions, the motion for an order compelling the government to provide witness and exhibit lists contemporaneous with the disclosure of § 3500 and *Giglio*, on October 9, still stands. This request should be granted for essentially the same reasons the Court ordered the government to produce all § 3500 and *Giglio* material by October 9.

Of particular importance to the defendants' preparation for trial is a government witness list for any witness for whom there is no § 3500 or *Giglio* material. Without this list, there is *no way* for the defendants to know for certain whether any such witnesses will testify. This is not a theoretical concern: the government has already indicated that it intends to call an unspecified number of witnesses who are not former or current Suffolk County employees (whose identities have recently been disclosed). *See* Gov't Mem. at 3 n.3. The disclosure of these witnesses is

important to guarantee that the defendants have adequate time to prepare for trial, and to file any motions *in limine* with respect to the anticipated testimony of these witnesses. Indeed, disclosure in this instance is even more important since—in the absence of § 3500 material—the defendants will be left to speculate as to who these witnesses are and what they may say at trial.

In addition to a witness list, an exhibit list is also essential to enable the defendants to adequately prepare for trial. The amount of documentary discovery in this case is enormous, with over one million pages already produced, along with dozens of hours of wiretap and other recordings, and more to come. Given that, in the absence of an exhibit list the defendants will be left to guess exactly what materials the government will offer into evidence at trial, a scenario that will likely result in frequent trial interruptions to permit the defense time to review documents that the government is attempting to introduce into evidence and, where appropriate, to object to their admission (including preparing motion papers, where appropriate).

These distractions and delays can easily be minimized with the government's disclosure of an exhibit list. We have previously noted that an exhibit list was required to be produced well in advance of trial in several other high-profile cases against public officials. *See* Doc. No. 61 at 19 (citing *United States v. Silver*, 15 Cr. 93, Doc. No. 75 (S.D.N.Y. Oct. 7, 2015) (noting government's agreement to produce exhibit list to defendants nearly three weeks before trial—at the same time it disclosed § 3500 material); *United States v. Menendez*, 15 Cr. 155, Doc. No. 7 (D.N.J. Apr. 2, 2015) (ordering government to produce its exhibit list and marked exhibits 30 days before trial)). We also noted that this type of pre-trial disclosure was not limited to cases against public officials. *See* Doc. No. 61 at 19–20 (citing *United States v. Huff*, No. 12 Cr. 750, Doc. No. 116 (S.D.N.Y. Dec. 17, 2014) (ordering government to produce exhibits seven weeks before trial);

*United States v. Wider*, No. 14 Cr. 221, Doc. No. 115 (E.D.N.Y. June 6, 2015) (ordering government to produce pre-marked exhibits at least 30 days before trial)).

While the government has, commendably, agreed to furnish the defense, for at least some of the Rule 16 material, specific documents that "have potential relevance at trial," *see* Ex. A (Govt's Sept. 16, 2019 Ltr.), its disclosure to date of over *1,600 documents* is simply insufficient to give the defendants meaningful guidance about what exhibits it intends to rely on at trial. *See id.*; *see also, e.g.*, *United States v. Turkish*, 458 F. Supp. 874, 882 (S.D.N.Y. 1978) (directing government, in light of substantial discovery, "to identify to the defendants those documents which it intends to offer, or to use or to refer to in connection with the testimony of any witness, on its case in chief"). Upon initial review, it seems doubtful that the government intends to offer into evidence all or even many of the documents it has identified thus far. Moreover, the defendants have no way of knowing how many additional documents or other materials are forthcoming. Absent an exhibit list, the defendants will be essentially left to grope in the dark in order to identify what materials the government will actually offer into evidence at trial. Under these circumstances, there is simply "no reason why the government cannot be more specific" and "there are many reasons, grounded in fairness to the defendant[s], the protection of [their] rights . . . , why it should be." *See United States v. Poindexter*, 727 F. Supp. 1470, 1484 (D.D.C. 1989).

In light of the above, we reiterate our request that the Court direct the government to disclose a witness list (for witnesses with no § 3500 or *Giglio* material) and exhibit list by October 9—the same date that the government has been ordered to produce § 3500 and *Giglio* material.

## IV. The Government Should Be Compelled to Produce James Burke's Statements Regarding James Hickey's Mental Health

The government, in its opposition brief, does not dispute that (1) information calling into question the mental health or condition of a government witness must be produced under

*Brady/Giglio*; and (2) a non-testifying co-conspirator's statements can be impeached at trial under Federal Rule of Evidence 806, including by evidence showing that the co-conspirator made false statements. These are the two core arguments made by the defendants in support of their motion to compel the production of James Burke's statements regarding James Hickey's mental health. *See* Supp. at 36–38. Instead, in an attempt to avoid its disclosure obligation, the government makes two arguments in opposition to the motion that are inapposite and meritless.

A.    **The Government's Objections to the Admissibility of Burke's Statements Related to Hickey's Mental Condition Are Premature and Irrelevant**

First, the government argues that Burke is not a medical expert and, therefore, his lay opinion about Hickey's mental condition would not be admissible at trial or should be excluded pursuant to Federal Rule of Evidence 403. Gov't Mem. at 8–9. To begin with, this argument is premature. The defense is not arguing at this time about the *admissibility* of what Burke said on this subject. Indeed, the defense does not know what the government knows about the content or source of Burke's statements—preconditions to assessing the admissibility of those statements. Our current request only concerns the government's obligation to *disclose* this information to the defendants.

The government's argument is also legally unsound. The law is clear that *Brady/Giglio* material does not have to be admissible in order for the government to be required to disclose it. *See United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (noting that *Brady* compels disclosure of inadmissible information if it "could lead to admissible evidence" and collecting cases supporting the same); *United States v. Meregildo,* 920 F. Supp. 2d 434, 438 (S.D.N.Y. 2013) (citing *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007)) ("The Government's obligations under *Brady* encompass not only information that is admissible in its present form but also material information that could potentially lead to admissible evidence favorable to the defense."). As a

consequence, if the government has evidence of any statements by Burke regarding Hickey's mental condition that are favorable to the defense, the defense is entitled to those statements regardless of whether the statements are themselves admissible.

To the extent the government relies on its mis-descriptions of Hickey's medical records to take issue with the accuracy of any statements by Burke, Gov't Mem. at 8–9 and n.6, its argument is misguided, for several reasons. First, the defense is entitled to what Burke may have said on this subject, regardless of what the medical records indicate. Second, the premise of the government's argument—that the records are "void [*sic*] of any psychiatric or psychological treatments or diagnoses made by any medical professional," Gov't Mem. at 8—is simply false, as explained in more detail in the defendants' opposition to the government's motion *in limine* to preclude cross-examination relating to Hickey's 2015 hospitalization. Third, the law is clear that the government is obliged to disclose *Brady/Giglio* material, whether it believes it is credible or not. *See* Supp. at 37. Notably, the government does not—and could not—legitimately dispute this point.

### B. The Government's *Brady/Giglio* Obligations Extend to Impeachment of Non-Testifying Co-conspirator Witnesses Under Rule 806

Non-testifying co-conspirators like Burke may be impeached under Rule 806. And, as the case law makes clear, the government has a due process obligation to turn over *Brady/Giglio* material, regardless of whether the material concerns a testifying witness or a hearsay declarant. *See United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) ("Although we have never expressly stated that the government must disclose exculpatory and impeachment materials pertaining to nontestifying witnesses, that conclusion flows ineluctably from our prior cases. . . . It is thus clear that *Brady* and its progeny may require disclosure of evidentiary and/or impeachment materials whether those materials concern a testifying witness or a hearsay declarant."); *Dominguez v. Rock*,

No. 12-CV-3269 (NGG), 2016 WL 542120, at *11–12 (E.D.N.Y. Feb. 9, 2016) ("The fact that Ramirez did not testify at Petitioner's trial presents no obstacle to the application of *Brady* and its progeny."); *United States v. Franco*, No. 00-CR-300 (LMM), 2001 WL 99874, at *1 (S.D.N.Y. Feb. 5, 2001) (ordering government to disclose *Giglio* materials as to all hearsay declarants).

The government argues that it may avoid its disclosure obligations in light of *United States v. Shyne*, 617 F.3d 103 (2d Cir. 2010), in which the Second Circuit held that hearsay statements by non-testifying declarants need not be disclosed under the Jencks Act. *See* Gov't Mem. at 10. But that ruling is inapposite here: the defense is seeking disclosure of *Brady/Giglio* material, not Jencks Act material, with respect to Burke's alleged statements. Indeed, the court in *Shyne* made clear that *Brady/Giglio* still apply with respect to non-testifying declarants, stating:

> [t]he production of materials in possession of the Government that a defendant may use to take advantage of the opportunity to impeach a declarant under Rule 806 and the Government's obligation to produce such materials of which its agents have knowledge do not have their roots in the Jencks Act. *Rather they arise under due process obligations articulated in Brady and Giglio*, obligations with which the Government complied by issuing its letter describing the declarants' various foibles including the fact that one of the declarants lied during his proffer session.

*Id.* at 107–08 (emphasis added). Like the district court's order in *Shyne*—an order which the Second Circuit approved—this Court should order the government to disclose, pursuant to Rule 806 and its obligations under *Brady/Giglio*, all impeachment material for Burke—including any false statements regarding Hickey's mental condition.

In addition, the government's suggestion that it does not have to disclose Burke's statements to others since Burke did not make such statements to the government, Gov't Mem. at 10 n.8, is unconvincing. Nothing in *Giglio* limits the government's disclosure obligation to statements made directly to the government. To the contrary, the government frequently discloses statements or other information provided by its witnesses to third parties. Indeed, the information

the defendants seek here is comparable in this respect to information already provided by the government in its *Brady* letter (*i.e.*, Burke's statements to third parties of an exculpatory nature, including statements that he did not assault Christopher Loeb and that the federal investigation of him was unfounded and retaliatory). *See* Govt's July 8, 2019 Ltr. (Ex. E to Deft's Aug. 8, 2019 Ltr.). at 2–3. The government offers no good reason for its about-face refusal to provide helpful statements by Burke to others here.

Finally, contrary to the government's suggestion, the defendants' argument is not a "blatant effort to subvert" § 3500, Rule 806, or any other governing authority. *See* Gov't Mem. at 10. Rather, this motion is premised on the notion that the government cannot have it both ways: the government cannot argue that Burke was lying about Hickey's mental condition, but then deprive the defense of access to these fabrications for impeachment purposes if the government intends to offer into evidence at trial other statements made by Burke.

In light of the above, the defendants' motion for disclosure of Burke's statements about Hickey's mental condition should be granted.

## Conclusion

For the reasons stated herein, the defense respectfully requests that their remaining supplemental pre-trial motions be granted.

Dated: September 27, 2019
     New York, New York

By:   /s/ Larry H. Krantz
       Larry H. Krantz
       Lisa A. Cahill
       KRANTZ & BERMAN LLP
       747 Third Avenue, 32nd Floor
       New York, New York 10017

(212) 661-0009

Bradley R. Gershel
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
(212) 223-0200

*Counsel for Christopher McPartland*

Alan Vinegrad
Erin Monju
Sarah LeMaster
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- against -

CHRISTOPHER MCPARTLAND and
THOMAS J. SPOTA,

Defendants.

No. 2:17-cr-0587 (JMA)

**(Request to be filed
under seal)**

---

## AFFIRMATION OF ALAN VINEGRAD IN SUPPORT OF REPLY IN FURTHER SUPPORT OF DEFENDANTS' JOINT SUPPLEMENTAL PRE-TRIAL MOTIONS

Alan Vinegrad, an attorney duly admitted to practice in the courts of the State of New York, hereby affirms under penalty of perjury as follows:

1. I am an attorney for the defendant Thomas Spota in this matter, and submit this affirmation in support of the defendants' reply in further support of their joint supplemental pre-trial motions.

2. Attached hereto as Exhibit A is a true and correct copy of a letter sent by the government to defense counsel on September 16, 2019.

Dated: September 27, 2019
New York, New York

Alan Vinegrad
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*

# Exhibit A



**U.S. Department of Justice**


*United States Attorney*
*Eastern District of New York*

JJD:LTG/JLG                              *610 Federal Plaza*
F. #2018R00279                           *Central Islip, New York 11722*


September 16, 2019


<u>By Federal Express</u>

Larry H. Krantz, Esq.
Krantz & Berman LLP
747 Third Avenue, 32ⁿᵈ Floor
New York, NY 10017

Alan M. Vinegrad, Esq.
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405


    Re: United States v. Christopher McPartland and Thomas J. Spota
       <u>Criminal Docket No. 17-587 (JMA)</u>

Dear Counsel:

    Further to our discussion of September 11, 2019, concerning the government's identification of certain documents and materials that have potential relevance at trial, enclosed please find a .PDF export of 1,689 documents culled from the Suffolk County Department of Information Technology "backup tapes" for nine specific custodians, for the time period December 14, 2012 through December 31, 2017, which have been previously produced to you in accordance with Rule 16 of the Federal Rules of Criminal Procedure.

    The enclosed disc is being produced pursuant to the terms of the parties' March 19, 2019 Stipulation and Order (the "Protective Order"), just as this material was originally produced. As before, these materials are being provided to you via a third party data hosting and processing company. Additional materials deemed potentially relevant will

be provided on a rolling basis, as they are identified, or (with respect to materials being reviewed for privilege) as they become available.

Very truly yours,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/_____
Justina L. Geraci
Assistant U.S. Attorney
(631) 715-7835

Enclosure.