UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

   - against -

CHRISTOPHER MCPARTLAND and
THOMAS J. SPOTA,

                       Defendants.

No. 2:17-cr-0587 (JMA)

---

**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTIONS *IN LIMINE* TO EXCLUDE EVIDENCE**


**<u>UNREDACTED VERSION – REQUEST TO BE FILED UNDER SEAL</u>**



KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
(212) 223-0200

*Counsel for Christopher McPartland*

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*

# Table of Contents

Preliminary Statement..................................................................................................... 1

I.      Background ....................................................................................................... 2

II.     Argument .......................................................................................................... 4

      A.      The Evidence Consists Solely of Propensity Evidence That Is Improper
            and Inadmissible Under Rule 404(b) ........................................................ 4

      B.      The Evidence Cannot Be Admitted as to Police Officer Co-Conspirators'
            States of Mind, Because Their States of Mind Are Irrelevant Under Rule
            402............................................................................................................... 5

      C.      The Police Officer Co-Conspirators' Opinion Testimony Is Improper and
            Inadmissible Under Rules 602 and 701 ................................................... 6

      D.      The Evidence Must Be Excluded Under Rule 403, Because Admission of
            the Evidence Would Be Unfairly Prejudicial and Confusing, and Waste
            Time .......................................................................................................... 9

      E.      The Evidence of Burke's Alleged Misconduct Is Also Inadmissible for
            Several Reasons ..................................................................................... 10

Conclusion ...................................................................................................................... 12

## Table of Authorities

**Page(s)**

**Cases**

*Alvarez v. Nicholson*,
No. 03-CV-4173 (RCC), 2005 U.S. Dist. LEXIS 45744 (S.D.N.Y. Aug. 3, 2005) ............................................................................................................................8

*Bates v. Delgais*,
No. 3:06-CV-1848 (HBF), 2009 U.S. Dist. LEXIS 93796 (D. Conn. Oct. 2, 2009) ............................................................................................................................8

*Hester v. BIC Corp.*,
225 F.3d 178 (2d Cir. 2000)...............................................................................7, 8

*United States v. Carboni*,
204 F.3d 39 (2d Cir. 2000)........................................................................................4

*United States v. Connolly*,
No. No. 16-CR-370 (CM), 2018 U.S. Dist. LEXIS 84198 (S.D.N.Y. May 15, 2018) ............................................................................................................................8

*United States v. Edwards*,
342 F.3d 168 (2d Cir. 2003).......................................................................................5

*United States v. Garcia*,
291 F.3d 127 (2d Cir. 2002).......................................................................................5

*United States v. Mahaffy*,
477 F. Supp. 2d 560 (E.D.N.Y. 2007) ........................................................................4

*United States v. McCallum*,
584 F.3d 471 (2d Cir. 2009).......................................................................................5

*United States v. Robinson*,
No. 16-CR-98 (CKK), 2017 U.S. Dist. LEXIS 102666 (D.D.C. June 26, 2017) .....................8

*United States v. Scott*,
677 F.3d 72 (2d Cir. 2012).........................................................................................5

*United States v. Ulbricht*,
79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015) .................................................................5

*Village of Freeport v. Barrella*,
814 F.3d 594 (2d Cir. 2016).......................................................................................8

**Other Authorities**

Fed. R. Evid. 402 .................................................................................................5, 6, 10, 11

Fed. R. Evid. 403 .................................................................................................2, 9, 10, 11

Fed. R. Evid. 404 .................................................................................................1, 4, 5

Fed. R. Evid. 602 .................................................................................................2, 6

Fed. R. Evid. 701 .................................................................................................2, 6, 7, 8, 9

The defendants submit this memorandum in reply to the government's opposition memorandum to the defendants' motions *in limine*, specifically, to Sections II and III of the government's memorandum, which concern alleged prosecutorial conduct of the defendants other than in the prosecution of Christopher Loeb, and other alleged misconduct by James Burke.

### Preliminary Statement

The government's memorandum confirms, in lurid detail, the defense's worst fears about the government's tactics in this case. Faced with an obvious lack of direct proof—the government has only one witness who claims to have had any direct communications with the defendants in which they allegedly engaged in the charged conspiracy, and even he claims to have engaged in very few such communications—the government has resorted to offering a far-reaching smorgasbord of propensity evidence aimed at marring the defendants' character. Specifically, it seeks to turn the jury against the defendants by proving that the defendants and Burke repeatedly worked together to injure Burke's enemies—almost assuredly leading to the inference that the defendants and Burke worked together here too, to cover-up Burke's assault of Loeb. *See* Gov't Memo. at pp. 10–11. While the government offers the thin and formulaic excuse that it seeks to offer this evidence to prove Burke's co-conspirators' "state[s] of mind" (which are patently not at issue in this trial), the evidence is baldly improper and unfairly prejudicial propensity evidence.

The evidence of the defendants' alleged prosecutorial conduct therefore must be excluded, for four reasons. **First,** these alleged other acts have no factual connection to the alleged conspiracy, were not intertwined with it, and have no similarity to the charged offenses. Thus, the evidence of these other acts must be assessed under Rule 404(b)—and it cannot meet that bar, as the government effectively concedes by offering no argument as to the evidence's admissibility under Rule 404(b). **Second,** the government's theory of admissibility—that this is not propensity evidence, but instead bears on the "state of mind" of Burke's police officer co-conspirators—is

plainly pretextual and legally baseless. With one exception addressed below (relating to Oliva),

the government does not (and could not) assert that the defendants engaged in or referred to the

alleged conduct in order to compel the officers to join the conspiracy. Because the government

does not connect the officer co-conspirators' states of mind to conduct taken by the defendants to

further the conspiracy, the evidence must be excluded as irrelevant. **Third,** to prove its theory

regarding the state of mind of Burke's police officer co-conspirators, the government would, of

necessity, have to offer the officers' opinion testimony concerning their views of the defendants'

allegedly improper motives for their other prosecutorial acts. Such testimony would be wholly

speculative, given that the officers were evidently not involved in any of the prosecutorial

decision-making in those other cases. As such, the testimony would be inadmissible under both

Rules 602, because it would not be based on the officers' personal knowledge, and 701, because

it would not be "rationally based on the witness's perception" or "helpful to clearly understanding

the witness's testimony or to determining a fact in issue." **Fourth,** even if the government could

overcome any or all of the above hurdles, the evidence would nevertheless have to be excluded

under Rule 403, as any probative value would clearly be outweighed by the dangers of unfair

prejudice, juror confusion, and wasting of time. Finally, the evidence concerning certain alleged

misconduct by Burke must be excluded for many of these same reasons.

## I.     Background

The government seeks to offer evidence of the following:

> (1) The defendants' alleged involvement in the 2005 gun
> possession prosecution of the son of a police officer named Pat
> Cuff—seven years before the Loeb assault—on the theory that
> this was done in "revenge" for action that Cuff had taken
> against Burke 12 years earlier (in 1993). *Id.* at pp. 12–13. The
> government does not claim that the prosecution was unlawful,
> but rather, plans to offer opinion testimony from officers who
> were not involved in the decision-making process that the
> prosecution was overly aggressive, and that the defendants'

true motivation (in the opinion of the witnesses) was to punish an enemy of Burke.[1]

    (2)   The defendants' involvement in the investigation of former Suffolk County Executive Steve Levy in 2011. *Id.* at pp. 11–12.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

    (3)   The prosecution of former police officer John Oliva in 2014 for leaking a variety of confidential law enforcement information to the press. *Id.* at p. 13. Yet again, the government does not claim that there was anything unlawful about this prosecution—indeed, Oliva pleaded guilty to the offense. Nonetheless, it plans to offer opinion testimony from certain officers, who were uninvolved in the decision-making process, that they perceived the defendants' true motivation to be a desire to punish an enemy of Burke.[2]

    (4)   The defendants' and Burke's alleged "selective enforcement of laws in favor of friends and against enemies." *Id.* at pp. 14–15. The government does not specify any such alleged conduct beyond the foregoing allegations, but it nonetheless plans to offer opinion testimony that such alleged conduct occurred and that it made Burke "infinitely more powerful." *Id.* at 15.

---

[1] The government suggests that the defendants were involved in the possible decision, in 2005, to upgrade the gun possession charge against Cuff's son from a misdemeanor to a felony, but the government offers no evidence that any such upgrade was unjustified. *See* Gov't Memo. at p. 12. The government further alleges that Burke demoted Cuff when Burke became the Chief of the Suffolk County Police Department, but offers no evidence that the defendants were even involved in that decision, much less shared Burke's allegedly retaliatory motive. *Id.* Finally, the government alleges that Burke sent officers to Cuff's retirement party, allegedly so that retaliation could be taken against his sympathizers. Again, the government offers no evidence that the defendants were involved, or that adverse action was taken by them against any attendees. *Id.*

[2] We respectfully submit that there is no legal basis for the admission of any of these incidents at trial. We recognize that the Court has already indicated that some aspect of the Oliva investigation will be admitted over our objection—largely because Mr. McPartland is alleged to have made reference to it in a comment to James Hickey during the federal investigation of the Loeb assault—but for the reasons set forth herein, we urge that evidence of the Oliva investigation should be narrowly circumscribed and fact-based, rather than filled with speculation and unsupported opinion.

(5) Burke's alleged "utiliz[ation of] police department resources to aid in his own personal agendas," which, based on officer opinion testimony, rendered Burke "very powerful" and made the officers willing to engage in the Loeb cover-up. *Id.* at pp. 14–15. The government also seeks to offer evidence of Burke's alleged driving under the influence of alcohol and, potentially, other alleged misconduct in redirect examinations. *Id.* at p. 9.

All of this evidence must be excluded for the reasons set forth herein.

## II. Argument

### A. The Evidence Consists Solely of Propensity Evidence That Is Improper and Inadmissible Under Rule 404(b)

The government's assertion that this evidence must be admitted as direct evidence of the charged offenses is baseless. The government may only offer evidence of another act as direct evidence if the act was "inextricably intertwined with the evidence regarding the charged offense, or . . . necessary to complete the story of the crime on trial." *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citation omitted); *see also* Defs.' Mem. at pp. 28–29 (collecting cases). Evidence of another act may not be offered as direct evidence if the act related to a "separate, discrete offense that may be conceptually segregated from the charged offenses without impairing the jury's ability to understand the facts underlying the schemes alleged in the indictment." *See, e.g.*, *United States v. Mahaffy*, 477 F. Supp. 2d 560, 566 (E.D.N.Y. 2007).

The government's assertion that the entirely disparate acts described above are "inextricably intertwined" with or "necessary to complete the story" of the alleged conspiracy is preposterous. The government nowhere asserts that *the defendants* engaged in or referred to *any* of the alleged conduct to compel the officer co-conspirators to join the Loeb conspiracy or to otherwise further the conspiracy (with the exception of a single comment relating to the Oliva prosecution, as addressed in note 2). And whether the police officer co-conspirators joined the conspiracy because of their subjective views of the defendants' conduct—unprompted by any act

4

of the defendants—or for any other reason, is equally irrelevant to any issue at this trial. Simply put, the foregoing evidence cannot be direct evidence of the alleged conspiracy, because it is not even relevant evidence of that conspiracy.

Instead, the government plainly intends to introduce the foregoing other act evidence as character evidence and it must therefore be assessed under Rule 404(b). *See United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (stating that, in instances where the government seeks to offer other act evidence that "*might* adversely reflect on the [defendant's] character, the evidence must be evaluated under 404(b)"). But the evidence plainly cannot satisfy the requirements of the Rule—as the government effectively concedes by not offering any argument that it does.

Rightly so. The alleged other acts bear no similarity to the charged offenses— accordingly, the government cannot (and does not) argue that the evidence serves a proper purpose under Rule 404(b). *See, e.g.*, *United States v. Edwards*, 342 F.3d 168, 177 (2d Cir. 2003); *United States v. Garcia*, 291 F.3d 127, 137-38 (2d Cir. 2002); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015). Instead, the evidence is plainly propensity evidence— offered to prove that, because the defendants allegedly abused their office to assist Burke in the past, they did the same here. As such, the evidence must be excluded under Rule 404(b). *See United States v. McCallum*, 584 F.3d 471, 475–77 (2d Cir. 2009) (stating that it is improper to receive evidence ostensibly as probative of knowledge and intent when in reality it is "propensity evidence in sheep's clothing").

### B. The Evidence Cannot Be Admitted as to Police Officer Co-Conspirators' States of Mind, Because Their States of Mind Are Irrelevant Under Rule 402

For similar reasons, the evidence must be excluded as irrelevant under Rule 402. The government asserts that it should be permitted to introduce the foregoing evidence to prove "that Burke was ruthless, vengeful and vindictive in his dealings with anyone who crossed him" and

"why some of the police witnesses participated in the vast cover-up of the assault." Gov't Memo. at pp. 10–11. But the government proves the vacuousness of this argument in its own brief—by acknowledging that "[t]he government is required to prove beyond a reasonable doubt that a conspiracy existed between *the defendants and James Burke*." *Id.* at p. 15 (emphasis added).

Precisely. And the proffered evidence proves nothing of the sort. In the present circumstances—where the defendants concede that a conspiracy existed, and that the police officer co-conspirators were members of it—it simply makes no difference *why* the officers chose to join in the conspiracy, especially in the absence of any evidence that the defendants relied on this other, entirely unrelated prosecutorial conduct to further the charged conspiracy (again, with the exception of the Oliva prosecution, as addressed in note 2). Simply put, the subjective motives of the witnesses who joined the conspiracy is of no relevance whatsoever at this trial, as it makes it no more or less likely that the defendants on trial joined that same conspiracy.

Because the evidence therefore has nothing whatsoever to do with whether *the defendants* were members of the alleged conspiracy, it must be excluded as irrelevant under Rule 402.

### C. The Police Officer Co-Conspirators' Opinion Testimony Is Improper and Inadmissible Under Rules 602 and 701

To prove its theory that the defendants' alleged other prosecutorial conduct subjectively induced the police officer co-conspirators to join the Loeb cover-up, the government will be required (and has stated its intent) to offer the officers' lay opinion testimony as to the defendants' "true" motives for each of the alleged prosecutorial acts. However, any such testimony would plainly violate Rule 602 (because it is speculative and not based on first-hand knowledge) and Rule 701 (because it is not "rationally based on the witness's perceptions" or "helpful to clearly understanding the witness's testimony or to determining a fact in issue").

6

First, it is a bedrock principle of evidence that a witness must have "personal knowledge of the matter." Fed. R. Evid. 602. Here, the government's witnesses will offer opinion testimony as to the defendants' motivations for making certain prosecutorial decisions. However, it appears that the witnesses themselves will not claim to have played any role in the decision-making processes in those cases, or to have even been privy to those processes. In other words, the witnesses will not claim to have been involved in the decision to charge Cuff's son, or to investigate Levy or Oliva. Rather, they will be offering opinions based on their awareness of the investigations from another source. As such, their testimony will not be based on first-hand knowledge and must be excluded.

Second, the evidence cannot pass muster under Rule 701, which requires that lay opinion testimony be "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701. The law governing the admission of "motivation" evidence under Rule 701, of the type the government seeks to admit here, makes clear that admission of this evidence would amount to reversible error.

In *Hester v. BIC Corp.*, 225 F.3d 178 (2d Cir. 2000), the Second Circuit reversed a jury verdict finding of race discrimination where the trial court permitted four co-workers to offer lay opinions that a supervisor's behavior towards the plaintiff was racially motivated, where those opinions were based on subjective impressions of the supervisors' motives. The court held that:

> Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision. Witnesses are free to testify fully as to their own observations of the defendant's interactions with the plaintiff or with other employees, but the witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant was motivated by an impermissible animus.

*Id.* at 185 (internal quotation marks omitted).

The Circuit reiterated this holding in *Hester* in *Village of Freeport v. Barrella*, 814 F.3d 594 (2d Cir. 2016). There, the court again reversed and remanded a case after trial because "the District Court erred in permitting lay opinion testimony that speculated as to [the employer's] reasons for not appointing [the plaintiff to a position], in violation of Rule 701(b)." *Id.* at 599. The Court again observed: "Although witnesses may testify regarding 'their own observations of the defendant's interactions with the plaintiff or with other employees,' they may not opine as to the motives, racial or otherwise, underlying those interactions." *Id.* at 611 (quoting *Hester*, 225 F.3d at 185); *see also United States v. Connolly*, No. 16-CR-370 (CM), 2018 U.S. Dist. LEXIS 84198, at *20-26 (S.D.N.Y. May 15, 2018) (precluding the government from offering "speculative" evidence from counterparties or cooperators that the British Bankers' Association would find certain submissions "material"); *United States v. Robinson*, No. 16-CR-98 (CKK), 2017 U.S. Dist. LEXIS 102666, at *3 (D.D.C. June 26, 2017) (granting motion to exclude "improper speculation" by DEA agents as to the defendant's motivation for placing a call to the DEA); *Bates v. Delgais*, No. 3:06-CV-1848 (HBF), 2009 U.S. Dist. LEXIS 93796, at *2-3 (D. Conn. Oct. 2, 2009) (barring trial testimony about defendants' alleged racial motivation for an alleged body cavity search where it would be "improper opinion evidence" under Rule 701 since "[p]laintiff's conclusions are not based on any facts reasonably perceived by him"); *Alvarez v. Nicholson*, No. 03-CV-4173 (RCC), 2005 U.S. Dist. LEXIS 45744, at *22 (S.D.N.Y. Aug. 3, 2005) ("When a witness has not identified the objective bases for his opinion, the proffered opinion fails to meet the requirements of Rule 701, as there is no way for the court to assess whether it is rationally based on the witness's perceptions").

These cases govern here, and mandate exclusion of the proffered "opinion" evidence. As in these cases, the witnesses' opinions here cannot possibly be "rationally based on the witness's perception" because, as noted above, the witnesses were apparently not involved in the decision-making processes as to any of the incidents in question. Given that, their views as to the "motivations" behind these prosecutorial decisions are necessarily sheer speculation, and therefore inadmissible. Likewise, the proffered testimony would not be "rationally based" within the meaning of Rule 701, because it is wholly speculative and would require the witnesses to be mind readers. Nor can it be "helpful" under Rule 701, since—to the extent the officers observed anything at all concerning the alleged other acts—they may testify to those factual observations and permit the jury to draw its own inferences; and, for the reasons stated above, the testimony will also not be "helpful" to determining a fact in issue because the officers' states of mind are irrelevant. Accordingly, such opinion testimony must be excluded.

### D. The Evidence Must Be Excluded Under Rule 403, Because Admission of the Evidence Would Be Unfairly Prejudicial and Confusing, and Waste Time

All of this evidence must be excluded under Rule 403, because any probative value would plainly be outweighed by the dangers of unfair prejudice, juror confusion and wasting of time.

While the government may assert that it is endeavoring to prove the state of mind of police officer co-conspirators, the obvious effect of this evidence will be to vilify the defendants and to demean their character. This unfair prejudice would plainly dwarf any purported probative value as to the state of mind of the officer co-conspirators—which, in the trial of these defendants, is essentially nil—and would create an extreme risk of juror confusion that could result in conviction on an improper basis, particularly given the dearth of direct evidence of the charged conduct.

Further, the evidence would inevitably result in numerous mini-trials as to the propriety of the Cuff prosecution, the Levy and Oliva investigations, and whatever other mud the

government sees fit to throw under the auspices of the defendants' and Burke's alleged "selective enforcement of laws"—each of which will require a fulsome and vigorous response from the defense. Simply put, if evidence so far afield from the indictment's allegations is admitted, the defense will require both the time—and discovery—that is needed to ensure that the entirely legitimate explanations for each of the above prosecutions are made clear to the jury. The additional witnesses and examination time will cause a substantial expenditure (and waste) of time for the Court and the jury—for little to no added probative value concerning the charged offenses.

Accordingly, the proffered evidence must be excluded under Rule 403.

### E. The Evidence of Burke's Alleged Misconduct Is Also Inadmissible for Several Reasons

Finally, the government also states that it will seek to introduce substantial evidence concerning Burke's alleged bad character. But all of this evidence must be excluded as well.

First, the government will seek to introduce evidence that Burke "utilize[d] police department resources to aid in his own personal agendas," which, according to anticipated police officer co-conspirator opinion testimony, rendered Burke "very powerful" and made the officer co-conspirators willing to engage in the Loeb cover-up. Gov't Memo. at p. 14. But the police officer co-conspirators' states of mind are irrelevant in this trial, for the reasons stated above, and this evidence must therefore be excluded under Rule 402. Further, the evidence would also be unfairly prejudicial and confuse the jury (proving only guilt by association), and would waste the Court's and the jury's time (necessitating, as it would, mini-trials to prove either the propriety of the conduct or that the defendants were not involved, or both) and must therefore also be excluded under Rule 403.

Second, the government will seek to introduce evidence that Burke drove under the influence of alcohol the night before Loeb burglarized his vehicle. *Id.* at n.3. But this evidence is entirely irrelevant. There is no dispute that Loeb burglarized Burke's car; whatever Burke did or did not do the night before to enable Loeb's theft is utterly irrelevant to the charges against the defendants, and thus this evidence must be excluded under Rule 402. Further, as outlined in the defendants' prior briefing, allegations of driving under the influence are highly inflammatory, and risk prejudicing the jury against the defendants for their mere association with Burke, with no discernable probative value. Accordingly, the evidence must be excluded under Rule 403.

Third, the government asserts that, if the defense questions government witnesses concerning their use of racist or sexist language, driving under the influence, and/or cheating on their spouses, the government may elicit, on redirect examination of its witnesses, similar acts by Burke. *Id.* at p. 9. This tit-for-tat approach is legally baseless. The defense may ask such questions to the extent they are relevant to the *witnesses' credibility*. That cannot open the door to similar questions on redirect examination as to similar conduct by Burke; rather, such conduct could become fodder for government questioning if, and only if, Burke testifies at trial and is himself subject to cross-examination.

## Conclusion

For all of these reasons, the defendants respectfully request that the Court grant their motions *in limine* to exclude the foregoing evidence.

Dated:  November 4, 2019
        New York, New York

Respectfully submitted,

Larry H. Krantz
Lisa A. Cahill
KRANTZ & BERMAN LLP
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 661-0009

Bradley R. Gershel
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, New York 10019
(212) 223-0200

*Counsel for Christopher McPartland*

Alan Vinegrad
Erin Monju
Sarah LeMaster
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

*Counsel for Thomas J. Spota*