| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------------X<br>UNITED STATES OF AMERICA,<br><br>                       -against-<br><br>CHRISTOPHER MCPARTLAND, and<br>THOMAS J. SPOTA,<br><br>                             Defendants.<br>----------------------------------------------------------------------X | Filed Under Seal<br><br><br><br><u>ORDER</u><br>17-CR-587 (JMA) |

**AZRACK, United States District Judge:**

The parties' motions in limine are addressed below.

**A. <u>Evidence that Will be Permitted at Trial</u>**

    **1. Burke's Lies to Other Individuals**

The Court will allow defendants to elicit testimony that Burke told other individuals, outside of the presence of the defendants, that he did not assault Loeb and that Burke also told such individuals why he believed the federal investigation against him was being pursued.

    **2. The D'Orazio/Burke/McPartland Loan**

The Court will allow the government to introduce evidence of the loan involving D'Orazio, Burke, and McPartland. Burke's willingness to give or lend money to McPartland in these circumstances is circumstantial evidence that Burke was paying back McPartland for McPartland's attempts to help shield Burke from the federal investigation. While there are other inferences more favorable to the defense that could be drawn from this incident, that is a question for the jury to decide. Additionally, a jury could infer from the circumstances that McPartland knew that Burke was the source of these funds and that his willingness to accept funds from Burke, given the ongoing federal investigation, evidences mutual trust between McPartland and Burke.

Although the evidence of this loan is generally admissible, the government shall not introduce evidence suggesting that Burke was not authorized to give D'Orazio the money in the safe deposit box. McPartland may introduce evidence of his finances in February 2016 and is not limited to relying on D'Orazio's testimony in that regard. If requested by the defense, the Court will consider instructing the jury that the target letter sent to McPartland is not evidence that McPartland committed a crime.

**3. The Oliva, Cuff, and Levy Investigations and Prosecutions; Burke's Installation of the GPS; and the Involvement of Suffolk County Police Officers in Matters Concerning Burke's Girlfriend**

The government seeks to introduce evidence of various incidents to explain why the police officer co-conspirators feared Burke and defendants and why the co-conspirators lied and agreed to cover-up Burke's assault. These incidents include the prosecutions and investigations of Oliva, Cuff, and Levy. Additional incidents involve Burke surreptitiously placing a GPS device on a police officer's automobile and using police officers to investigate rivals for his girlfriend's affection and to investigate a contractor who was involved in a dispute with his girlfriend.

With the exception of the Levy investigation, which is discussed further below, the Court finds that these incidents, which are relevant to the state of mind of the co-conspirators, are relevant and admissible. See United States v. Mustafa, 753 F. App'x 22, 36–37 (2d Cir. 2018), cert. denied, No. 19-5345, 2019 WL 4923243 (Oct. 7, 2019) ("[B]ecause conspiracy requires a meeting of conspirators' minds on a common criminal objective, other-act evidence indicating a co-conspirator's state of mind may well be relevant to explain how a criminal enterprise developed, to help the jury understand the basis for the co-conspirators' relationship of mutual trust, or to complete the story of the charged conspiracy.") (internal citations and quotation marks

omitted); United States v. Bellomo, 176 F.3d 580, 587 (2d Cir. 1999) (finding statements concerning witness's state of mind were admissible).

The co-conspirators' fear of defendants and Burke—formed through their knowledge of the aforementioned incidents—is necessary to explain the actions of the co-conspirators and to complete the story of the charged conspiracy. Contrary to the protestations of the defense, the government—which bears the burden of proving defendants' guilt beyond a reasonable doubt—is not required to try this case in a vacuum devoid of critical context. Additionally, the evidence concerning the investigations and prosecutions of Cuff and Oliva, which involved defendants, is also relevant to establish both motive and the close relationship between Burke and defendants because it shows that defendants viewed Burke's enemies as their enemies.

The state of mind of the co-conspirators, particularly Hickey, is also relevant for additional reasons. The government seeks to prove that defendants, who communicated directly with Hickey, conspired with him and others. Hickey's state of mind is relevant to determine whether he and defendants conspired to obstruct justice. Additionally, Hickey's state of mind is relevant to the substantive obstruction counts, including the charges under 18 U.S.C. 1512(b) and 18 U.S.C. § 1512(c). The Court recognizes that, in order to convict defendants, it is not necessary for the government to prove Hickey's state of mind under the relevant obstruction statutes because an "attempt" is sufficient to convict.[1] However, the government is not limited to an attempt theory and is also entitled to prove that defendants violated these statutes because they did, in fact, "corruptly persuade[] another person" and "obstruct[], influence[], or impede[]

---

[1] Because 18 U.S.C. 1512(b) and 18 U.S.C. 1512(c) criminalize, inter alia, "attempts" to "use intimidation, threaten[], or corruptly persuade[] another person," 18 U.S.C. § 1512(b), and "attempts" to "obstruct[], influence[], or impede[] any official proceeding," 18 U.S.C. § 1512(c)(2), the government is not required to prove that a defendant's attempts to obstruct were, in fact, successful. See United States v. Wilson, 796 F.2d 55, 57 (4th Cir. 1986) ("[T]he court erroneously assumed that § 1512(b)(1) applies only to conduct that actually dissuades testimony. The statute, and the indictment upon which [the defendant] was tried, both state that "attempts to" dissuade testimony are sufficient for conviction. The success of an attempt or possibility thereof is irrelevant; the statute makes the endeavor a crime.").

3

an[] official proceeding." To establish guilt under this theory of obstruction, the government is entitled to introduce evidence of Hickey's state of mind because whether he was, in fact, corruptly persuaded, and whether defendants' threats to Hickey, in fact, caused an official proceeding to be obstructed, influenced, or impeded are at issue. Thus, Hickey's reasons for taking actions to cover-up the assault of Loeb are relevant and critical, including the interplay of the statements of defendants and Burke to Hickey and Hickey's knowledge of other actions taken by defendants and Burke against other individuals such as Oliva and Cuff.

Moreover, Hickey's state of mind is also relevant to the question of whether defendants committed the conspiracy and obstruction offenses (whether as mere attempts or otherwise) because Hickey's state of mind is: (1) probative of how a reasonable officer in Hickey's position would, in light of the all of the circumstances, view the allegedly threatening statements made by defendants; and (2) relatedly, is also circumstantial evidence of defendants' intent, which is clearly at issue. See United States v. Maggitt, 784 F.2d 590, 593 (5th Cir. 1986) (stating that "whether a threat had a reasonable tendency to influence the witness is relevant in determining an accused's state of mind" and explaining that the fact that the witness "was not actually influenced by [the defendant's] threat was relevant," but not conclusive, "in determining [the defendant's] state of mind"); see also United States v. Curley, 639 F.3d 50, 58 n.4 (2d Cir. 2011) (upholding admission of defendant's prior abuse of spouse because "even though the victim's fear [was] not an express element of the protective order count [at issue], evidence of the victim's fear may be relevant to what the defendant knows or reasonably should know as to the victim's likely fear for the underlying New York crime of stalking"); United States v. Curcio, 759 F.2d 237, 241 (2d Cir. 1985) (finding that, where the defendant was only charged with attempted extortion, evidence of the defendant's reputation known to the victim, specifically the

4

defendant's recent indictment for an unrelated incident of extortion, was still properly admitted to show "an effort to instill fear").

The Court now turns to the specific incidents at issue, which are addressed in turn below.

The Court will allow the government to introduce evidence concerning the investigation and prosecution of Oliva. The Oliva investigation is relevant for multiple reasons. First, because McPartland allegedly referenced Oliva in threatening Hickey, the Oliva investigation and prosecution is inextricably intertwined with the charged conspiracy. The details about Oliva are necessary to understand the threat and the intent behind the threat. Second, the Oliva investigation and prosecution are relevant to explain the state of the mind of the co-conspirators, including Hickey, and their subsequent actions. Third, the Oliva investigation—including the fact that wiretap monitors were told to pay attention to calls involving other individuals deemed to be enemies of Burke—shows that defendants viewed Burke's enemies as their enemies and is evidence of both motive and the close relationship of Burke and defendants.

The evidence concerning the Oliva investigation is not more prejudicial than probative. Given that McPartland allegedly made an explicit reference to Oliva, whatever potential prejudice this evidence might cause is far outweighed by its probative value. Moreover, the investigation and prosecution of Oliva (who clearly committed a crime), including the use of a lawful wiretap, and the efforts made during the wiretap to also focus on conversations involving other enemies of Burke is not more sensational or disturbing than the charges defendants face here, which concern obstructing a federal investigation into an assault committed by the highest ranking police officer in the Suffolk County Police Department. If requested, the Court will consider any relevant limiting instruction proposed by the defense concerning the Oliva evidence.

The Court will also allow the government to introduce evidence concerning Cuff's son, the demotion of Cuff, and Burke's instructions concerning the attendees at Cuff's retirement party. There is sufficient circumstantial evidence that defendants played a role in the prosecution of Cuff's son and the threat to upgrade the charges against his son. The Court finds unpersuasive defendants' argument that the prosecution of Cuff's son is only relevant if (like the Oliva investigation) one of the defendants explicitly referenced Cuff in discussing the Loeb matter with Hickey. The evidence concerning Cuff is necessary to explain the state of mind of the co-conspirators (including to complete the story of the charged conspiracy and for the other reasons set forth above). Additionally, the evidence concerning the prosecution of Cuff's son, which shows that defendants considered Burke's enemies to be their enemies, is also probative of motive and the close relationship between defendants and Burke. The evidence concerning the demotion of Cuff and Cuff's retirement party is also relevant, even though defendants were not involved in that conduct. Furthermore, in order to explain the evidence concerning Cuff, the government is permitted to introduce evidence concerning the 1993 IAB investigation, which is necessary to explain Burke's hatred of Cuff.

The evidence concerning Cuff is not more prejudicial than probative. A decision to exercise prosecutorial discretion and to pursue and threaten certain available charges against Cuff's son is not more sensational or disturbing than the current charges against defendants. There is also little risk of prejudice from the evidence concerning Cuff's demotion and the retirement party, events in which defendants played no role. Although the IAB investigation involves certain salacious allegations against Burke, there are no allegations that defendants themselves engaged in any misconduct in connection with the IAB charges and investigation of Burke. And, the 1993 IAB investigation and charges are critical to understand Burke's hatred of

6

Cuff.  None of the evidence concerning Cuff makes sense without the jury knowing about Cuff's role in the IAB investigation and the IAB investigation's findings.  The Court will consider any limiting instruction proposed by the defense concerning the Cuff evidence.

As explained below, the Court defers ruling, at this time, on the evidence concerning the Steve Levy investigation.

Finally, the Court will allow the government to introduce evidence that Burke surreptitiously placed a GPS device on a police officer's automobile and used police officers to investigate rivals for his girlfriend's affection and to investigate a contractor who was involved in dispute with Burke's girlfriend.  Even if defendants were not involved in (and did not even know about) this conduct, it is still necessary to show the state of mind of the co-conspirators and to explain their actions.  The fact that, at the very least, defendants were apparently not involved in this purported misconduct reduces any potential prejudice from this evidence, which is necessary to tell the complete story of the charged conspiracy.  The Court will consider any relevant limiting instruction proposed by the defense.

## B. Evidence Precluded from Trial

The government is precluded from introducing evidence concerning the 2011 car accident involving Burke and McPartland.

The government is precluded from introducing evidence concerning Burke's drinking on the night of the Loeb robbery.

The government contends that it should be permitted to inquire into certain conduct by Burke if the defense broaches similar topics during the cross-examinations of the police witnesses.  (See Gov't Opp'n to Defs.' Mots. in Limine at 9.)  The Court disagrees with this

7

general argument. If the government wishes to inquire into any such conduct by Burke, the government shall first request a sidebar.

C. **Deferred Rulings and Additional Information Requested by the Court**

As stated earlier, the Court defers ruling, at this time, on the evidence concerning the Steve Levy investigation. By November 11, 2019, the government shall submit a letter outlining all of the evidence it seeks to admit concerning the Levy investigation. ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████.

As explained earlier, evidence concerning the 1993 IAB investigation is necessary to understand Burke's hatred of Cuff (and the co-conspirators' understating of that hatred). However, the Court defers ruling on evidence concerning: (1) the entirety of Burke's IAB file, including the unsubstantiated allegations in the file; (2) Spota's representation of Burke; and (3) the 2011 anonymous letter about Burke and the response from Spota. The Government shall promptly provide to the Court electronic copies of Government Exhibits 902, 906, 915, 924, and the documents marked Burke 000638–740.

By November 10, 2019, defense counsel must identify what personal information about defendants they intend to mention in their opening statements.

8

Finally, the government shall not discuss in its opening statement the subjective "impression" of Bombace that union officials would withhold attorney's fees if he implicated others in wrongdoing. Although the Court is inclined to ultimately exclude this specific testimony, the Court defers ruling on the admissibility of such statements until the Court hears the evidence about what occurred during the meetings with union officials.

**SO ORDERED.**

Dated: November 9, 2019
      Central Islip, New York

                                         /s/  (JMA)
                                    JOAN M. AZRACK
                                    UNITED STATES DISTRICT JUDGE