

Larry H. Krantz
Marjorie E. Berman

Hugh D. Sandler
*Counsel*

Nicolas J. Rovner

*Of Counsel*
Lisa A. Cahill
Wendy Gerstmann Powell

*Writer's E-mail*
lcahill@krantzberman.com

March 25, 2020

**<u>REQUEST TO BE FILED UNDER SEAL</u>**

Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
944 Federal Plaza
Central Islip, New York 11722

> Re: USA v. Christopher McPartland, et al.
> 17-cr-0587 (JMA)

Dear Judge Azrack:

      On behalf of our client, Christopher McPartland, and his co-defendant, Thomas J. Spota, we respectfully write in response to the Court's February 26, 2020 order concerning sealed filings in this case. We set forth below the defendants' positions on which sealed filings should remain under seal in their entirety, and which portions of certain other sealed filings should remain under seal. In the latter case, and in accordance with the Court's order, we attach proposed redactions (with the material we propose to redact highlighted as set forth below).

      The Court is obviously authorized to unseal previously sealed matter, *see* Fed. R. Crim. P. 49.1(d), and we acknowledge that, at least as to certain documents, the common law and First Amendment presumption of public access must be taken into account in determining whether such documents may remain under seal. We have scrutinized the sealed filings in this case, cognizant of the competing interests and considerations involved, and have endeavored to be parsimonious in our requests for continued sealing of a limited number of the many matters that were originally addressed by one or more (or all) of the parties through sealed filings. A summary of the filings that should remain sealed, and the bases for continued sealing, is set forth below.

      1. All CJA-related applications and other submissions from Krantz & Berman or Ballard Spahr, filed *ex parte*, should remain under seal. None of these filings are "judicial documents" giving rise to a presumption of access. *See United States v. Amodeo* ("*Amodeo I*"), 44 F.3d 141, 145 (2d Cir. 1995) ("We think that the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access."); *United States v. Amodeo* ("*Amodeo II*"), 71 F.3d 1044, 1048 (2d Cir. 1995) ("[I]t must be recognized that an abundance of . . . documents generated in federal litigation actually have little or no bearing on the exercise of Article III judicial power."); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) ("[T]he public's right of access applies only to 'judicial documents.'") (citation omitted). Moreover, certain of these documents contain personal financial

747 Third Avenue   32nd Floor   New York, New York 10017-2803   Telephone 212.661.0009   Fax 212.355.5009
140 Grand Street   Suite 705   White Plains, New York 10601-4831   Telephone 914.949.3909
www.krantzberman.com

information which Mr. McPartland has a strong privacy interest in protecting. *See United States v. Martoma*, No. 12 Cr. 973 (PGG), 2013 U.S. Dist. LEXIS 182959, at *20 (S.D.N.Y. Jan. 9, 2014) (including "personal financial" information as among the matters "to which courts grant the greatest protection"). Indeed, financial affidavits filed in support of an application for representation pursuant to the Criminal Justice Act, and other filings for services under the Criminal Justice Act, are among the matters expressly designated by the Rule 49.1 Advisory Committee as ones that should not be made available to the public by any means. *See* Fed. R. Crim. P. 49.1, Committee Notes on Rules - 2007, 12th paragraph.

      2.    Defendants made a motion pretrial to limit the government's use ▇▇▇▇▇▇▇▇▇▇ grand jury testimony and, given grand jury secrecy requirements (among other considerations), filed a redacted version of that motion, as well as a redacted version of their reply memorandum, under seal. (Dkt. Nos. 99, 117.) References to that testimony in the defendants' motion papers, as well as in the government's response (Dkt. No. 108), should remain under seal. *See* Fed. R. Crim. P. 6(e)(6); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 222 (1979) ("We consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."); *United States v. Strevell*, No. 05-CR-477 (GSS), 2009 WL 577910, at *4 (N.D.N.Y. Mar. 4, 2009) (noting, in ruling on an unsealing application by the press, that "some law enforcement interests are routinely accepted as higher values and countervailing factors, including . . . the protection of grand jury secrecy") (collecting cases); *United States v. Mazzariello*, No. 13-CR-211, 2015 WL 9244602, at *5 (W.D.N.Y. Dec. 17, 2015) (ordering, in light of the fact that "grand jury transcripts are subject to a presumption of secrecy," that a motion to dismiss be filed publically but "with all references to or excerpts of grand jury testimony redacted"). As the United States Supreme Court made clear in *Douglas*, the compelling interest in preserving the secrecy of grand jury proceedings continues "even when the grand jury whose transcripts are sought has concluded its operations." *Douglas Oil Co.*, 441 U.S. at 218–19; *see* Fed. R. Crim. P. 6(e)(5), Committee Notes on Rules - 1983 (noting that Rule 6(e)(5) "make[s] it clear that certain hearings which would reveal matters which have previously occurred before a grand jury . . . must be conducted in camera . . . in order to prevent public disclosure of such secret information").

      Dkt. Nos. 94, 108, 109 and 136 with the defendants' proposed redactions are attached as Exhibit A.[1]

      3.    References to the defendants' alleged excessive drinking – none of which was substantiated, let alone admitted at trial – should remain sealed. It was the defendants who, on reviewing various 3500 material, moved under seal to preclude the government from offering evidence of their allegedly excessive alcohol consumption, including allegations that Mr. Spota was "an alcoholic father figure," a "heavy drinker" and an alcoholic who may have driven drunk. (Dkt. No. 136 at 49.) In response, the government agreed not to offer evidence of the defendants'

---

[1] Dkt. Nos. 94, 108 and 109 are sealed (*i.e.*, unredacted) versions of Dkt. Nos. 99, 116 and 117, respectively. As such, to the extent the Court so-orders any and all redactions to Dkt. Nos. 94, 108 and 109, we request that these redactions also be so-ordered as to Dkt. Nos. 99, 116 and 117, in kind.

allegedly excessive drinking. (Government's October 29, 2019 "Memorandum in Opposition to the Defendants' Motions *In Limine*" (docket number unknown) at 35–36.)

Even assuming for argument's sake that these motion papers are "judicial documents" and that the presumption of access attaches, the Court is nevertheless obliged to determine whether "higher values" (First Amendment) or "competing considerations" (common law) defeat the presumption of access here. *See United States v. Erie City*, 763 F.3d 235, 239, 241 (2d Cir. 2014); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). We submit that there are three compelling reasons why this discrete portion of the parties' motion practice should remain under seal.

*First*, none of these inflammatory accusations was tested at trial or substantiated in any way, and should remain sealed for that reason alone. *See Amodeo II*, 71 F.3d at 1048–49, 1051 (stating that "the court should consider the reliability of the information. Raw, unverified information should not be as readily disclosed as matters that are verified" and reversing unsealing order where the material "would subject" a law firm and an individual "to the public airing of accusations that are anonymous, unverified, and, to a degree, of doubtful veracity" and noting that "[u]nlimited access to every item turned up in the course of litigation would be unthinkable[; r]eputations will be impaired . . . on the basis of misleading or downright false information").

*Second*, the Second Circuit has made clear that a defendant's privacy interests can override the public's right to access, particularly as to matters that are personally embarrassing and not otherwise relevant. *See Amodeo II*, 71 F.3d at 1051 (stating that "subject matter . . . traditionally considered private rather than public," including "embarrassing conduct with no public ramifications . . . will weigh more heavily against access"). Where, as here, the (untested) allegations concern a subject matter – allegedly excessive alcohol consumption – that is traditionally considered private rather than public, disclosure of which would be highly embarrassing, and which were irrelevant to trial, the balancing of interests weigh decidedly in favor of maintaining the defendants' privacy.

*Third*, as noted above, the defendants only raised these allegations before the Court to assert their irrelevance and, in response, the government conceded that it would not seek to introduce evidence of the allegations at trial (and, in fact, no such evidence was introduced). As a result, the issue of whether such evidence should be admitted was never considered by the Court, and the Court did not exercise its discretion over these issues in any way. *See Amodeo II*, 71 F.3d at 1049 (stating that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power," where, "[g]enerally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance," and that, "[a]s one moves along the continuum, the weight of the presumption declines"). Because the parties' briefing on this issue did not "play[ a role] in determining litigants' substantive rights" and because there was no judicial action warranting "the need for public monitoring," the interest in accessing these materials is nil. *See id.* (noting that, even where a court denied a motion, the interest in access "is not as pressing" and "[d]ocuments that play no role in the performance of Article III functions . . . lie entirely beyond the presumption's reach").

The government's October 29, 2019 "Memorandum in Opposition to the Defendants' Motions *In Limine*" with the defendants' proposed redactions is attached as Exhibit B; the defendants' proposed redactions to Dkt. No. 136 are reflected in Exhibit A in text highlighted in red.



5. References to James Burke's Internal Affairs Bureau ("IAB") history and other alleged misconduct – other than the evidence admitted at trial – should remain under seal. One of the most vigorously disputed issues in this case was the degree to which the government could introduce evidence of Mr. Burke's alleged misconduct and bad character over the course of his 30-year career. Over the defendants' objections, the Court permitted the admission of certain of this evidence, including evidence of the substantiated portion of the 1993 IAB investigation involving Lowrita Rickenbacker; Pat Cuff's involvement in a 1999 IAB investigation that was closed as unsubstantiated; a 2011 anonymous letter (redacted to exclude a host of unsubstantiated allegations against Mr. Burke); and other evidence of Mr. Burke allegedly retaliating against or otherwise taking or threatening adverse actions against his perceived enemies and others. The government declined to offer into evidence other information reflected in the 3500 material, such as Mr. Burke's alleged racist and sexist comments and excessive drinking, as well as the balance of Mr. Burke's IAB file, covering 20 complaints, with only one complaint (the 1993 case) that was even partially substantiated. Nonetheless, the motion papers relating to these issues, currently under

seal, reveal details of these incendiary allegations and bad character evidence – for example, that Mr. Burke allegedly ran a prostitution ring, had a love child, was associated with drug dealers, and personally used crack cocaine. (*E.g.,* Dkt. No. 142 at 12–13, 20.)

As an initial matter, as with the above-described allegation of excessive alcohol consumption, the government never sought to admit this information into evidence and the Court therefore had no occasion to exercise its Article III authority over them. As a result, there is no public interest in monitoring the Court's handling of these matters. *See* pp. 3–4, *supra*. In addition, so long as the defendants have the possibility of a retrial, either through the pending Rule 33 motion or a successful appeal, this additional material must remain under seal. Indeed, any error in permitting information about Mr. Burke's alleged misconduct and bad character into evidence in the first place would be compounded by a fresh flow of additional, unsubstantiated but scandalous material, the inevitable media coverage of it, and the increased risk of a polluted jury pool. *See Amodeo II*, *supra* at page 3 (noting that the reliability of information sought to be sealed is a legitimate consideration); *United States v. Doe*, 63 F.3d 121, 127 (2d Cir. 1995) ("Because the right of access to criminal proceedings is not absolute, it may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial").

Further, continued sealing will protect the privacy interests of IAB complainants, who may be presumed to have expected that their complaints would be kept confidential. *See In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("The job of protecting such [privacy] interests rests heavily upon the shoulders of the trial judge, since all the parties who may be harmed by disclosure are typically not before the court"). Indeed, Suffolk County has stated on the record that an IAB report is "'maintained as a confidential report by the SCPD, pursuant to internal policy and state law.'" *Estate of Jackson v. County of Suffolk*, 2019 U.S. Dist. LEXIS 120863, at *23 (E.D.N.Y. July 19, 2019).

Accordingly, any minimal interest in accessing this material – which is scandalous in nature, but unsubstantiated and does not involve a party or witness in the case – must yield to the defendants' right to a fair trial, including an unbiased jury not prejudiced by publicity, as well as to complainants' privacy interests. *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) ("[T]he right to inspect . . . judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might [] become a vehicle for improper purposes such as using records to . . . promote scandals . . .") (internal quotations and citation omitted).

Dkt. Nos. 142, 156, 157 and 166 with the defendants' proposed redactions are attached as Exhibit D; the defendants' proposed redactions to Dkt. Nos. 136, 148, 156, 170 and the government's October 29, 2019 "Memorandum in Opposition to the Defendants' Motions *In Limine*" are reflected in Exhibits A, B and C in text highlighted in purple. In addition, the defendants do not have a copy of the filing at Dkt. No. 157-2, and therefore propose that these documents remain sealed, to the extent they do not overlap with the admitted exhibits.

6. Reference to the government's previously asserted, but later abandoned, intent to introduce evidence of a wiretap concerning former Suffolk County Police Department officer James Foley should remain under seal. Specifically, in the course of discovery in this case, the government issued a notice to the defendants of its intent to introduce the foregoing evidence pursuant to Rule 404(b). Subsequently, and prior to evidentiary briefing, the government stated it

would no longer seek to introduce this evidence, as reflected in an email chain attached as an exhibit, for an unrelated purpose, to a government brief (Dkt. No. 108 at Ex. A p. 1.) Because the government never sought to introduce this evidence at trial (indeed, the above-referenced exhibit to the government's briefing, which contains a reference to it, was submitted to the Court for an entirely different purpose), the Court was never asked to rule on the admissibility of this evidence, and disclosure of the government's abandoned intent to rely on this evidence now would unfairly prejudice the defendants in the event of a retrial, the balance of interests weighs sharply in favor of continued sealing.

The defendants' proposed redaction to Dkt. No. 108 is reflected in Exhibit A in text highlighted in blue.

*****

For all of the foregoing reasons, we respectfully request that the above-described sealed materials remain under seal.

Respectfully submitted,

/s/ LAC

Lisa A. Cahill

Enclosures

cc (w/enclosures, by email): Counsel for the parties in *U.S. v. McPartland and Spota*