**Exhibit E**

# Newsday

SPORTS FINAL

**THE LONG ISLAND NEWSPAPER**

newsday.com
$1.50 LI EDITION
Thursday
Jan. 7, 2016

 HI 43° LO 25°
MOSTLY SUNNY



# FEDS PROBE SPOTA DEPUTY

**EXCLUSIVE:** DA's top investigator under scrutiny in alleged cover-up of Burke case, sources say

A2-3 | UPDATES AT NEWSDAY.COM



## Grand Plans At Penn

Transform 'ugly' station, Cuomo urges
A4-5 | VIDEO AT NEWSDAY.COM



## Mike Piazza

Mets great makes Hall
**SPORTS**

COPYRIGHT 2016, NEWSDAY LLC, LONG ISLAND, VOL. 76, NO. 126

## POWERBALL: THE TICKET TO HALF A BILLION

**BY GARY DYMSKI**
*gary.dymski@newsday.com*

Powerball got a $50-million-plus bump, pushing the jackpot last night to more than half a billion dollars.

The winning numbers were 2, 11, 47, 62, 63, with the Powerball 17.

The rise to $524 million was yet another increase since Saturday, when no winning tickets were sold for the multistate, big-prize lottery game.

After Saturday's drawing, the prize for yesterday was first announced at $400 million.

On Tuesday, the jackpot took a bump to $450 million, and even more sales over the next 18 or so hours pushed it to $500 million just before noon yesterday. At drawing time last night, it was announced at $524 million.

Even with the jump, and a lump sum of more than $306 million, the prize isn't the largest in U.S. lottery history. The record Powerball jackpot is $590.5 million in May 2013, and the richest jackpot in U.S. history is $656 million in a March 2012 Mega Millions drawing.



**Wayne Groteke of Hauppauge with ticket in Nesconset yesterday**

NEWSDAY, THURSDAY, JANUARY 7, 2016    newsday.com

# SOURCES: FEDS



**Christopher Loeb was allegedly assaulted while in custody.**

## Burke's trial date is set: March 21

**BY ROBERT E. KESSLER**
*robert.kessler@newsday.com*

A federal judge yesterday set ex-Suffolk Police Chief James Burke's trial date for March 21 on charges he beat a prisoner who had stolen a duffel bag from his department SUV and masterminded a cover-up.

Burke, the former top uniformed cop in the county, appeared yesterday in Central Islip federal court wearing federal jail khakis and without his mustache.

He calmly answered routine questions from U.S. District Judge Leonard Wexler in a clear voice, his right leg shaking throughout much of the brief proceeding.

Burke pleaded not guilty and remains held without bail.

Asked how his client is holding up in jail, Conway said after the hearing, "It's not easy, but he's adapting."

An indictment unsealed Dec. 9, the day federal agents arrested Burke in the driveway of his St. James home, accuses



**Ex-SCPD Chief of Department James Burke, center, pleaded not guilty to misconduct charges.** *Photos,*

him of beating a handcuffed prisoner, Chistopher Loeb, and enlisting unnamed officers and others in a massive cover-up of the alleged assault.

Suffolk officers had arrested Loeb earlier in the day on Dec. 14, 2012, after, they said, he stole a duffel bag from Burke's unlocked SUV parked in front of the 29-year-department veteran's home.

Since Burke's arrest, prosecutors have handed over 3,000 pages of discovery to the defense, with more coming in the next two weeks, Eastern District Asst. U.S. Attorney Lara Treinis Gatz told Wexler yesterday.

The judge set the next hearing date for Feb. 2.

Conway said the defense is concentrating on preparing for trial and not on appealing Burke's detention because historically, it's unlikely it would be overturned.

On Dec. 11, Burke was first ordered held in jail as a danger to the community, after federal prosecutors said he still maintained considerable influence over the department. They had argued that several police union officials and others in the department, though never charged, were engaged in the alleged cover-up and continued to support Burke even while he

was under investigation. No co-conspirators were named in court papers.

Further, the prosecutors argued that fear of Burke still pervaded parts of the department.

The ex-chief's attorneys, Conway and Nancy Bartling of Mineola, disagreed with the prosecutors' arguments, saying that since Burke was no longer police chief, he would have no access to anyone in the department, including potential witnesses.

Wexler concurred with the prosecutors.

"I find the corruption of an entire department by this defendant is shocking," Wexler said

# PROBE SPOTA AIDE

## Investigate allegations of cover-up in Burke case

**BY ROBERT E. KESSLER**
robert.kessler@newsday.com

A federal grand jury is investigating Christopher McPartland, the top corruption prosecutor in the Suffolk County district attorney's office, for possible obstruction of justice charges as an outgrowth of the case against former Suffolk police chief James Burke, according to sources familiar with the investigation.

McPartland, division chief of investigations in Suffolk District Attorney Thomas Spota's office, has been sent a letter from the grand jury informing him he is a target of the investigation, the sources said. Investigators are probing if McPartland participated in meetings with Suffolk law enforcement officials and encouraged them to lie about Burke's actions in the assault of a Smithtown man, the sources said.

Burke, 51, was indicted Dec. 9 and faces trial on charges that he assaulted the Smithtown man, Christopher Loeb, 29, who stole a duffel bag from Burke's department-issued sport utility vehicle, and then engaged in a cover-up of the assault by getting law enforcement officials who had knowledge of the assault to lie about it when questioned by federal agents.

McPartland has not been charged with any crime.

McPartland's attorney, Larry Krantz of Manhattan, a former federal prosecutor, declined to comment, as did Nellin McIntosh, a spokeswoman for the U.S. attorney's office for the Eastern District. Burke's attorney, Joseph Conway of Mineola, also declined to comment.

A call to McPartland's office requesting comment was transferred by his secretary to a spokesman for Spota, who did not immediately return requests for comment.

McPartland was notified in recent days that he is a target of the investigation by the federal grand jury in the form of a hand-delivered letter from the



Suffolk County District Attorney Thomas Spota, right, with division chief Christopher McPartland.

grand jury, the sources said. Such so-called target letters are sent to people who are under investigation by a grand jury who might be asked to testify, to inform them of their rights against self-incrimination.

Burke, McPartland and Spota are longtime associates in county law enforcement. Nothing in the target letter referred to any untoward actions by Spota, the sources said.

Burke, a longtime protege of the district attorney and McPartland during the nearly 10 years he headed the DA's detective squad, before becoming chief of the police department in 2012 with Spota's strong support.

In court papers filed to a federal judge successfully arguing that Burke should be held without bail, pending trial as a danger to the community, one of the examples that Eastern District federal prosecutors Lara Treinis Gatz and James Miskiewicz used involved Burke and another person getting involved in a car accident.

Sources said the other person involved in the accident was McPartland. Neither Burke nor McPartland reported the accident, the sources said.

The papers said that in 2001, "Burke, by his own admission to others, was driving under the influence of alcohol and struck a state-owned vehicle.

"Abusing his power and authority, Burke and the other driver left the scene of the accident, avoiding prosecution for the DUI, and committing a further crime by leaving without reporting the accident," the letter continued.

Further the letter stated: "The extensive damage to the state vehicle that he struck, and his other criminal conduct, was concealed by Burke, who paid thousands of dollars for vehicle repairs to cover up his crime."

After pointing out what was in the government letter at the hearing, prosecutor Miskiewicz said of the actions of Burke, and the driver of the damaged car, unidentified in the letter: "No police intervention. No DUI. No ticket. No nothing."

Spota has hired a private lawyer to deal with any possible questioning from the grand jury, the sources said.

McPartland, a graduate of Hofstra University's law school, joined the district attorney's office in 1991.

On his LinkedIn page, McPartland says he graduated from Georgetown University before attending Hofstra. He also says in 2013 he won the Robert M. Morganthau award from the New York State District Attorneys Association and in 2015 the Thomas J. Spota Prosecutor of the Year Award from the Suffolk County Police Department.

In 2005, he was put in charge of a newly created governmental corruption bureau, combining a government corruption task force and a public integrity unit.

"Unfortunately, there's a lot of work to be done in this area," McPartland was quoted in Newsday as saying at the time. "The district attorney has put the appropriate resources in place."

updates: newsday.com/burke

**DOCUMENT**
Read federal charges against James Burke.
newsday.com/burke

at Burke's bail hearing.

Burke faces charges — depriving a person of civil rights and a conspiracy to obstruct justice — that usually call for a sentence of 5 to 5½ years under federal sentencing guidelines. But, if convicted, and depending on particular individual circumstances, a judge could sentence Burke to up to 20 years.

METRO

# Probe of Long Island porn-loving ex-police chief expanding to DA's office: sources

By Jamie Schram and Laura Italiano

January 7, 2016 | 3:08pm

The investigation is widening into Suffolk County's disgraced, porn-loving ex-police chief, James Burke — with a federal prosecutors hoping to ensnare no less than the county District Attorney, Thomas Spota, sources tell The Post.

Federal prosecutors are weighing obstruction of justice charges against the Suffolk DA's Division Chief of Investigations Christopher McPartland — and they're hoping that McPartland will lead them to Spota, sources said.

"Prosecutors would like nothing more than to charge McPartland," one law enforcement source told The Post on Thursday. "To get him to flip on Spota — the ultimate prize."

McPartland was recently notified via letter by the grand jury hearing evidence in the prob that he is a target, sources said.

McPartland is believed to have met with other county law enforcement brass and encouraged them to lie on the then-police chief's behalf, sources alleged.

Burke, 51 — forced out as chief and currently held without bail pending a March criminal trial — remains at the center of the spiraling probe.



Suffolk County Police Chief James Burke in March 2015.

Photo: VICTORALCORN.COM

Formerly the highest-ranking uniformed officer in Suffolk County, he was busted last month and accused of beating and threatening to kill a detainee.

The prisoner was a 29-year-old Smithtown junkie who had allegedly stolen a duffel bag containing porn and sex toys from Burke's police-issued SUV.

That duffle bag, which also held Burke's gun belt and magazines of ammo, could now end up bringing down not only Burke, but top brass at the Suffolk County DA's office, sources warn.

FILED UNDER    **CIVIL RIGHTS**, **CRIME**, **LONG ISLAND**, **SUFFOLK COUNTY**, **SUFFOLK COUNTY POLICE**

Recommended by



http://www.newsday.com/long-island/suffolk/thomas-spota-suffolk-da-feds-met-about-wiretap-as-probe-of-former-chief-restarts-1.11285804

Reprints

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to colleagues, clients or customers, use the Reprints tool at the top of any article or order a reprint of this article now.

# Suffolk DA, feds met about wiretap as probe of former chief restarts

January 3, 2016 By Robert E. Kessler   robert.kessler@newsday.com



Suffolk County District Attorney Thomas Spota had met with the Eastern District U.S. attorney in 2014 to play wiretaps on a Suffolk detective who he said was leaking information about county police investigations, sources said. (Credit: Newsday / John Paraskevas)

Suffolk County District Attorney Thomas Spota asked to meet with then-U.S. Attorney Loretta Lynch in the summer of 2014, saying he wanted to alert her that a Suffolk detective — whom the government hoped to use as a witness in upcoming federal gang trials — was leaking information about county police investigations, according to sources.

Sitting in Lynch's Eastern District offices in Brooklyn, Spota and an aide played recordings from a wiretap that his office had placed on then-Suffolk Det. John Oliva, the sources said. The district attorney later mentioned those tapes also picked up conversations between Oliva and federal agents about ongoing federal cases, the sources said.

Oliva and another Suffolk detective once were members of a joint federal-local anti-gang task force but had been removed in August 2012 by then-Suffolk Police Chief of Department James Burke, as part of what Suffolk officials said was an effort to concentrate gang expertise and resources at the precinct level.

But in June 2013, Burke switched gears and chose two new Suffolk officers to serve on the task force a week after the killings of three men within 48 hours in a Central Islip neighborhood. Two of those slayings, other sources said, were believed to have been gang-related.

The assignment of those two officers came up again in early December when Burke, who resigned as chief last October, was indicted by a federal grand jury on charges that he beat a prisoner and then tried to cover up the assault.

In a letter requesting that Burke be denied bail, federal prosecutors alleged that Burke in July 2014 ordered the two officers to report back to him on whom they saw meeting with federal agents or prosecutors at FBI offices in Melville or at the federal courthouse in Central Islip.

The meeting between Spota and Lynch came at a pivotal time in the often strained relationship between Suffolk law enforcement and federal investigators and was emblematic of the complicated agendas of the two agencies at that time.

The federal government was in the midst of looking for a second time into the conduct of Burke, the former head of Spota's detective squad and the man whom Spota helped lift up to chief of department, the highest ranking uniformed position.



advertisement | advertise on newsday

Burke had been a longtime protégé of Spota's going back to 1979, when he was a Smithtown teenager testifying as a prosecution witness for the then young prosecutor in the notorious murder of John Pius. Pius, 13, was killed by suffocation by having rocks stuffed down his throat.

All four of the defendants in that case initially were convicted of murder, but all convictions were overturned on appeal. Eventually three were retried and found guilty of some role in the incident.

A federal grand jury in 2013 had investigated Burke in the alleged beating of the prisoner and took no action. But in 2014, a second grand jury probe into Burke was activated — one that resulted in an indictment weeks after he resigned.

Burke is charged with beating a Smithtown man, Christopher Loeb, later convicted of stealing a duffel bag from Burke's department SUV parked in front of Burke's St. James home. The former chief is also charged with trying to cover it up and asking other officers involved to lie to federal investigators.

Burke has pleaded not guilty to all the charges.

The wiretap Spota had put on Oliva also had picked up conversations about Suffolk police investigations — including a string of armed robberies being probed by Suffolk police — with a Newsday reporter, the sources said.

Oliva did ultimately plead guilty to a misdemeanor charge of official misconduct and retired from the force.

Federal officials, in the meeting in Brooklyn, said it was more appropriate for the district attorney to prosecute local police, the sources said.

But some time after the meeting, federal prosecutors got a federal judge to issue a subpoena obtaining all records from Spota's office involving Oliva's wiretapping, the sources said. Since Oliva was a possible witness at several upcoming federal trials of gang members, there was concern that he might have compromised himself by inappropriately discussing those cases, the sources said.

In the end, those defendants pleaded guilty or there was no need for Oliva to testify, the sources said. Moreover, there was no indication that any conversations with federal officials were inappropriate.

A spokesman for Spota did not return repeated requests for comment.

Nellin McIntosh, a spokeswoman for the United States attorney's office for the Eastern District, declined to comment on the wiretap situation, as did Burke's attorney, Joseph Conway of Mineola, and Oliva's attorney, Stephen Scaring of Garden City.

Critics of Burke allege the district attorney's case against Oliva had more to do with targeting an officer perceived as being disloyal to Burke at a time when the government was investigating Burke.

Oliva was removed by Burke in August 2012. Sources said that Burke made the move because he considered Oliva disloyal to him and also did not want to share credit with the federal government.

Burke and Spota had long argued with federal officials about how joint task forces resulted in the federal government getting the lion's share of the credit for major cases in Suffolk County, the sources said, even though federal officials had repeatedly assured them that was not the case.

Among cases singled out for such friction was the investigation into the 2010 gang-related murder in Central Islip of 19-year-old Vanessa Argueta and her 2-year-old son, Diego Torres, the sources said.

In November 2012, Suffolk also pulled two detectives from working with the Bureau of Alcohol, Tobacco, Firearms and Explosives. A detective who had been working with the U.S. Immigration and Customs Enforcement was transferred back to Suffolk. Police officials said at the time that those detectives were needed locally.

Federal investigators alleged last month that Burke told the two detectives that he replaced on the gang task force to report back to him about who was talking to authorities about his case.

"SCPD officers assigned to a joint state-federal task force on Long Island were ordered by Burke to report back to him in the event they observed certain witnesses meeting with federal agents or prosecutors at the FBI offices or the United States Courthouse in Central Islip," Eastern District federal prosecutors James Miskiewicz and Lara Treinis Gatz wrote in the letter that resulted in a federal judge's decision to jail Burke, pending trial, saying that he was a danger to the community.

Oliva has denied that he had leaked information about the criminal investigation into a string of armed robberies, saying that the reporter had all the information when he was contacted, according to sources familiar with his case.

He did acknowledge that he had accessed departmental computers to pass on the numbers of case files to Newsday, the sources said. The case files, Oliva believed, showed the department downplayed a rise in shootings in the Wyandanch, Central Islip, Brentwood areas, after the gang task force had been weakened by the detectives' removal, according to sources.

Oliva was charged with fourth-degree grand larceny, computer trespass and official misconduct. In September 2014, he pleaded guilty to a single misdemeanor and received a conditional discharge.

Retired Det. Sgt. Robert Doyle, the former head of the Major Crime squad and the person who recommended Oliva for inclusion on the task force, said in a recent interview that if the department already knew Oliva had accessed its computers that would have been sufficient to charge him with a crime. In that case, he said, there was no reason to install the wiretap and keep it running for weeks, unless it was to monitor whether Oliva was informing on Burke, or others in Suffolk law enforcement.

"In 37 years, in every investigative command, I never knew of a wiretap investigation into leaks. This was to expose the people who were talking negatively about him [Burke]," Doyle said.

< back to article

**FALL PROTECTION EQUIPMENT** 

Online Discount Outlet. Huge selection of Fall Arrest Gear!

**N.Y. / Region**

SUBSCRIBE | LOG IN

# Ex-Suffolk County Police Chief's Arrest Comes Amid a Broader Federal Inquiry



James Burke, center, the former Suffolk County police chief, was arrested last month on charges of civil rights violations and obstructing an investigation.
NEWSDAY

By JOSEPH GOLDSTEIN
JANUARY 3, 2016

Even today the crime is remembered, with a shudder, across Long Island.

Hidden in the woods in Smithtown, N.Y., a boy's battered body was found with six rocks jammed down his throat.

The prosecution's key witnesses included a teenager named James Burke, whose testimony against his neighborhood friends helped send them to prison.

The murder happened in 1979, and the case began Mr. Burke's involvement with law enforcement. He grew up to become a police officer and, later, the top investigator in the Suffolk County district attorney's office. Eventually, he was named chief of the county police, a department of 2,300 officers, where he cut a swaggering, backslapping figure: a gregarious lawman with a bushy mustache that seemed in constant danger from the cigars he smoked.



Mr. Burke's home in Smithtown, N.Y., the suburban community on Long Island where he grew up.
RICHARD PERRY / THE NEW YORK TIMES

The striking back story of Mr. Burke's rise is matched only by the narrative of his sudden and tawdry fall. Since last month, he has been held in a federal jail on charges of violating a thief's civil rights after a duffel bag — containing pornography, sex toys and cigars — was stolen from Mr. Burke's sport utility vehicle in 2012. When the thief was arrested shortly after the break-in, Mr. Burke, 51, barged in on the interrogation and punched him, then persuaded his officers to cover for him by lying about the episode, a federal indictment says.

The case is explosive, not just for its tabloid-ready details, but because it comes at the same time as a broader federal investigation of the Suffolk County political machine and its hold over the local criminal justice system.

The investigation is casting a spotlight on an unusual alliance that, strangely enough, dates back to the 1979 murder case of the boy with rocks in his throat. That trial, in addition to starting Mr. Burke toward a career in law enforcement, burnished the reputation of the prosecutor, Thomas J. Spota, a Democrat who has been Suffolk County's district attorney since 2002.

Mr. Spota kept in touch with Mr. Burke, and after he was elected district attorney, hired him as his top investigator and eventually helped him become the county police chief in 2012. The scope of the federal investigation could mean Mr. Spota's long alliance with Mr. Burke will come back to haunt him.



Thomas J. Spota, the Suffolk County district attorney, hired Mr. Burke as his top investigator and, eventually, helped him become county police chief in 2012.
KATHY KMONICEK / ASSOCIATED PRESS

## Wielding Outsize Power

For federal investigators, an outline is beginning to emerge of a police department and a district attorney's office that have worked together to consolidate the power of Mr. Burke and Mr. Spota, and have relied on questionable surveillance methods to keep tabs on enemies real and imagined.

No charges have been filed against Mr. Spota or his staff, and the Justice Department has not made public the nature of the investigation or whether it has found evidence of any crime.

Interviews with people who have been questioned by Federal Bureau of Investigation agents, or who are cooperating with their inquiry, suggest it is turning into an examination of the police and prosecutor's outsize, unchecked power in their domain, the eastern half of Long Island, where glaring poverty and fantastic riches exist side by side. Federal investigators appear to be pursuing leads that broadly explore questions of influence and corruption in the criminal justice system. One avenue of inquiry has led agents to seek evidence about whether judgeships are for sale in Suffolk County, according to two people with knowledge of the inquiries.



An undated photo of Christopher Loeb, who stole a duffel bag from Mr. Burke's sport utility vehicle in 2012 and was arrested shortly after. A federal indictment says Mr. Burke, who was police chief at the time, punched Mr. Loeb during an interrogation, then tried to cover up the episode.
SUFFOLK COUNTY SHERIFF DEPARTMENT

The United States attorney's office in Brooklyn, which is overseeing the investigation, has also taken a dim view of some of the surveillance practices employed by the Suffolk County district attorney's office.

One questionable episode involved a Suffolk County wiretap in which the district attorney's office listened in on phone calls involving at least a half-dozen F.B.I. agents and assistant United States attorneys, according to three people who have been told about the event. In another episode, a contractor for the district

attorney's office installed a GPS device on a deputy police commissioner's car at Mr. Burke's request, in order "to dig up blackmail dirt on her," a federal prosecutor, James Miskiewicz, said last month in a federal court hearing shortly after Mr. Burke was arrested.

Mr. Spota has denied any knowledge of the episode involving the tracking device. Mr. Miskiewicz called the event "something out of the K.G.B."

Such comparisons are common in Suffolk County, where officers wield not only police power, but also a degree of political power that would feel foreign in the police departments of most big cities. In Suffolk County, policing is not a middle-class job — officers can make $125,000 in base pay, about $50,000 more than their counterparts in New York City. That figure does not include overtime pay, which can be substantial, or the extra money officers receive for each year on the job. Detectives and sergeants have been known to earn more than $200,000 a year. The police unions on Long Island are so wealthy they have formed a "super PAC" to flood local elections with campaign donations.

Central to the political order is the district attorney, Mr. Spota. In the past year, Justice Department officials have met with county employees, politicians and former police officers who have said that Suffolk County investigations and prosecutions — as well as decisions not to prosecute — are often swayed by political considerations, according to interviews with more than five people who have spoken to F.B.I. agents or prosecutors.

In one 2011 incident, the county's top elected official, Steve Levy, announced he would not seek re-election as part of a deal with Mr. Spota to resolve a campaign finance investigation. The details of any possible wrongdoing by Mr. Levy remain a mystery.

That cleared the stage for Mr. Burke's rise. When Mr. Levy's successor as Suffolk County executive, Steve Bellone, was elected, Mr. Spota recommended Mr. Burke, then working for the district attorney, for the police chief's job, county officials said. Although Mr. Burke would technically be subordinate to a civilian police commissioner, it was clear who was in charge.

"Any person that I would select as commissioner would love Jim Burke," Mr. Bellone, a Democrat, told Newsday four years ago as he was conducting a search for a commissioner. "And if they don't, then they wouldn't match up with the kind of commissioner that I want."

**No Friend of the F.B.I.**

Mr. Burke was a curious choice to run the department. He had a reckless streak. Twenty years ago, as a sergeant, he had had a sexual relationship with a prostitute, according to an internal affairs investigation that accused Mr. Burke of accidentally leaving his handgun with the woman, Newsday reported.

Such an episode would have been a career-ender for most officers. But Mr. Burke — an aggressive young officer whom other officers, part admiringly and part mockingly, called Starsky after a member of the crime-fighting team in a 1970s television show — survived unscathed. Not much later, Mr. Burke was named his precinct's officer of the year.

As police chief, Mr. Burke had a tendency to divide the world into good guys and enemies, with good-guy status going only to those in his circle.

"To me, there is no better barometer of a person's integrity than to wind up at the top of Burke's enemy list," a former Suffolk County police commander, Patrick Cuff, said in a recent telephone interview. "I know I'm somewhere on it."

When Mr. Burke took charge of the Suffolk County Police Department, he demoted Mr. Cuff to captain from assistant chief, a move apparently driven by ancient animosity between the two men. When Mr. Cuff later retired, Mr. Burke texted several subordinates with an unusual request.

"We need a friendly to go to Cuffs retirement party to take accurate attendance," Mr. Burke wrote in a message obtained by federal prosecutors. "Whoever goes has to be able to recognize faces. Enemies, bosses active and retired and politicians."

High on the enemies list, apparently, was the F.B.I. Mr. Burke pulled most of his detectives off federal task forces in 2012, an order that came through while one of those being recalled was in the middle of taking a murder confession. Back with their old squads, the detectives found themselves out of favor. One, a respected gang investigator, John Oliva, came under suspicion of leaking information to a Newsday reporter. In an extreme step, the district attorney's office began to wiretap Detective Oliva, two former law enforcement officials said.

The wiretap intercepted countless conversations in which the detective spoke with F.B.I. agents and prosecutors about some of the investigations he had been pulled from. Required to provide notification, Mr. Spota's top prosecutors went to the United States attorney in Brooklyn, Loretta E. Lynch, who is now the United States attorney general, to explain that they had overheard Justice Department officials talking.

The conversation went poorly, according to three people who have heard about it from Justice Department officials. These people said the county prosecutors had been unapologetic, even as it emerged that they had listened in on conversations that had little to do with the leak investigation. Moreover, the prosecutors appeared to have failed to shut down the wiretap during conversations that had nothing to do with any suspected criminal activity, as is typically required.

Mr. Spota, in a statement sent by email, said his office complied with the relevant rules and restrictions on wiretaps at all times.

But one person familiar with the episode said Ms. Lynch was "not happy that these Suffolk prosecutors are listening into federal agents talking about federal cases." This person said the episode had raised suspicions about whether the wiretap was mainly being used to learn what detectives were saying privately about Mr. Burke and to discover whether federal agents were having any success building a case against him.

### Interrogation Rampage

If anything, this person said, the meeting with state prosecutors lent a new urgency to an existing, but faltering, federal investigation into Mr. Burke. That inquiry, opened in April 2013, had examined whether Mr. Burke violated the civil rights of Christopher Loeb, a heroin addict who financed his $100-a-day habit by breaking into cars.

It was Mr. Loeb's bad luck — and, ultimately, Mr. Burke's even worse luck — that Mr. Loeb spotted a black duffel bag in a GMC Yukon that belonged to Mr. Burke.

The duffel bag contained cigars and the chief's gun belt, as well as pornographic DVDs and sex toys, federal prosecutors said.

Mr. Loeb was arrested, brought to the precinct and shackled to the floor of an interrogation room.

When he asked for a lawyer, one detective told him, "This isn't 'Law & Order'; you're not going to get an attorney," Mr. Loeb's testimony in a 2013 state court hearing showed.

At some point, the chief interrupted the interrogation.

"Chief Burke grabbed me by my cheeks and hit me on the top of my head," Mr. Loeb, who was sentenced to prison for up to three years, testified. Mr. Loeb responded by calling Mr. Burke "a pervert" and berating him for the pornography,

federal prosecutors said, adding that Mr. Burke "went out of control, screaming and cursing at Loeb and assaulting him until a detective finally said, 'Boss, that's enough, that's enough.'"

Months later, Newsday was reporting on the episode and F.B.I. agents were investigating it. Mr. Burke began pressing officers to lie about what had occurred, federal prosecutors claim.

In federal court last month, prosecutors claimed to have a strong hand, saying they had secured testimony from 10 police officers against Mr. Burke. In an unexpected development, a judge agreed with prosecutors that Mr. Burke, despite retiring in the fall, posed a danger to the community and ordered that he be denied bail.

The prosecution seemed to be trying to isolate Mr. Burke, a tactic often intended to pressure defendants into cooperating with a federal investigation.

Mr. Burke has entered a not guilty plea, and his lawyer, Joseph R. Conway, said Mr. Burke was not cooperating with the Justice Department.

Still, the possibility that he might try to strike a deal is a main topic of speculation among Suffolk County politicians these days. And many remember how Mr. Burke got his start in public life: as a witness in a sensational case.

***Correction:*** *January 4, 2016*
*Because of an editing error, an earlier version of a picture caption with this article misidentified the location of Smithtown, N.Y., where James Burke lives. It is on the North Shore of Long Island, not on the East End.*

***Correction:*** *January 6, 2016*
*Because of an editing error, an article on Monday about James Burke, the former police chief of Suffolk County, N.Y., who is being held in jail on charges of violating a thief's civil rights, referred incompletely in some copies to the area that Mr. Burke oversaw as police chief. It was all of Suffolk County, not just the East End.*

Al Baker contributed reporting.

**More In New York »**

### New York to Appoint Civilian to Monitor Police's Counterterrorism Activity





http://www.newsday.com/long-island/crime/sources-3-in-da-
thomas-spota-s-office-subpoenaed-in-john-oliva-
wiretap-1.11441977

Reprints

This copy is for your personal, non-commercial use only. To order presentation-ready copies
for distribution to colleagues, clients or customers, use the Reprints tool at the top of any
article or order a reprint of this article now.

# Sources: 3 in DA Thomas Spota's office subpoenaed in John Oliva wiretap

February 7, 2016 By Robert E. Kessler   robert.kessler@newsday.com



John Oliva, then a Suffolk police detective, is shown in this file photo. (Credit: LI / Queens Life)

At least three investigators with the Suffolk district attorney's office have been subpoenaed as a federal investigation has expanded into whether county investigators and prosecutors engaged in federal civil rights violations by illegally using a wiretap, sources say.

The subpoenas were issued by a federal grand jury in Central Islip that has been probing the use of a wiretap as a new part of its overall investigation into the possible illegal conduct of Suffolk law enforcement officials, the sources said.

The wiretap was placed in 2014 on the phone of then-Suffolk Det. John Oliva, with the approval of a state Supreme Court justice, because he was suspected of leaking information on a robbery case, the sources said.

But the jury is probing whether the wiretap requested by the office of District Attorney Thomas Spota was actually aimed at obtaining details about the people Oliva was talking to and what types of information he was providing. Oliva was known to be close to federal agents and prosecutors, who had been investigating then-Suffolk Chief of Department James Burke, the sources said.

It can be a civil rights violation if a wiretap is used to obtain information that goes beyond the scope of what the judge approved. In addition, investigators are not supposed to record the parts of conversations that did not pertain to the wiretap's original purpose.

The grand jury indicted Burke in December for allegedly beating a drug dealer who stole a duffel bag from the chief's department SUV and then obstructing justice by masterminding a cover-up of the attack.

advertisement | advertise on newsday

Burke, who is being held without bond, has pleaded not guilty. Federal prosecutors recently revealed that they have offered a plea deal to him. Joseph Conway of Mineola, Burke's attorney, said they were examining the offer but anticipated going to trial.

Newsday reported last month that the grand jury also has sent a letter to Christopher McPartland, the head of the district attorney's governmental corruption and public integrity unit, informing him that he is a target of the grand jury investigation. Sources have said that the grand jury was looking into whether McPartland was involved in obstruction of justice as an outgrowth of the Burke case.

A target letter is an indication that the grand jury suspects the recipient might be involved in wrongdoing and is designed to warn the person against self-incrimination by testifying. But the letter does not mean the grand jury is about to charge the person with a crime.

## Pulled over officer's car

The three investigators who were subpoenaed report to McPartland and were among those in the district attorney's office involved in monitoring the wiretap on Oliva's phone. Two of those investigators eventually pulled Oliva's car over in 2014, confiscated his cellphone and unsuccessfully attempted to get him to accompany them to a confidential site where the district attorney's office conducts sensitive investigations, the sources said.

Anthony La Pinta of Hauppauge, an attorney for Thomas Iacopelli, one of the two district attorney's investigators involved in the Oliva car stop, declined to comment. Kevin Snover of North Babylon, an attorney for Paul Caroleo, the other investigator involved in both the wiretap monitoring and the Oliva stop, did not return calls for comment.

David Besso of Bay Shore, the attorney for the third subpoenaed investigator, declined to comment. The name of the third investigator could not immediately be confirmed.

Robert Clifford, a spokesman for the Suffolk district attorney's office, and Nellin McIntosh, a spokeswoman for the Office of the U.S. Attorney for the Eastern District, both declined to comment.

Spota has not been accused of any wrongdoing.

In successfully seeking to have Burke held without bail as a danger to the community, federal prosecutors alleged that Burke and an unnamed person failed to report an accident in which a drunken Burke smashed into a state car driven by the unnamed person. Sources have identified the other person as McPartland.

McPartland's attorney, former federal prosecutor Lawrence Krantz of Manhattan, did not return a request for comment on the subpoenas to investigators. He has previously declined to comment on his client's receiving a target letter.

The wiretap investigation ran for 17 weeks, the sources said. The length of time the wiretap went on and when it occurred raised the suspicion of federal investigators, the sources said.

It is unusual for law enforcement officials to devote that much staff and time to a single robbery, the sources noted, particularly when Suffolk was facing drug and gang problems, as well as homicides, and all the unsolved cases of the bodies found at Gilgo Beach.

Oliva was removed, along with another Suffolk detective, by Burke in 2012 from the FBI's joint Long Island Gang Task Force in an action that caused something of a firestorm. Burke said at the time that the reason was to concentrate county anti-gang efforts on the local level, but critics asserted it was because Burke and Spota believed federal officials were hogging credit for gang cases.

## All kinds of conversations

The wiretap picked up all kinds of conversations Oliva had, both professional and personal, including ones with a Newsday reporter, and many with federal prosecutors and FBI agents, whom Oliva had worked with on the task force, the sources said. Some of the conversations involved gossip about Burke's alleged actions, they said.

Retired Suffolk Det. Sgt. Robert Doyle, the former head of the police's Major Crime Bureau and an Oliva supporter, has said the district attorney's wiretap was unusual.

"In 37 years in every investigative command, I never knew of a wiretap investigation into leaks," Doyle said. "This was to expose the people who were talking negative about him [Burke]."

Eventually, Oliva acknowledged he had provided information to a Newsday reporter. Not about the robbery case — in which arrests had been made weeks before the wiretap even began — but information that he believed showed the department was downplaying gang violence after he had been removed from the task force, the sources said.

Oliva resigned from the police force in September 2014, pleaded guilty to the misdemeanor of official misconduct and received a conditional discharge.

"I am deeply troubled and saddened by the conduct of the defendant in this case, who acted without regard for the consequences of his behavior on the safety of his fellow officers, and on serious, pending criminal investigations," Spota said on the day of Oliva's plea.

Conviction for illegal use of a wiretap could amount to a federal civil rights violation. Criminal violation of civil rights can carry sentences of up to 10 years in prison; illegal wiretapping up to 5 years.

< back to article

**The New York Times**   http://nyti.ms/23Tk6wP

N.Y. / REGION

# Scrutiny for Suffolk County's District Attorney Amid a U.S. Inquiry

**By JOSEPH GOLDSTEIN**   FEB. 8, 2016

There are few elected government officials alive with the ignoble distinction of having violated the 13th Amendment.

But Thomas J. Spota, the district attorney for Suffolk County, N.Y., was once found to have offended the constitutional prohibition against slavery by prosecuting a group of nurses for quitting their jobs at a nursing home. An appeals court ordered Mr. Spota to drop the charges, which interfered with "the nurses' constitutional right to be free from involuntary service."

If the case seems a bizarre bit of overreaching, it is not the only one that has raised questions about how Mr. Spota, a Democrat, has wielded prosecutorial power since he took over as the chief prosecutor on eastern Long Island in 2002. Lately, he has found his office faced with accusations of employing strong-arm tactics, using questionable surveillance methods and making prosecutorial decisions colored by local political considerations.

Over the past two months, Mr. Spota's office has come under the scrutiny of the Justice Department. It is investigating the conduct of two of his protégés — the county's former police chief and the district attorney's top anticorruption prosecutor — and any role they may have had in what the department has described as a conspiracy to obstruct justice, three officials familiar with the investigation said.

The federal investigation began in 2013 with a narrow focus: to determine whether the police chief, James Burke, had roughed up a thief for stealing a duffel bag full of pornographic DVDs, sex toys and cigars that belonged to the chief.

In December, **Mr. Burke was arrested on federal charges** related to that assault, as well as what federal authorities describe as a conspiracy to cover it up by persuading detectives and other officers to lie about it. He has pleaded not guilty, and is being held without bail.

The federal investigation has since widened to include Mr. Spota's office, where Mr. Burke worked for a decade as a top investigator before being named the county's police chief. The inquiry appears to be examining whether anyone in the district attorney's office engaged in misconduct to protect Mr. Burke's career, according to four Suffolk County officials, including two who have talked with federal investigators and others who are aware of a number of recent subpoenas.

Mr. Spota declined repeated requests for an interview.

Investigators working for the district attorney's office have received federal grand jury subpoenas in recent weeks, according to four officials who, like others, spoke on the condition of anonymity to discuss matters under review by a federal grand jury.

At least two people working for the district attorney's office — Mr. Spota's top anticorruption prosecutor and a contractor who specialized in electronic surveillance — have retained criminal defense lawyers.

## An Unusual Circumstance

While police departments are often the subject of federal inquiries, it is rare for the Justice Department to investigate state district attorney's offices for misconduct, as is now happening in Suffolk County.

Already the inquiry appears to be roiling the criminal justice system in a way not seen since a quarter-century ago, when a state commission accused the police of careless homicide investigations, brutal interrogations, forced confessions and illegal

wiretapping, and said the district attorney's office condoned much of the misconduct.

A number of defense lawyers, and a few public officials, say that the sense of impunity was never quite stamped out.

To this day, Suffolk remains a place where public officials, particularly those on the wrong side of the political machine, have been known to wonder whether the district attorney's office is surveilling them.

Rob Trotta, a former Suffolk police detective who is now a member of the County Legislature, said that whenever he got an oil change, he used to "get down there and look for tracking devices" under his car.

If that sounds excessive, the revelations of the past few months suggest otherwise.

In federal court last month, an assistant United States attorney described how, in an attempt "to dig up blackmail dirt," Mr. Burke, then the police chief, had ordered a contractor for the district attorney's office to place a tracking device on a deputy police commissioner's car.

"My paranoia was correct: They were doing it," Mr. Trotta, a Republican, said.

For Mr. Spota, 74, the unfolding investigation is striking because until now, his tenure has been marked by little public controversy.

Early on, he drew accolades for rooting out corrupt officials in local towns, as well as spearheading an inquiry that examined how Roman Catholic Church officials on Long Island had protected pedophile priests. That inquiry, in 2002 and 2003, resulted in one of the most comprehensive accounts of such abuse to have appeared at the time.

In his last two races, in 2009 and 2013, Mr. Spota was unopposed in the general election, having received the endorsement or nomination of the Democratic, Republican and Conservative Parties.

Still, over the years, a number of his office's decisions have prompted questions about his judgment.

The indictment of the nurses that was found to have violated the 13th Amendment came after an investigation requested by a politically connected Long Island lawyer who represented the nursing home, according to depositions and affidavits. The nurses, in a lawsuit that is pending, claim that the nursing home had sought a criminal investigation in order to coerce other nurses into remaining at their jobs, rather than quit, as many were contemplating.

After the discovery in 2011 that a serial killer was stalking prostitutes and dumping their bodies on a desolate stretch called Gilgo Beach, Mr. Spota appears to have limited the involvement of agents from the Federal Bureau of Investigation in the case. By late 2012, police detectives invited agents from the bureau's Behavioral Analysis Unit to review the murders.

"The Suffolk County district attorney's office was notified of this, and at that time, objected to this analysis being conducted," a county detective wrote in a December 2012 police memorandum obtained by The New York Times. As a result, the meeting with the F.B.I. profilers was canceled, according to the memo.

The spokesman for the district attorney, Robert Clifford, said that before December 2012, the F.B.I.'s Behavioral Analysis Unit had previously provided their "perspective on the case" and that "a further request that they return was deemed to be duplicative of the work already completed, and therefore unnecessary."

But the district attorney's opposition to that meeting appeared to have lasting consequences: The F.B.I.'s analysts would have little involvement in the case for the next three years, until a new Suffolk police commissioner sought their help. The case remains unsolved.

## A Long Relationship

Mr. Spota himself has not been accused of any wrongdoing in the current Justice Department inquiry. But it has cut close to him, given his close relationship with Mr. Burke.

Their association goes back more than three decades, to when Mr. Spota was an assistant district attorney and Mr. Burke was his teenage witness in a blockbuster murder trial. After Mr. Burke became a police officer, Mr. Spota brought him to the district attorney's office and gave him the job of chief investigator. And it was Mr. Spota who again helped him, in 2012, to secure the job as chief.

Within two years of taking the post, Mr. Burke was facing scrutiny, from federal investigators looking into whether he had beaten up the thief, and from Newsday, which reported how as a young officer Mr. Burke had been investigated for his relationship with a drug-using prostitute.

Recently, federal investigators began to examine the unusual circumstances surrounding the district attorney's wiretap of a detective's phone in 2014, according to two Suffolk officials who are familiar with several recently issued subpoenas. While Mr. Spota has said the investigation was an urgent action in a leak case, people familiar with the wiretap described numerous problems with the way it was conducted and called it part of an effort to keep track of who was saying damaging things about Mr. Burke.

"They let it run wild," one of the people said, noting that prosecutors and investigators largely ignored rules that require them to stop eavesdropping during calls deemed irrelevant to the investigation.

The detective whose calls were being intercepted, John Oliva, was in contact with the Newsday reporter who wrote about Mr. Burke and the prostitute, as well as several F.B.I. agents, and the discussions sometimes revolved around Mr. Burke, several people who have spoken with Mr. Oliva said.

Within the district attorney's office, Mr. Oliva's phone activity was perceived as being something of a clearinghouse for potentially damaging information about Mr. Burke, raising the question of whether one purpose of the surveillance was to stay abreast of threats to Mr. Burke's reputation and career, the person familiar with the wiretap said.

That wiretap fell under the purview of Mr. Spota's top anticorruption prosecutor, Christopher McPartland, who is a close friend of Mr. Burke's.

"Spota's dearest bureau, to him, is McPartland's bureau," said Leonard Lato, a former prosecutor in Mr. Spota's office as well as in the United States attorney's office. "It's a safe bet that whatever McPartland knows, Spota knows."

The federal investigation is casting a spotlight on Mr. McPartland and his aggressive, even unusual methods, as an anticorruption prosecutor.

Mr. McPartland often runs investigations from an off-site location along a strip of office buildings in Hauppauge. County employees have been brought there for questioning on his orders, at times after being intercepted on the way home.

Mr. McPartland declined to comment, as did his lawyer. A spokesman for the district attorney's office, Robert Clifford, wrote, in response to several questions, that "the district attorney's office and Mr. Spota are confident that Mr. McPartland has discharged his public duties in an ethical and proper manner."

"This office has consistently conducted corruption investigations in a cautious manner, mindful of the impact of false allegations upon the reputation of public officials," Mr. Clifford wrote.

## 'It Seemed Bizarre'

Still, some public officials say their interactions with Mr. McPartland had a menacing air.

In a recent interview, the county executive, Steve Bellone, said, "My first sense of problems in the D.A.'s office came before I was even elected, when McPartland visited my home to give me 'advice' on how things work in the county.

"It seemed bizarre to me," Mr. Bellone, a Democrat, added. "He talked about how government employees come and talk to him and tell him things that are going on, so you should be careful how you act. I took it for what it was, which was a veiled threat."

In interviews, three people, each independently, said the district attorney's office sought to leverage information about people's extramarital affairs.

One defendant, then a county official, who insisted on anonymity, said that during questioning at the district attorney's office he was taken aback to hear one of the prosecutors mention the name of a woman he had been involved with. "When they bring me in, they mention her name," the person said, in what he concluded was an effort to pressure him to quickly cooperate or plead guilty.

*Follow The New York Times's Metro coverage on Facebook and Twitter, and sign up for the New York Today newsletter.*

A version of this article appears in print on February 9, 2016, on page A18 of the New York edition with the headline: Suffolk District Attorney Faces Scrutiny Amid a U.S. Inquiry.

© 2016 The New York Times Company



10.25.2017 **FEATURED STORY**

# County DA Thomas Spota, aide indicted by federal grand jury

By Tim Gannon

The Suff≡Times.



  

# The Suff☰Times.



Outgoing Suffolk County District Attorney Thomas Spota and top aide Christopher McPartland were both indicted Wednesday on federal charges at U.S. Eastern District Court in Central Islip.

The indictment, before District Judge Leonard Wexler, alleges that Mr. Spota and Mr. McPartland— the chief of investigations and chief of the DA's Government Corruption Bureau — sought to cover up the assault of a handcuffed suspect by former Suffolk County Police Chief James Burke, who has since been sentenced to prison himself.

Mr. Spota, 76, of Mount Sinai, had been Suffolk DA since 2001 but announced earlier this year he would not seek re-election.

Mr. McPartland, 51, is from Northport.

Both men pleaded not guilty and were released on $500,000 bond, secured by their homes, according to a spokesman for the U.S. Attorney's Office.

"While FBI agents were working to restore justice in a civil rights investigation, District Attorney Thomas Spota and Assistant District Attorney Christopher McPartland were conspiring to

conceal."

The four-count indictment charges the two men with:

· Conspiracy to tamper with witnesses and obstruct an official proceeding.

· Witness tampering and obstruction of an official proceeding.

· Obstruction of justice; and

· Accessory after the fact to the deprivation of civil rights.

"Prosecutors swear oaths to pursue justice and enforce the law," said acting United States Attorney Bridget Rohde in a statement. "Instead of upholding their oaths, these defendants allegedly abused the power of the Suffolk County District Attorney's Office, attempted to cover up the assault of an in-custody defendant, and attempted to thwart a federal grand jury investigation."

A spokesman for the district attorney did not respond to a request for comment. Mr. Spota did not respond to reporters' questions of whether he would resign when he left the courtroom.

The alleged assault took place Dec. 14, 2012, according to Ms. Rohde, when an unnamed suspect was arrested on suspicion of burglarizing motor vehicles, including a vehicle owned by Mr. Burke.

The suspect, identified only as "John Doe" in the indictment, but identified as Christopher Loeb by Newsday, was transported to the county police Fourth Precinct, where he was taken to an interview room and handcuffed to a permanent fixture inside of the room, according to the indictment.

Later that day, Mr. Burke and other unnamed officers "entered the interview room and assaulted John Doe," the indictment states.

Mr. Loeb later confessed to the burglary, but alleged that his confession was involuntary because he was assaulted by Mr. Burke and a special prosecutor, according to the indictment.

# The Suff☰Times.

That indictment alleges that Mr. Spota, Mr. McPartland and others, including Mr. Burke, had numerous meetings and telephone conversations where they discussed the assault and "in those meetings and during those telephone conversations, agreed to conceal Burke's role in the assault, and to obstruct and attempt to obstruct the Federal Investigation to protect Burke," the indictment states.

The three men are accused of "using intimidation, threats and corrupt persuasion to pressure one or more witnesses, including co-conspirators, not to cooperate with the federal investigation, to provide false information, including false testimony under oath, and to withhold relevant information from" federal prosecutors, the indictment states.

Mr. Burke pleaded guilty to "a deprivation of John Doe's civil rights and conspiracy to obstruct justice" on Feb. 26, 2016, according to a release from Ms. Rohde.

Both Mr. Spota and Mr. McPartland were required to turn in their passports. Their next court date is Dec. 1.

In May 2016, County Executive Steve Bellone, citing a "culture of corruption," demanded Mr. Spota resign. On Wednesday, he issued the following statement: "As I have said many times before, Tom Spota must resign. The person holding the awesome power to decide whether people go to jail or not cannot effectively serve under federal indictment for corruption."

On Election Day, voters will decide between Republican candidate Ray Perini and Democratic nominee Tim Sini, the current Suffolk County Police Commissioner, as the next district attorney.

*Photo caption: Thomas Spota pictured in 2015. (file photo)*

tgannon@timesreview.com

Spota Indictment by Timesreview on Scribd

**LONG ISLAND** / **CRIME**

# Suffolk DA Thomas Spota, top aide indicted in cover-up



Longtime Suffolk County District Attorney Thomas Spota and one of his chief aides on Wednesday, Oct. 25, 2017, were indicted on federal charges that they were involved in a cover-up of former Suffolk Police Chief James Burke's assault of a suspect in 2012. Spota, a Democrat who was elected in 2001 as a corruption fighter, and Christopher McPartland, the head of the district attorney's political corruption unit, pleaded not guilty at arraignment in Central Islip federal court. Each was released on a $500,000 bond. Credit: News 12 Long Island

**By Robert E. Kessler**

robert.kessler@newsday.com

*Updated October 25, 2017 10:57 PM*

Longtime Suffolk County District Attorney Thomas Spota and one of his chief aides have been indicted on federal charges that they were involved in a cover-up of former Suffolk Police Chief James Burke's assault of a suspect in 2012.

Spota, a Democrat, the top law enforcement officer in the county who was first elected as a corruption fighter, and his aide, Christopher McPartland, who runs the political corruption unit, pleaded not guilty Wednesday at a brief arraignment in U.S. District Court in Central Islip.

Both were released on $500,000 bond. They showed no emotion before the packed courtroom.

Spota, 76, of Mount Sinai, and McPartland, 51, of Northport, along with Burke and other members of the Suffolk County Police Department "had numerous meetings and telephone conversations wherein they discussed the assault," the victim's allegations against Burke, and the federal investigation, prosecutors said in a letter to the judge asking for strict bail conditions.

They "agreed to conceal Burke's role in the assault and to obstruct and attempt to obstruct the federal investigation in order to protect Burke," prosecutors said in the letter.

Federal prosecutors said the two men were accused of "using intimidation threats and corrupt persuasion to pressure . . . witnesses, including co-conspirators not to cooperate with the federal investigation, to provide false information, including false testimony under oath, and to withhold relevant information from" federal investigators.

## Sign up for The Classroom newsletter.

The pandemic has changed education on Long Island. Find out how.

| Email address | **Sign up** |

By clicking Sign up, you agree to our privacy policy.

Acting U.S. Attorney Bridget M. Rohde said in the letter that Spota and McPartland have "demonstrated their utter contempt for the laws they were charged with upholding."

The "nature and circumstances of the crimes charged are shocking and appalling as the defendants . . . are alleged to have grossly and outrageously violated their positions of trust and operated in a manner more akin to criminal enterprise than a district attorney's office," the letter said.

"Specifically, over a period of more than four years, the defendants attempted to cover up the assault of a handcuffed prisoner by Burke by obstructing the federal grand jury investigation and, when they learned that the scope of the investigation expanded into an investigation of the obstructive conduct, the defendants then attempted to obstruct the obstruction investigation," Rohde wrote.

U.S. District Court Judge Leonard Wexler, at their arraignment, ordered Spota and McPartland not to have contact with each other without their lawyers present in matters of the indictment, and not to contact any witnesses.

The judge said a third party, agreed to by prosecutors and defense attorneys, has to be involved in any joint regular work at the district attorney's office by Spota and McPartland.

In asking for such conditions, prosecutors argued that the defendants still had considerable influence.

They wrote in the bail letter there "is a serious risk that the defendants will continue to obstruct or attempt to obstruct justice, and continue to threaten, intimidate or attempt to threaten or intimidate prospective witnesses without these conditions."

After the hearing, Spota's attorney, former acting Eastern District Attorney Alan Vinegrad, disputed prosecutors' assertions. "Tom Spota committed no crime," Vinegrad said outside the federal court. "In fact, for many years of a very long and distinguished career, Tom has worked hard to investigate and prosecute crime and deliver justice to the residents of Suffolk County."

Vinegrad added: "Tom categorically denies the government's charges and looks forward to vindicating himself in court."

After that statement, he and Spota left without comment.

McPartland's attorney, Lawrence Krantz, said in a statement afterward: "Chris McPartland has always been an honest and dedicated public servant. He vehemently denies the charges and asserts his innocence. He looks forward to his day in court."

Spota would not comment on whether he will resign.

In addition to the $500,000 bond, secured by their homes, Spota and McPartland were restricted to traveling within the continental United States.

Eastern District Assistant United States Attorneys Lara Treinis Gatz and John Durham said in the letter that the strength of the government's case "is overwhelming and consists of dozens of witnesses . . . fully corroborated by numerous sources of evidence . . . including telephone call detail records, cell site records, photographs, financial records . . . and other documentary evidence."

Many of the government witnesses are members of the Suffolk County police and the Suffolk County District Attorney's office, the prosecutors said in the letter. The investigation was undertaken by the FBI and special investigators attached to the U.S. attorney's office for the Eastern District of New York.

An attorney for Burke could not be reached for comment.

Spota and McPartland each faces four counts: conspiracy to tamper with witnesses and obstruct an official proceeding; witness tampering and obstruction of an official proceeding; obstruction of justice; and accessory after the fact to the deprivation of civil rights, according to the indictment.

If convicted they each would face up to 20 years in prison, but would most probably receive less.

Newsday has reported that federal prosecutors and investigators had been probing whether Spota and McPartland took part in the cover-up of the assault by Burke on Christopher Loeb, who stole a duffel bag from the chief's department SUV, parked in front of Burke's St. James home in December 2012. The duffel bag reportedly contained a gun belt, cigars, sex toys and adult pornography, officials said. Loeb is not named in the indictment.

"Of all the problems that have existed in Suffolk County over the decades, what seems to have broken the back of Suffolk law enforcement was a kid who didn't want to take a beating from a cop," said Bruce Barket of Garden City, Loeb's attorney.

"It's an unfortunate, sad thing, but a very good occurrence for the county," Barket said. "It's good for law enforcement. The old guard had to go."

He said Spota should resign immediately, and that there is no point to sticking around for the last two months of his term. "He needs to go," Barket said.

Spota, who is the longest-serving district attorney in county history, announced in May he was not planning to run for a fifth term in November.

In announcing his decision, Spota said the "deciding factor . . . is that life is too short [especially at my age] and it's time to spend quality time with my wife, children and grandchildren, with two more on the way."

District attorney spokesman Robert Clifford declined to comment Wednesday.

Suffolk Democratic Party chairman Rich Schaffer said Spota should be allowed to serve out his term because "it's an accusation" and he has not been found guilty.

"It's sad for him and his family, that they have to go through this at the end of his career," Schaffer said. "And we'll give him the opportunity to defend himself in the court of law."

Burke, a longtime Spota protégé and a close colleague and friend of McPartland's, is serving a 46-month federal sentence for violating in 2012 the civil rights of Loeb after pleading guilty to assaulting him, and then engaging in obstruction of justice by orchestrating a cover-up of the attack.

Newsday has reported that the federal agents' and prosecutors' investigation into the cover-up was part of a wider-ranging investigation into the district attorney's office.

In addition to the Burke-Loeb case, Newsday has reported that the comprehensive federal scrutiny of Spota's office has included whether there was anything unlawful in the handling of the investigation into the shooting of Huntington Station taxi driver Thomas Moroughan by an off-duty Nassau County police officer; the circumstances under which former Suffolk County Executive Steve Levy gave up a $4.1-million-dollar campaign chest to the district attorney's office, and also agreed not to run for re-election; the legality of a wiretap placed on the phone of former Suffolk detective John Oliva; the resolution of the criminal case against well-known Suffolk criminal lawyer Robert Macedonio; the office's distribution of asset-forfeiture money; and the investigation into a number of political associates of Suffolk County Executive Steve Bellone.

*With Andrew Smith, Nicole Fuller and David M. Schwartz*

**By Robert E. Kessler**

robert.kessler@newsday.com

Bob Kessler covers federal law, including law enforcement agencies such as the FBI, DEA, IRS and ATF, as well as the federal courts.

## Didn't find what you were looking for?

search newsday.com                                                                 🔍

## LONG ISLAND / SUFFOLK

# Spota, McPartland plotted to obstruct justice in Burke case, newly filed prosecution papers say

 

Former Suffolk County District Attorney Thomas Spota, left, and former top aide Christopher McPartland.   Credit: Composite photo; Steve Pfost, left, and John Paraskevas

**By Robert E. Kessler**

robert.kessler@newsday.com

*Updated December 6, 2018 11:46 PM*

Thomas Spota, while Suffolk district attorney in June 2015, demanded that a Suffolk police officer find out which officer was an informant against his protégé, then-police Chief of Department James Burke, telling the officer that anyone feeding information to federal investigators was "dead" and "they would never work in Suffolk County again," according to papers filed Thursday by federal prosecutors.

Spota made the demand after he found out that federal investigators had reopened a dormant investigation started in 2013 into whether there was a cover-up of Burke's beating of a man who broke into his department SUV, according to the papers. The documents are part of pretrial motions in the obstruction of justice case against Spota and a chief aide, Christopher McPartland.

Spota "went nuts" and told a cooperating defendant that it was "not possible" that the investigation had been reopened, the court papers say. This officer is identified in the papers only as CD1, for Cooperating Defendant 1. He pleaded guilty to conspiracy to obstruct justice as part of a cooperation agreement with the government and is awaiting sentencing, the papers say.

McPartland said at the meeting that he thought a particular police officer was a "rat" and he ordered CD1 to "get his guys in order" and to "take his guys' temperature and confront them one-on-one about whether they were 'rat,' " the papers say.

Former Suffolk County police chief of department James Burke is escorted by FBI personnel in Melville in 2015.   Credit:

The documents unsealed Thursday are the government's response to the pretrial


Newsday/Steve Pfost

motions by Spota and McPartland to dismiss certain indictment counts, including obstruction of justice, and force prosecutors to produce certain evidence, including the identities of prosecution witnesses. Unsealed were investigators' request to search a bank safe deposit box and a search warrant for records of cellphones used by the defendants.

These records reveal in detail for the first time how Suffolk's then-top law enforcement officers allegedly masterminded a cover-up that was wide-ranging and how the government's probe was just as extensive. The defendants held key meetings at the district attorney's office and St. Patrick's Roman Catholic Church in Smithtown, according to the documents. The defendants used their government-issued cellphones and private ones to allegedly update each other on the federal investigation and plan their responses.

## Sign up for The Classroom newsletter.

The pandemic has changed education on Long Island. Find out how.

| Email address | Sign up |

By clicking Sign up, you agree to our privacy policy.

In asking the court to deny the defendants' motions, prosecutors called them "nothing more than an attempt to obtain a detailed preview of the government's evidence prior to trial." Revealing the identities of their informants and witnesses, the prosecution argued, would endanger them and possibly hurt the "integrity" of the trial.

The prosecution papers say the cover-up of the beating began almost as soon as it happened at the Fourth Precinct in Hauppauge on Dec. 14, 2012.

Christopher Loeb had broken into Burke's vehicle and stolen a duffel bag containing a gun belt, loaded gun magazines, cigars, sex toys and what Loeb later described as "nasty" pornography. Burke, who is now in a halfway house, is serving a 46-month sentence after pleading guilty to violating Loeb's civil rights and conspiring to obstruct justice. Burke and McPartland were at the June 2015 meeting in Spota's office, prosecutors say.

The papers say Spota and McPartland, as part of the cover-up, required police witnesses to obtain lawyers through the Suffolk County Police Benevolent Assocation and the Suffolk County Detectives Assocation and to get legal representation from a list of attorneys approved by Burke's lawyer.

The prosecution contends the two arranged "for high-ranking members of the SCPD and union officials to interact with potential witnesses … to gather further information and control the flow of information."

After the June 2015 meeting in Spota's office, the papers say that "multiple meetings took place at which the conspiracy to obstruct the federal investigation continued" with the confidential witness, Burke, Spota, McPartland and sometimes others until Burke was arrested in December 2015.

In an August 2015 meeting to discuss the federal probe, the court papers say, McPartland referred to the beating and said of the victim: "John Doe did not get beaten badly and there were no marks and that nothing would happen as long as the people that were in the room with John Doe did not talk."

Spota's attorney, Alan Vinegrad, reached Thursday night, said: "Tom adamantly denies and disputes the charges against him."

McPartland's attorney, Larry Krantz, said Thursday night: "Mr. McPartland strongly denies the charges and looks forward to the trial when the government's accusations will finally be tested."

Burke's attorney did not return calls for comment.

The prosecution papers say Burke, while in prison, arranged for others to pass on $25,000 in cash to McPartland after the Spota aide "began to cry" to a mutual friend that he needed the money for his legal defense. The cash came from a safe deposit box Burke had in the Lake Grove branch of TD Bank, the papers say. The papers include an unsealed 2017 search warrant for the safe deposit box, prosecutors say.

The papers also include an unsealed 2016 federal search warrant on the location of cell-tower sites of 10 cellphones of Spota, McPartland, Burke and five unnamed Suffolk police officers. The tower locations were used to verify the officers' presence at various meetings, according to prosecutors.

Spota and McPartland were charged in October 2017, more than a year after Burke was sentenced.Their trial is scheduled for May.

Acting Eastern District U.S. Attorney Bridget Rohde said at the time: "Over a period of more than four years, the defendants attempted to cover up the assault of a handcuffed prisoner by Burke by obstructing the federal grand jury investigation and, when they learned that the scope the investigation expanded into an investigation of obstructive conduct, the defendants then attempted to obstruct the obstruction investigation."

Documents filed then by the federal prosecutors in the case, John Durham and Lara Treinis Gatz, did not go into specific details.

But Durham and Treinis Gatz said then that Spota and McPartland "operated in a manner more akin to a criminal enterprise than a district attorney's office," and that the evidence against the two Suffolk officials was "overwhelming and consists of dozens of witnesses ... fully corroborated by numerous sources of evidence ... including telephone call detail records, cell site records, photographs, financial records ... and other documentary evidence."

The prosecutors added that many of the government's witnesses were members of the Suffolk District Attorney's Office or the Suffolk police department.

Spota and McPartland each have been charged with four felony counts: conspiracy to tamper with witnesses and obstruct an official proceeding; witness tampering and obstruction of an official proceeding; obstruction of justice; and accessory after the fact to the deprivation of civil rights.

If convicted, they each could face up to 20 years in prison.

Spota and McPartland each have been out on $500,000 bond since their arrests. They have been barred from contacting witnesses in the case and are permitted to talk with each other only in the presence of their attorneys.

*With Andrew Smith and Ellen Yan*

**By Robert E. Kessler**

robert.kessler@newsday.com

Bob Kessler covers federal law, including law enforcement agencies such as the FBI, DEA, IRS and ATF, as well as the federal courts.

## Didn't find what you were looking for?

search newsday.com                                                          🔍

## LONG ISLAND / SUFFOLK

# Spota and McPartland thought they were above the law, federal prosecutor said in opening statement



Former Suffolk County District Attorney Thomas Spota, left, and Christopher McPartland, a former aide, arrive at federal court in Central Islip on Thursday for opening statements in their obstruction of justice and conspiracy trial. Credit: John Roca

**By Newsday Staff**
*Updated November 14, 2019 8:54 PM*

**This story was reported by Nicole Fuller, Robert E. Kessler, Bridget Murphy and Michael O'Keeffe. It was written by Murphy.**

Former Suffolk County District Attorney Thomas Spota and one of his top aides, Christopher McPartland, abused their power by orchestrating a cover-up to protect a "crooked cop" and "thought they were above the law," a government attorney said Thursday as the federal trial of the ex-prosecutors got underway.

"We are here today because nobody is above the law," Assistant U.S. Attorney Justina Geraci told jurors in her opening statement in U.S. District Court in Central Islip.

Spota and McPartland were "two corrupt lawyers" who violated their positions of trust to keep former Suffolk Police Chief James Burke from going to jail after he beat a then-heroin addict who broke into his department vehicle and stole "embarrassing personal items," the prosecutor added.

But the cover-up fell apart after three years, and police criminal intelligence unit detectives, who also took part in the December 2012 beating of Christopher Loeb inside a police precinct and the cover-up effort, eventually told the truth, Geraci said.

James Burke, left, former chief of the Suffolk County Police Department, is taken into custody by FBI agents outside his home in Smithtown on Dec. 9, 2015. Credit: James Carbone

Spota and McPartland, his anti-corruption chief, along with Burke "were literally in charge of law and order in Suffolk County," the prosecutor added.

"Because of that," she said, "they believed that



they were untouchable — that they could do whatever they wanted and get away with it."

Geraci said the trial was "about how Burke's closest friends and allies ... helped him cover up the assault, instead of doing their jobs, and holding crooked Jimmy Burke accountable for his crimes, as they were sworn to do."

Together, she said, the trio of friends "were the three most powerful men in Suffolk County" for nearly 15 years.

Spota, 78, of Mount Sinai, and McPartland, 53, of Northport, are standing trial on four felony charges and maintain their innocence.

## Sign up for The Classroom newsletter.

The pandemic has changed education on Long Island. Find out how.

Email address

**Sign up**

By clicking Sign up, you agree to our privacy policy.

Their defense attorneys later fired back at the prosecution's case Thursday with fervor.

"Tom Spota is innocent," declared Alan Vinegrad, the ex-district attorney's defense lawyer.

The allegations, he also told jurors, are a "baseless and damnable lie."

Larry Krantz, McPartland's attorney, said the government's case is based on "guilt by association," a belief McPartland "must have been in on the crime" because he and Burke were buddies.

The defense attorneys also attacked the credibility of a former Suffolk police lieutenant who will serve as a key prosecution witness, portraying him as an unreliable drunk desperate to avoid time behind bars.

An indictment accuses Spota and McPartland of conspiracy, obstruction of justice, witness tampering and acting as accessories to the deprivation of the civil rights of Christopher Loeb, then 26, after his police beating.

Loeb stole a duffel bag from Burke's police vehicle that contained a gun belt, magazines of ammunition, a box of cigars, sex toys and pornography, according to prosecutors.

The indictment also alleges the defendants, Burke and others used intimidation and threats to pressure one or more witnesses, including co-conspirators, not to cooperate with a federal probe into the assault, and to provide false information and withhold information from authorities and the grand jury.

But attorneys for Spota and McPartland insisted Thursday that Burke never admitted to their clients he had assaulted Loeb.

They claim Burke "vociferously denied it" to them — negating the government's theory that both defendants knew Burke was guilty and tried to help him conceal it.

In November 2016, a judge sentenced Burke to 46 months in prison for beating Loeb and carrying out a scheme to try to cover up his actions.

Burke, who was Spota's longtime protégé and worked as his chief investigator for a decade before becoming police chief, served almost all of his prison sentence before his release last year to home confinement.

Geraci told jurors that when Burke realized his duffel had been stolen from his vehicle on the morning of Dec. 14, 2012, he made one call to McPartland and another to police Lt. James Hickey, then commanding officer of the police force's criminal intelligence unit.

She said Burke wanted help getting his duffel back, and it "was not good news" for him that Suffolk police already had arrested Loeb and a friend of his and recovered the stolen property at Loeb's Smithtown home.

The duffel, or "party bag," also contained Burke's Viagra prescription and he soon "trampled" through the crime scene and seized his property back, Geraci said.

Burke then went to a police precinct and beat up Loeb with three intelligence unit detectives as Loeb was handcuffed and shackled to the floor — slapping, punching and kicking Loeb and also "shaking him by his ears," the prosecutor said.

Then Burke, McPartland and Spota went into "full damage control mode," with McPartland's bureau at the district attorney's office taking control of the "basic theft case" despite specializing in corruption prosecutions, she added.

Spota and McPartland then enlisted Hickey and another high-ranking department official to keep other police force members in line, so no one would report that Burke had beaten Loeb, Geraci said.

Hickey, whose unit Burke considered his "palace guard," was tasked with silencing the involved detectives, the federal prosecutor alleged Thursday.

William Madigan — the chief of detectives before his December 2015 retirement — also was enlisted to make sure Hickey did his job and to monitor the case against Loeb, Geraci said.

But a lawyer for Loeb, "the one person who no one could control," took the beating allegations public, and the FBI and U.S. attorney's office began probing the case for any civil rights violations, the prosecutor told jurors.

Six months later, the issuing of federal subpoenas in June 2013 to the intelligence unit detectives set off a flurry of calls among the defendants and Burke, who rushed back from a fishing trip for a meeting with them at Spota's home — a meeting focused on thwarting the probe, Geraci said.

McPartland was "the architect of the lies," helping Burke craft a story about Loeb being a "junkie thief" who fabricated his tale of an assault — a story, Geraci also said, that became the "script" everyone was supposed to follow.

More meetings followed, in bars, church parking lots and homes, and the federal probe did stall for a while, with one cop committing perjury in an effort to stick to the story about a lying junkie, Geraci said.

But in 2015, the federal investigation was reopened and investigators also began looking into not only Burke's actions but whether there had been a cover-up, the prosecutor told jurors.

Spota, McPartland and Burke grilled Hickey at a meeting that June in Spota's office, certain that one of his detectives had become a "rat" who was cooperating with federal officials, Geraci said.

The detective who perjured himself in state court, one of the police officials involved in Loeb's assault, later pleaded guilty to obstruction charges and will testify during the trial with the hope of a reduced sentence, Geraci said.

The U.S. attorney's Ooffice granted immunity to another detective involved in the assault and compelled his testimony before the grand jury investigating the assault and cover-up — a move that kickstarted the case against Spota and McPartland, the prosecutor said.

Phone records will provide a "road map" for how the conspiracy unfolded, and jurors also will hear that Burke forked over $25,000 to McPartland to help with his legal expenses, Geraci said.

Hickey will testify and explain how cops faced ruined careers and destroyed lives if they didn't lie for Burke, Geraci said.

Hickey, whom the defendants "brought into the conspiracy" and "trusted to keep the cover-up running smoothly" was hospitalized during each of the federal probes — once for drinking heavily and then for stress and sleep deprivation, the prosecutor said.

She said the ex-police lieutenant — who put in retirement papers in December 2015 — is cooperating now because he knows he broke the law by taking part in the conspiracy and hopes to get a lighter sentence when he is sentenced for his crimes.

Lawyers for Spota and McPartland cast aspersions on Hickey's character in their opening statements.

Vinegrad, Spota's attorney, called the government witness someone with a "long past of credibility issues" whose only way out of trouble "was to point the finger at other people" who were "up the food chain."

Krantz, McPartland's lawyer, said while the government's case rests on Hickey, the former lieutenant has serious alcohol and psychological problems.

He added that Hickey is testifying "to save himself" and "is hoping to avoid going to jail."

Krantz also told jurors that Hickey in 2013 had to be hospitalized for several days and was drinking a bottle of wine and half a bottle or more of vodka every day.

Later, in October 2015, Hickey was hospitalized again and "was experiencing days of delusions, hallucinations and paranoia" while also "being violent and seeing people who were not there," McPartland's lawyer added.

Hickey also is the only government witness who had direct conversations with McPartland, Krantz said, adding that the witness' recall won't be buttressed by any tape recordings, videos or text messages.

Prosecutors didn't get Hickey's medical records until this year, when their case already was built on "a corroded foundation," Krantz added.

McPartland's lawyer also said in his client's defense that Burke lied to McPartland about what happened with Loeb, with Burke claiming the federal investigation into Loeb's assault was retaliation after he withdrew Suffolk cops from a gang task force.

Krantz added there was nothing illegal about his client taking a $25,000 loan from Burke to pay legal bills.

Vinegrad said Thursday that the government's case against his client consists of "smearing Tom Spota with all types of baseless and irrelevant mud."

He pointed to Spota's 50-year legal career, calling him a "longtime distinguished public servant" who "stepped aside" and asked for a special prosecutor after learning, about two months after Loeb's arrest, that the burglary suspect was alleging Burke had beaten him.

After a federal probe began, Spota "did nothing to get in the way," Vinegrad added.

He predicted jurors would hear no evidence Spota told anyone to lie or come up with a cover story.

Vinegrad said Spota merely gossiped about the federal investigation, just like everyone else in Suffolk law enforcement.

Spota thought when the first federal probe closed that it was confirmation of what Burke had told him many times: that he hadn't assaulted Loeb.

Spota was surprised, Vinegrad said, when the probe was reopened but didn't obstruct the investigation.

After opening statements, former Suffolk Police Commissioner John Gallagher testified Spota was aware Burke had "a checkered past with internal affairs" within the police department.

At the time, Spota was asking Gallagher to appoint Burke as the commanding officer of the district attorney's investigations squad — which Gallagher then did.

Suffolk Police Chief Stuart Cameron, who began serving in his current role after Burke stepped down, then testified, describing Burke's rise through the department as "more rapid than standard."

Cameron also said Burke and Spota had a close relationship that went back to Burke's participation as a teenage witness in a homicide case that Spota prosecuted.

The police chief also said that after taking his current command, he transferred Hickey — who called out sick a lot and seemed stressed — out of the intelligence unit.

But Hickey didn't appear to be intoxicated, hallucinating or suffering from paranoia, Cameron said.

The trial resumes Monday.

---

**By Newsday Staff**

---

# Didn't find what you were looking for?

search newsday.com                                                  🔍

**BREAKING**
Actor Christopher Plummer dies at 91

# US: Detective broke ranks, helped expose brutality cover up

*Former Long Island prosecutor is on trial, accused of conspiring to help cover for a police chief who slugged a handcuffed man who stole sex toys*

By **MICHAEL R. SISAK** Associated Press
November 14, 2019, 9:14 PM • 5 min read

For more than a year after a Long Island police chief slugged a handcuffed man who stole sex toys and other items from his department SUV, federal investigators found themselves up against a blue wall of silence - unable to get anyone beside the victim to say what happened.

Then, a detective who was in the room with the chief broke ranks, accepted an immunity offer and started talking, Assistant U.S. Attorney Justina Geraci said Thursday in an opening statement. The detective led investigators not only to the truth about the 2012 assault, but a cover up involving a powerful longtime prosecutor who had been the chief's mentor, she said.

Former Suffolk County District Attorney Thomas Spota and a former top deputy in the DA's office are now on trial, accused of conspiring with then-Chief James Burke to stifle a federal probe into whether Burke violated Christopher Loeb's civil rights.

"They thought they were above the law," Geraci told jurors. "But they were wrong. And we are here today because no one is above the law."

Spota, 78, and co-defendant Christopher McPartland, 53, who ran Spota's anti-corruption bureau, face charges including obstruction of justice and witness tampering. They pleaded not guilty and have denied the allegations. If convicted, they each face up to 20 years in prison.

The trial, at the federal courthouse in Central Islip, Long Island, is expected to take about four weeks.

"Tom Spota is innocent," his lawyer, Alan Vinegrad, said in an opening statement. McPartland's lawyer, Larry Krantz, said his client is a victim of "guilt by association."

The criminal charges hastened Spota's exit from office after 16 years as the top prosecutor in Suffolk, the bigger of Long Island's two suburban counties with about 1.5 million residents. Already a lame duck, Spota announced his retirement days after he was charged in October 2017.

## Top Stories

**3 neighbors dead after fight over snow shoveling, authorities say**
Feb 03, 5:49 PM


**Biden: 'We can't do too much' on COVID-19 relief, GOP 'not willing to go' far enough**
33 minutes ago


**Actor Christopher Plummer dies at 91**
30 minutes ago


**Larry and Dannielynn Birkhead share beautiful moment reflecting on Anna Nicole's life**
Feb 05, 9:07 AM


**US Air Force investigating intruder at Joint Base Andrews, home to Air Force One**
Feb 05, 4:38 AM




⦿ ABC News Live



*24/7 coverage of breaking news and live events*

Burke, now 55, pleaded guilty in February 2016 to violating Loeb's civil rights and obstructing justice for leading the conspiracy to conceal his involvement in the assault. He finished his prison sentence in April.

Burke attacked Loeb in a police station interrogation room after Loeb was arrested for breaking into the ex-chief's unlocked, department-issued GMC Yukon and stealing what Geraci called his "weekend party bag" - a duffel containing his gun belt, ammunition, a box of cigars, sex toys, pornography and a bottle of Viagra with his name on it.

Geraci, in her opening statement, said Burke trampled through an active crime scene at Loeb's house and took back the stolen items before going to the police station. There, he and three detectives from a trusted group he called the "Palace Guards," slapped, punched and kicked Loeb while he was handcuffed and shackled to the floor, Geraci said.

He bragged it was "just like the good old days," she said.

Almost immediately after the beating, Burke started working with Spota, McPartland and other police officials to protect himself from scrutiny, Geraci said. At one point Burke had a fishing boat he was on turn around so he could get back to Long Island and deal with the investigation, she said.

Together, they concocted a story that Burke was an innocent bystander who never entered the interrogation room where Loeb was being held, pressured witnesses not to cooperate and asked some to give false information, Geraci said. One detective was charged with perjury for lying under oath.

"The investigation was basically shut down," Geraci told jurors. "For a year and half, nothing happened - Burke and the defendants seemed to have gotten away with it."

But in 2015, one of the detectives in the room when Burke punched Loeb accepted an immunity offer and "kick-started the new phase of the federal investigation," Geraci said.

As the cover up unraveled, federal prosecutors said, Spota deemed anyone cooperating with the investigation a "rat," demanded that a police officer find out who was cooperating and threatened that informants "would never work in Suffolk County again."

Police officers who received subpoenas from the FBI were interrogated afterward by Burke's allies about whether they had talked, prosecutors said.

 **abc**NEWS     **VIDEO**     **LIVE**     **SHOWS**     **CORONAVIRUS**     ⋮⋮⋮     🔍

After Burke's 2015 arrest, he sent a longtime friend to deliver $25,000 in cash to McPartland to help pay for legal expenses arising from the investigation, Geraci said.

Spota and Burke had a kinship that dated to the ex-chief's teenage years in the late 1970s, when he was a star witness in a murder case that Spota was prosecuting.

Spota later hired Burke to work in his office as an investigator and vouched for him when he was appointed chief of police, one of the largest suburban forces in the country with 2,500 officers.

Heading the district attorney's office and the police department, they "believed that they were untouchable," Geraci said. "That they could do whatever they wanted and get away with it."

——

Follow Michael Sisak on Twitter at twitter.com/mikesisak

💬 Comments (0)    f   🐦   ✉

---

abc NEWS

---

Before You Go                                        Taboola Feed

**These Cars Are So Loaded It's Hard to Believe They're So Cheap**
Luxury SUVs | Search Ads | Sponsored

**Top Surgeon: This Simple Trick Empties Your Bowels Every Morning (Almost Immediately)**
Gundry MD Bio Complete 3 Supplement | Sponsored

**20 Questions to Tell If You're Ready to Retire**
SmartAsset | Sponsored

**Tommy Chong: Throw Away Your CBD Now**
Tommy Chong | Sponsored

**New Jersey Launches New Guidelines For Cars Used Less Than 50 Miles/Day**
Smart Lifestyle Trends | Sponsored

**Skip the Hassle - Upgrade to the World's Smartest CPAP Without Visiting the Doctor**
The Easy Blog by EasyBreathe.com | Sponsored

**3 Pennsylvania neighbors dead after fight over snow shoveling, authorities say**

**France's leader "very upset" by platforms' muzzling of Trump**

**7 Mistakes That Can Ruin Your Retirement**
SmartAsset | Sponsored

**The Top 10 Attorneys in Edison**
Lawyers | Search Ads | Sponsored

**New Jersey: Say Bye To Expensive Solar Panels If You Own A Home In Edison**

Energy Bill Cruncher Solar Quotes | Sponsored

Getting this Treasure is impossible! Prove us wrong

Hero Wars | Free Online RPG | Sponsored

NFL Star Rob Gronkowski Loves These Shoes

Wolf & Shepherd | Sponsored

California man arrested after livestream shows 2 bodies

Trump, facing expulsion, resigns from Screen Actors Guild

Edison, New Jersey: Did You Know About This?

US Auto Insurance Now Quotes | Sponsored

Edison, New Jersey Drivers Are Stunned By This Little Known Rule

US Auto Insurance Now Quotes | Sponsored

New Senior Apartments in Edison (May Leave You Speechless)

Senior Living | Search Ads | Sponsored

**ABC News Network** | Privacy Policy | Your CA Privacy Rights | Children's Online Privacy Policy | Interest-Based Ads | About Nielsen Measurement | Terms of Use | Do Not Sell My Info | Contact Us

Copyright © 2021 ABC News Internet Ventures. All rights reserved.

**The New York Times**

# Scandal Began With Sex Toys. Now Ex-D.A. Is Convicted on Long Island.

The former official in Suffolk County was found guilty of conspiracy after a trial that exposed a culture of corruption.

By Nicole Hong and Arielle Dollinger

Dec. 17, 2019

CENTRAL ISLIP, N.Y. — He was one of the most powerful men on Long Island, serving as the top prosecutor in a suburban county with 1.5 million people. He won election after election for 15 years with bipartisan support.

But Thomas J. Spota, the district attorney in New York's Suffolk County, had an Achilles' heel.

He always had a soft spot for a police officer named James Burke, who rose under his tutelage to become the county's chief of police. Mr. Spota viewed Mr. Burke almost as a son, standing with him whenever he was touched by scandal.

On Tuesday, Mr. Spota, 78, was convicted of participating in a yearslong conspiracy to cover up for Mr. Burke after he violently beat a man accused of stealing from him while he was the police chief.

The trouble started one morning in December 2012, when Chief Burke discovered somebody had broken into his police car. The thief took a duffel bag from the car that contained sex toys, a pornographic DVD and Viagra.

Later that morning, a man was arrested with the stolen goods. The chief barged into the police interrogation room where the man, handcuffed to the floor, called him a pervert. In a rage, Chief Burke kicked and punched him.

Mr. Spota set out to protect and defend Chief Burke, as he had before over a 40-year friendship, prosecutors said. That decision would cost Mr. Spota his career and turn him into a convicted criminal.



James Burke, center, the former Suffolk County police chief, pleaded guilty in 2016 to the assault of a man who had broken into his police car and the subsequent cover-up.  Steve Pfost/Newsday, via Getty Images

After hearing four weeks of trial testimony, a federal jury on Long Island found Mr. Spota guilty of four counts, including obstruction of justice and witness tampering. He was convicted along with Christopher McPartland, 53, who paradoxically had been Suffolk County's top anticorruption prosecutor.

They each face up to 20 years in prison.

The convictions of Mr. Spota and Mr. McPartland "make it clear that the days of Long Island's good old boy networks combining politics, power and policing to benefit a select few, at the expense of the taxpaying public, are dead and gone," said Richard Donoghue, the United States attorney in the Eastern District of New York.

The jurors reached the guilty verdict after deliberating for about seven hours over two days.

Mr. Spota and Mr. McPartland sat without expression as the verdict was read. They hugged their lawyers afterward. Mr. Spota's family members, seated in the first row of the courtroom, appeared emotional, with teary eyes and their arms around one another.

Mr. Spota's lawyer, Alan Vinegrad, declined to comment on the verdict. Mr. McPartland's lawyer, Larry H. Krantz, said, "There are many more legal steps in the case, and we will continue to fight for this."



Christopher McPartland, right, leaving his trial last month in Central Islip, N.Y. He and
Mr. Spota each face up to 20 years in prison.  Uli Seit for The New York Times

Mr. Burke, 55, had already pleaded guilty in 2016 to the assault and the subsequent cover-up, a year after resigning from the force. He completed his prison sentence this year but refused to testify at trial against his old colleagues.

The verdict was a hard-fought victory for the federal prosecutors and the F.B.I., whose investigation faced setbacks for years.

Proving obstruction of justice required the government to present evidence that the defendants acted with a corrupt purpose, a high legal bar. Without recordings of conversations, the trial hinged largely on the testimony of one witness: James Hickey, a former police commander who worked in Mr. Spota's inner circle.

The cover-up of Chief Burke's assault, witnesses at trial said, was part of a broader pattern. The testimony exposed an alarming culture of corruption and retribution in a county with about 2,500 police officers, one of the largest police departments in the United States.

Police officers who were supposed to investigate gangs and school shootings would be diverted to help their chief with petty vendettas and mundane tasks, like spying on his girlfriends or driving him to the airport, former officers testified.

Together, Mr. Spota, Mr. McPartland and Chief Burke controlled what amounted to a law-enforcement fiefdom in the eastern half of Long Island, prosecutors said.

The three men called themselves "the administration," one former police officer testified. They golfed together and drank together. Mr. McPartland and Mr. Burke used to greet one another on the phone with a vulgar imprecation.

Mr. Burke's relationship with Mr. Spota began in 1979, when Mr. Spota was a young prosecutor trying a murder case, and Mr. Burke, then a teenager, was his star witness.

Mr. Burke later became a police officer. In the 1990s, an internal investigation found that he had violated several police protocols, including having sex in his patrol car while in uniform with a prostitute who used crack cocaine. Mr. Spota, a lawyer for the police union at the time, defended Mr. Burke and negotiated a plea deal that saved his career.

Then in 2001, Mr. Spota, who switched parties from Republican to Democratic, was elected district attorney. He repeatedly promoted Mr. Burke in the Police Department, consolidating their power.

Prosecutors said the two of them, along with other officials, were able to punish people who challenged their authority.

In particular, Mr. Burke hated one of the police officials, Pat Cuff, who had conducted the internal investigation against him in the 1990s, witnesses said. When Mr. Cuff's son was caught with a gun, the district attorney's office threatened to upgrade the charges from a misdemeanor to a felony. Mr. Cuff cried at his desk, suspecting it was retaliation, a witness testified.

As soon as Mr. Burke became police chief in early 2012, he demoted Mr. Cuff by four ranks and assigned him to guard a warehouse.

The assault of the burglary suspect happened about a year into Mr. Burke's tenure as police chief. The man in custody, Christopher Loeb, was a heroin user with a long criminal record. Chief Burke thought nobody would believe his word over the police chief's, according to witness testimony.



Christopher Loeb was kicked and punched while in police custody.    Uli Seit for The New York Times

Mr. Loeb was held on $500,000 bail, an unusually high amount for a car break-in. The case was assigned to the public corruption unit, led by Mr. McPartland, not the major crimes unit, where it would normally have been prosecuted.

But a few months later, in early 2013, Mr. Loeb's lawyer publicly accused the police of assault, triggering a civil rights investigation.

The administration panicked, prosecutors said. Mr. McPartland helped concoct a cover story that Chief Burke had just "popped his head in" to the interrogation room. Three other police detectives had been in the room participating in the beating, and it was imperative that they all stuck to the same story.

To maintain the lie, Mr. Spota and Mr. McPartland relied heavily on Mr. Hickey, the police commander who supervised those three detectives.

Mr. Hickey testified that he was ordered to instruct his men to "deny, deny, deny." Mr. Spota and the others involved in the cover-up handpicked one of the three officers, Anthony Leto, to lie under oath about the assault during a court hearing, Mr. Hickey said.

Mr. Leto told jurors that he feared if he were truthful, the police chief would falsely accuse his sons of a crime or plant drugs on them.

The obstruction initially worked, thwarting federal agents for several months. But the investigation escalated again in 2015 with more subpoenas.

During a meeting that year, Mr. McPartland speculated about who the "rat" was. Mr. Spota said that if one police officer cooperated, "He'll never work here again and I will see to it," according to Mr. Hickey's testimony.

After the meeting, Chief Burke threatened that if the police detectives failed to stay in line, he would expose that Mr. Hickey was cheating on his wife, Mr. Hickey said.

"I realized that my career was over," he testified, "and that if I even try to go to the feds at this point, I would be dead in Suffolk County."

Mr. Hickey said that he stayed awake at night, feeling paranoid. He was hospitalized in a stress-induced delirium, and was screaming, biting and spitting, according to medical records shown at trial.

Four days after his release from the hospital in October 2015, he received a grand jury subpoena, he said.

Mr. Hickey decided to plead guilty to his role in the conspiracy and cooperated with prosecutors as their star witness, testifying on the stand for three days.

At trial, lawyers for Mr. McPartland and Mr. Spota tried to shred Mr. Hickey's credibility, calling him a practiced liar and highlighting that he admitted to four extramarital affairs. They pointed to a state judge's determination in 1990 that Mr. Hickey had lied under oath as a police officer in a different burglary case.

The defense said prosecutors were relying on Mr. Hickey's recollection of conversations that happened years ago, with no concrete evidence to corroborate his memory. No other witness testified to receiving direct orders from Mr. Spota or Mr. McPartland to obstruct the investigation, defense lawyers argued.

Prosecutors produced calendar entries and call records that they said showed Mr. Hickey was telling the truth.

Ultimately, the 12 jurors chose to believe Mr. Hickey.

On Tuesday, after the verdict was read, Mr. Loeb, the man who was assaulted by the police chief, poked his head into the emptying courtroom. He had been watching the trial from the overflow room. He was smiling.